**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| ATHENEX, INC., et al., | Case No. 23-90295 (DRJ) |
| Debtors. [1] | (Joint Administration Requested) |

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL
ORDERS (I) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL,
(II) GRANTING ADEQUATE PROTECTION TO PREPETITION TERM
LOAN SECURED PARTIES, (III) MODIFYING THE AUTOMATIC STAY,
(IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF**

**Emergency relief has been requested.  Relief is requested not later than May 16, 2023.**

**If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**A hearing will be conducted on this matter on May 16, 2023, at 5:00 p.m. (prevailing Central Time).  Participation at the hearing will only be permitted by an audio and video connection.**

**Audio communication will be by use of the Court's dial-in facility.  You may access the facility at (832) 917-1510.  Once connected, you will be asked to enter the conference room number.  Judge Jones's conference room number is 205691.  Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Jones's homepage.  The meeting code is "JudgeJones".  Click the settings icon in the upper right corner and enter your name under the personal information setting.**

**Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Jones's homepage. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/athenex. The location of Athenex, Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 1001 Main Street, Suite 600, Buffalo, NY 14203.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state the following in support of this motion (this "Motion"):[2]

## RELIEF REQUESTED

1.    By this Motion, the Debtors respectfully request entry of an interim order on an expedited basis, substantially in the form attached hereto (the "Interim Order") and, following a final hearing to be set by the Court (the "Final Hearing"), entry of a Proposed Final Order in a form to be submitted (the "Final Order"):

a.    authorizing the Debtors, pursuant to sections 105, 361, 362, 363, 503 and 507 of the Bankruptcy Code, to (i) use cash collateral, as such term is defined in section 363(a) of the Bankruptcy Code, in accordance with the terms of the Interim Order and the Final Order and (ii) grant adequate protection to the Prepetition Term Loan Secured Parties (as defined below) as set forth herein;

b.    modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the Interim Order and the Final Order;

c.    except to the extent of the Carve Out (as defined herein) and subject to entry of a Final Order (as defined below), waiving all rights to surcharge any Prepetition

---

[2]    Other than as expressly provided in the Interim Order, this Motion and the Interim Order do not address the rights and obligations of the parties to that certain Revenue Interest Purchase Agreement, dated as of June 21, 2022 (as amended, restated, or otherwise modified from time to time, the "RIPA" and, together with all other documentation executed in connection therewith, including without limitation, the Asset Purchase and Contribution Agreement, dated as of June 29, 2022, providing for the sale by Athenex, Inc. to ATNX SPV, LLC (the "SPV") of the Purchased Product Assets (as defined therein), and all other Transaction Documents (as defined in the RIPA, collectively, the "RIPA Transaction Documents")), by and among Athenex, Inc., the SPV, Sagard Healthcare Royalty Partners, LP, as agent (the "RIPA Agent"), and other affiliates of Sagard Healthcare Royalty Partners, LP and funds managed by Oaktree Capital Management, L.P. (collectively, the "RIPA Purchasers"). All rights of the Debtors, the SPV, the RIPA Agent and the RIPA Purchasers with respect to the foregoing are reserved.

Collateral or Collateral (each as defined herein) under section 506(c) of the Bankruptcy Code;

d. subject to entry of a Final Order, determining that the "equities of the case" exception under section 552(b) of the Bankruptcy Code to not apply to any of the Prepetition Term Loan Secured Parties with respect to the proceeds, products, offspring, or profits of any of the Prepetition Collateral or Collateral under section 552(b) of the Bankruptcy Code or any other applicable principle of equity or law;

e. scheduling a final hearing (the "Final Hearing") within thirty-five (35) days after the Petition Date to consider entry of the Final Order granting the relief requested in this Motion on a final basis;

f. waiving any applicable stay with respect to the effectiveness and enforceability of the Interim Order and the Final Order (including a waiver pursuant to Bankruptcy Rule 6004(h)); and

g. granting related relief.

2. The Debtors believe that only the Prepetition Term Loan Secured Parties assert an interest in the Debtors' Cash Collateral that the Debtors propose to use under this Motion, and the Prepetition Term Loan Secured Parties have consented to the use of Cash Collateral as set forth in the Interim Order.

## JURISDICTION AND VENUE

3. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).  The Debtors confirm their consent, pursuant

to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), to the entry of a final order by the Court.

4.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The bases for the relief requested herein are sections 105, 361, 362, 363, and 507 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Bankruptcy Rule 4001, and Rule 4001-1 of the Local Bankruptcy Rules for the Southern District of Texas (the "<u>Bankruptcy Local Rules</u>").

## **<u>BACKGROUND</u>**

**A.      <u>Case Background</u>**

6.      On the date hereof (the "<u>Petition Date</u>"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors has been appointed in these Chapter 11 Cases.

7.      The Debtors are a global oncology-focused biopharmaceutical company dedicated to the discovery, development, and commercialization of novel therapies for the treatment of cancer, aiming to develop safer, and more efficacious cancer medication. The Debtors' mission is to improve the lives of cancer patients by creating more effective, safer and tolerable treatments.

8.      Additional information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of these Chapter 11 Cases is set forth in the *Declaration of Nicholas K. Campbell, in Support of the Debtors' Chapter 11 Petitions and First*

*Day Relief* (the "<u>First Day Declaration</u>"),[3] which has been filed with the Court contemporaneously herewith and is incorporated by reference herein.

**B.**     **Prepetition Term Loan Credit Agreement**

9.     Under that certain Credit Agreement and Guaranty, dated as of June 19, 2020 (as amended, restated, or otherwise modified from time to time, the "<u>Prepetition Term Loan Credit Agreement</u>" and, together with all other documentation executed in connection therewith, including without limitation, the Security Documents (as defined in the Prepetition Term Loan Credit Agreement), and all other Loan Documents (as defined in the Prepetition Term Loan Credit Agreement) executed in connection therewith, as amended, restated, or otherwise modified from time to time, the "<u>Prepetition Term Loan Documents</u>"), among Athenex, Inc. ("<u>Borrower</u>"), Oaktree Fund Administration, LLC, as Administrative Agent (as defined in the Prepetition Term Loan Credit Agreement and, in such capacity and including any successors thereto, the "<u>Prepetition Term Loan Administrative Agent</u>"), the guarantors from time to time party thereto (the "<u>Prepetition Term Loan Guarantors</u>") and the lenders from time to time party thereto (such lenders, the "<u>Prepetition Term Loan Lenders</u>" and, together with the Prepetition Term Loan Administrative Agent, the "<u>Prepetition Term Loan Secured Parties</u>"), the Borrower borrowed loans thereunder (the "<u>Prepetition Term Loans</u>") consisting of term loans of up to $225 million in Commitments (as defined in the Prepetition Term Loan Credit Agreement).

10.     As of the Petition Date, the Borrower owed, and was liable to, and the Prepetition Term Loan Guarantors unconditionally and irrevocably guaranteed for the benefit of, the Prepetition Term Loan Secured Parties pursuant to the Prepetition Term Loan Documents, without offset, contest, objection, recovery, recoupment, reduction, defense, counterclaim, subordination,

---

[3]     A capitalized term used but not otherwise defined herein shall have the meaning ascribed to it in the First Day Declaration.

recharacterization, disgorgement, disallowance, avoidance, challenge, or any other claim or cause of action of any kind, (x) an aggregate principal amount of not less than **$41.875 million**, plus (y) all accrued and unpaid interest (including default interest) with respect thereto and any additional fees, costs, premiums, expenses (including any attorneys', accounts', consultants', appraisers', financial advisors', and other professionals' fees and expenses), reimbursement obligations, indemnification obligations, guarantee obligations, other contingent obligations, and other charges of whatever nature, whether or not contingent, whenever arising, due, or owing, and all other Obligations (as defined in the Prepetition Term Loan Credit Agreement) owing under or in connection with the Prepetition Term Loan Documents (clauses (x) and (y), collectively, the "Prepetition Term Loan Secured Indebtedness").

11. Pursuant to the applicable Prepetition Term Loan Documents, the Prepetition Term Loan Secured Indebtedness is secured, in favor of the Prepetition Term Loan Secured Parties, by valid, binding, properly perfected, continuing and enforceable security interests in and liens on all "Collateral" as defined in the Prepetition Term Loan Credit Agreement (as amended or modified, such security interests and liens, the "Prepetition Term Loan Liens" and such collateral, the "Prepetition Collateral"), in each case, subject to the relative rights, rankings, and priorities set forth in any applicable intercreditor agreement.

## STATEMENT OF THE MATERIAL TERMS OF THE PROPOSED ORDERS

12. In accordance with Bankruptcy Rules 4001(b) and (d) and the *Procedures for Complex Cases in the Southern District of Texas*, effective January 1, 2023 (the "Complex Case Procedures"), below is a summary[4] of the terms of the proposed use of Cash Collateral:

---

[4] The summary of the Interim Order and the terms and conditions for the use of Cash Collateral set forth in this Motion are intended solely for informational purposes to provide the Court and parties in interest with an overview of the significant terms thereof. The summary is qualified in its entirety by the Interim Order. In the event that there is any conflict between this Motion and the Interim Order, the Interim Order will control in all respects.

| Summary of Material Terms | | Location |
|---|---|---|
| **Entities with an Interest in Cash Collateral to be Used Under This Motion**<br><br>*Bankruptcy Rule 4001(b)(1)(B)(i)* | Prepetition Term Loan Secured Parties. | N/A |
| **Amount of Cash Collateral and Purposes for Use of Cash Collateral**<br><br>*Bankruptcy Rule 4001(b)(1)(B)(ii); Complex Case Procedures ¶ 6* | The Debtors seek to use Cash Collateral in an amount consistent with the expenditures described in the budget, the initial form of which is attached to the Interim Order as Exhibit 1 (the "Approved Budget").<br><br>The Debtors seek authority to use Cash Collateral in which the Prepetition Term Loan Secured Parties assert an interest, wherever such Cash Collateral may be located, in accordance with the terms of the Interim Order and the Final Order to, among other things, (a) satisfy postpetition operating expenses of the Debtors as more fully described in the Approved Budget, (b) pay certain prepetition obligations of the Debtors as further described in the Debtors' "first day" motions filed contemporaneously herewith and authorized pursuant to the "first day" orders approving the same, and (c) pay administrative expenses, including but not limited to allowed fees and expenses incurred by estate professionals.<br><br>Applicable covenants, permitted variances, and reporting obligations relating to the Debtors' performance under the Approved Budget are set forth at para. 3(c), (e), and (f) of the Interim Order.  The Prepetition Term Loan Administrative Agent and the RIPA Agent will be provided with certain ongoing reporting pursuant to the terms of the Interim Order. | Interim Order ¶ 3. |
| **Carve-Out**<br><br>*Bankruptcy Rule 4001(b)(1)(B)(iii)* | As used in the Interim Order, the "Carve Out" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee (the "U.S. Trustee") under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $75,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (including any success fees or commissions allowed by the Court and earned prior to the delivery of the Carve Out Trigger Notice) (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") or the Committee (if any) pursuant to section 328 or 1103 of the Bankruptcy Code (the | Interim Order ¶ 5. |

| Summary of Material Terms | Location |
|---|---|
| "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") at any time before delivery by the Prepetition Term Loan Administrative Agent of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice, (the amounts set forth in clauses (i) through (iii), the "Pre-Carve Out Trigger Notice Cap"); (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $550,000 incurred after the first business day following delivery by the Prepetition Term Loan Administrative Agent of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise, less the amount of any prepetition retainers received by any such Professional Persons and not previously returned or applied to fees and expenses (the amounts set forth in this clause (iv) being the "Post-Carve Out Trigger Notice Cap"); (v) amounts payable by the Debtors under any Court-approved key employee retention plan (but, for the avoidance of doubt, not any amounts payable under any key employee incentive plan); and (vi) accrued and unpaid obligations of the Debtors for postpetition payroll and employee-related taxes and benefits as of the date of the delivery of the Carve-Out Trigger Notice to the extent set forth in the Approved Budget. For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the Prepetition Term Loan Administrative Agent or the Prepetition Term Loan Advisors to the Debtors' lead restructuring counsel (Pachulski Stang Ziehl & Jones LLP), the U.S. Trustee and counsel to the Committee (if any), which notice may be delivered following the occurrence and during the continuation of a Termination Event stating that the Post-Carve Out Trigger Notice Cap has been invoked.

Upon entry of the Interim Order, the Debtors will be authorized and directed to fund the segregated trust account of the Debtors' general bankruptcy counsel for the sole purpose of reserving for and paying unpaid Allowed Professional Fees (as defined in paragraph 5(b) hereof) (the "Professional Fee Reserve Account"). On a weekly basis and solely up to the amounts set forth for Professional Persons (as defined in paragraph 5(b) hereof) for each such week in the Approved Budget, the Debtors will fund the Professional Fee Reserve Account (such amounts, the "Reserve Amounts"), and such Reserve Amounts may be applied from time to time to pay the Allowed Professional Fees prior to any and all other claims. If, after payment in full of all Reserve Amounts on account of Allowed Professional Fees, the Professional Fee Reserve Account has not been reduced to zero, all remaining funds will be paid to the Prepetition Term Loan | |

| Summary of Material Terms | | Location |
|---|---|---|
| | Secured Parties in accordance with their rights and priorities as of the Petition Date and subject to any applicable intercreditor agreements, unless the Prepetition Term Loan Secured Indebtedness has been indefeasibly paid in full, in cash, in which case any such excess will be returned to the Debtors' creditors in accordance with their rights and priorities as of the Petition Date.  For the avoidance of doubt, the Debtors' obligation to pay Allowed Professional Fees will not be limited or deemed limited to funds held in the Professional Fee Reserve Account. | |
| **Postpetition Liens on Avoidance Actions**<br><br>*Bankruptcy Rule 4001(b)(1)(B)(iii); Complex Case Procedures ¶ 8(d)* | The Interim Order provides for Adequate Protection Liens on unencumbered assets to the extent of any diminution in value, <u>other than</u> Avoidance Actions (as defined below), but subject to entry of a Final Order, shall include Avoidance Proceeds (as defined below). | Interim Order ¶ 4(a). |
| **Proposed Adequate Protection**<br><br>*Bankruptcy Rule 4001(b)(1)(B)(iv)* | The Debtors propose to provide adequate protection to the Prepetition Term Loan Secured Parties, to the extent of any diminution in value of their interests in the Debtors' assets, as follows:<br><br>(i)  valid, binding, continuing, enforceable, fully-perfected, nonavoidable, first-priority senior (except as otherwise provided in this paragraph below with respect to the Permitted Prior Liens (as defined below) and the Carve Out), additional and replacement security interests in and liens on (all such liens and security interests, the "<u>Adequate Protection Liens</u>") (i) the Prepetition Collateral and (ii) all of the Debtors' now-owned and hereafter-acquired real and personal property, assets and rights, including all prepetition property and post-petition property of the Debtors of any kind or nature, wherever located, whether encumbered or unencumbered, including, without limitation, a 100% equity pledge of any first-tier foreign subsidiaries and any unencumbered assets of the Debtors, if any, and all prepetition property and post-petition property of the Debtors' estates, and the proceeds, products, rents and profits thereof, whether arising from section 552(b) of the Bankruptcy Code or otherwise, including, without limitation, all equipment, goods, accounts, cash, payment intangibles, bank accounts and other deposit or securities accounts of the Debtors (including any accounts opened prior to, on, or after the Petition Date), insurance policies and proceeds thereof, equity interests, instruments, intercompany claims, accounts receivable, other rights to payment, all general intangibles, all contracts and contract rights, securities, investment property, letters of credit and letter of credit rights, chattel paper, all interest rate hedging agreements, all owned real estate, real | Interim Order ¶ 4. |

| Summary of Material Terms | Location |
|---|---|
| property leaseholds, fixtures, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, all commercial tort claims, and all claims and causes of action (including causes of action arising under section 549 of the Bankruptcy Code, claims arising on account of transfers of value from the Debtors to a non-Debtor affiliate incurred on or following the Petition Date), and any and all proceeds, products, rents, and profits of the foregoing (all property identified in this paragraph being collectively referred to as the "<u>Collateral</u>"), subject only to the Permitted Prior Liens and the Carve Out, in which case the Adequate Protection Liens shall be immediately junior in priority to such Permitted Prior Liens and to the Carve Out; notwithstanding the foregoing, the Collateral shall exclude the Carve Out Reserves (other than with respect to the residual interest therein) and all claims and causes of action arising under any section of chapter 5 of the Bankruptcy Code (other than claims and causes of action arising under section 549 of the Bankruptcy Code) (the "<u>Avoidance Actions</u>"), but, subject to entry of a Final Order, shall include any and all proceeds of and other property that is recovered or becomes unencumbered as a result of (whether by judgment, settlement, or otherwise) any Avoidance Action ("<u>Avoidance Proceeds</u>"). | |
| (ii) as further adequate protection, allowed superpriority administrative expense claims in these Chapter 11 Cases ahead of and senior to any and all other administrative expense claims in these Chapter 11 Cases (the "<u>Adequate Protection Superpriority Claims</u>"), junior only to the Carve Out.  Subject to the Carve Out, the Adequate Protection Superpriority Claims shall not be junior or *pari passu* to any other administrative claims against the Debtors and shall have priority over all now or hereinafter incurred administrative expense claims against the Debtors, including, without limitation, administrative expense claims of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 546(c), 726, 1113 and 1114 of the Bankruptcy Code; provided that any recovery against Avoidance Proceeds shall be subject to entry of a Final Order. | |
| (iii) as additional adequate protection, the Debtors will pay in full in cash and in immediately available funds: (i) within five (5) business days after the Debtors' receipt of invoices therefor, the professional fees, expenses and disbursements (including, but not limited to, the professional fees, expenses and disbursements of counsel and other third-party consultants and/or experts, including financial advisors) incurred prior to the Petition Date by the Prepetition Term | |

| Summary of Material Terms | | Location |
|---|---|---|
| | Loan Administrative Agent and other Prepetition Term Loan Secured Parties (including, without limitation, reasonable fees, expenses and disbursements incurred by Sullivan & Cromwell LLP, as primary counsel, and Bracewell, LLP, as local counsel, collectively, the "Prepetition Term Loan Advisors") and (ii) subject to the notice provisions in paragraph 27 hereof, the reasonable fees and expenses incurred on and after the Petition Date by the Prepetition Term Loan Secured Parties, including the fees and expenses of the Prepetition Term Loan Advisors (including, without limitation, professional fees, expenses and disbursements of counsel), which shall be submitted on a monthly basis and paid within ten (10) days of the Debtors' receipt of invoices therefor ((i) and (ii) collectively, the "Adequate Protection Payments"). None of the foregoing fees, expenses and disbursements shall be subject to separate approval by this Court or require compliance with the U.S. Trustee guidelines, and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto or otherwise seek the Court's approval of any such payments.<br><br>(iv) as additional adequate protection, the Debtors shall provide customary reporting to the Prepetition Term Loan Administrative Agent, the Prepetition Term Loan Advisors, and the RIPA Agent. | |
| **Termination Date**<br><br>*Bankruptcy Rule 4001(b)(1)(B)(iii)* | Subject to the Remedies Notice Period (as defined below), the Debtors' ability to use Cash Collateral pursuant to the Interim Order shall cease if any of the following events (among others) occurs, in each case, unless waived or modified with the consent of the Prepetition Term Loan Administrative Agent: (a) a Final Order acceptable to the Debtors and the Prepetition Term Loan Administrative Agent is not entered by the Court by 11:59 p.m. on the date that is 35 days after the Petition Date; (b) the violation of any material term of the Interim Order by the Debtors that is not cured within three (3) business days of receipt by the Debtors of notice from the Prepetition Term Loan Administrative Agent of such default, violation or breach (which may be provided to the Debtors by e-mail); (c) entry of any order modifying, reversing, revoking, staying, rescinding, vacating, or amending the Interim Order without the express written consent of the Prepetition Term Loan Administrative Agent; (d) the failure of the Debtors to meet any of the deadlines (or such later dates as may be approved by the Prepetition Term Loan Administrative Agent) set forth on Exhibit 2 to the Interim Order (collectively, the "Milestones"). | Interim Order ¶ 7. |

| Summary of Material Terms | | Location |
|---|---|---|
| **Case Milestones**<br><br>*Bankruptcy Rule 4001(b)(1)(B)(iii); Complex Case Procedures ¶ 8(a)* | The Debtors are required to comply with the following Milestones:<br><br>(a)      No later than one (1) calendar day following the Petition Date, the Debtors shall have filed all first day motions, including (i) a motion seeking entry of the Interim Order and (ii) a motion for approval of bidding procedures for the marketing and sale of all of any or all their assets pursuant to section 363 of the Bankruptcy Code, including lot bids for inventory (other than the APS) (the "<u>Sale Motion</u>" and such bidding procedures, the "<u>Bidding Procedures</u>"), in each case which motions and all related documents shall be in form and substance acceptable to the Prepetition Term Loan Lenders.<br><br>(b)      No later than three (3) calendar days following the Petition Date, the Bankruptcy Court shall have entered the Interim Order, which order shall provide that the Debtors are authorized and directed to use the proceeds of any sales pursuant to such order to pay the Prepetition Term Loan Secured Indebtedness until paid in full (except in each case to the extent otherwise agreed in writing by the Prepetition Term Loan Administrative Agent and the Prepetition Term Loan Lenders), subject to negotiation between the Debtors and the Prepetition Term Loan Secured Parties in good faith with respect to an amount of such proceeds to be retained by the Debtors to be used to fund the cost of these Chapter 11 Cases pursuant to a budget acceptable to the Prepetition Term Loan Secured Parties or otherwise approved by the Court, in each case which orders shall be in form and substance acceptable to the Prepetition Term Loan Lenders.<br><br>(c)      No later than seven (7) calendar days after the Petition Date, the Bankruptcy Court shall have entered an order approving the Bidding Procedures, which order shall be in form and substance acceptable to the Prepetition Term Loan Lenders.<br><br>(d)      The Bankruptcy Court shall have entered the Final Order no later than thirty-five (35) calendar days following the Petition Date.<br><br>(e)      No later than forty-five (45) calendar days after the Petition Date, the Bankruptcy Court shall have entered an order(s) approving the sale(s) under the Sale Motion (the "<u>Sale Order(s)</u>"), which order(s) shall be in form and substance acceptable to the Prepetition Term Loan Lenders. The Sale Order(s) shall provide that the Debtors are authorized to use the proceeds of any sales to pay the Prepetition Term Loan Secured Indebtedness until paid in full (except in each case to the extent otherwise agreed in writing | Interim Order ¶ 7, Ex. 2 |

| Summary of Material Terms | | Location |
|---|---|---|
| | by the Prepetition Term Loan Administrative Agent and the Prepetition Term Loan Lenders), subject to negotiation between the Debtors and the Prepetition Term Loan Secured Parties in good faith with respect to an amount of such proceeds to be retained by the Debtors to be used to fund the cost of these Chapter 11 Cases pursuant to a budget acceptable to the Prepetition Term Loan Secured Parties.<br><br>(f)     If there is no successful bid for the APD inventory pursuant to the Bidding Procedures, no later than thirty (30) calendar days following the Bid Deadline having passed with no bids received, the Debtors shall have substantially completed the liquidation of the APD inventory pursuant to the APD Inventory Sales Order.<br><br>(g)     If applicable, no later than fifty (50) calendar days after the Petition Date, the Debtors shall have consummated the sale(s) approved pursuant to the Sales Motion. | |
| **Remedies**<br><br>*Bankruptcy Rule 4001(b)(1)(B)(iii); Complex Case Procedures ¶ 8(e)* | The Debtors' authorization to use Cash Collateral under the Interim Order shall automatically terminate on such date (the "Termination Date") that is, unless otherwise extended with the express written consent of the Prepetition Term Loan Administrative Agent, the earliest of (i) the effective date of any chapter 11 plan with respect to the Debtors that is confirmed by the Court; (ii) the date on which all or substantially all of the assets of the Debtors are sold in a sale under any chapter 11 plan or pursuant to section 363 of the Bankruptcy Code; and (iii) unless otherwise ordered by the Court, five (5) business days from date (the "Termination Declaration Date") on which written notice of the occurrence of any Termination Event is given (which notice may be given by electronic mail or other electronic means) by the Prepetition Term Loan Administrative Agent or the Prepetition Term Loan Advisors to the Debtors' counsel, counsel to a Committee (if appointed), counsel to the RIPA Agent, and the U.S. Trustee (the "Termination Declaration" and such period commencing on the Termination Declaration Date and ending five (5) business days later, which period shall be automatically extended if the Debtors, the Committee (if appointed), or the U.S. Trustee seeks an emergency hearing as provided in clause (b) below prior to the expiration of such period to enable the Court to rule thereon, the "Remedies Notice Period"); *provided that*, until the expiration of the Remedies Notice Period, the Debtors may (a) continue to use Cash Collateral to make payments in respect of expenses reasonably necessary to keep the businesses of the Debtors operating in accordance with the Approved Budget, (b) contest or cure any alleged Termination Event, (c) to pay professional fees and fund the | Interim Order ¶8. |

| Summary of Material Terms | Location |
|---|---|
| Carve Out Reserves and (d) seek other relief as provided for in the Interim Order.  For the avoidance of doubt, the Prepetition Term Loan Administrative Agent or the Prepetition Term Loan Advisors may provide a Termination Declaration, notwithstanding the provisions of Bankruptcy Code section 362, without any application, motion or notice to, hearing before, or order from the Court.<br><br>If a Termination Declaration is delivered as provided above, the Debtors, the Committee (if appointed), the RIPA Agent, and the Prepetition Term Loan Administrative Agent consent to an emergency hearing being held before the Court on an expedited basis and related motions will be filed with the Court on at least five (5) business days' notice (subject to the Court's availability) for the purpose (unless the Court orders otherwise) of considering (a) whether a Termination Event has occurred or is continuing and (b) any appropriate relief (including, without limitation, the Debtors' non-consensual use of Cash Collateral).  Unless the Court has determined that a Termination Event has not occurred and/or is not continuing or the Court orders otherwise, the automatic stay, as to all of the Prepetition Term Loan Secured Parties, will automatically be terminated at the end of the Remedies Notice Period without further notice or order.  Upon expiration of the Remedies Notice Period, the Prepetition Term Loan Administrative Agent and the other Prepetition Term Loan Secured Parties will be permitted to exercise all remedies set forth herein and in the Prepetition Term Loan Documents and as otherwise available at law or in equity without further order of or application or motion to this Court. | |
| **Stipulations and Releases Subject to Challenge; Indemnification**<br><br>*Bankruptcy Rule 4001(b)(1)(B)(iii); Complex Case Procedures ¶ 8(f)* | The Interim Order contains customary stipulations and releases by the Debtors in favor of the Prepetition Term Loan Secured Parties, in their capacities as such, subject to a customary challenge period that is sixty (60) calendar days after entry of the Interim Order; *provided* that if a Committee is appointed prior to the expiration of such seventy-five day period, such Committee shall have until the date that is sixty (60) calendar days after its appointment, except that in no event shall the deadline described above extend beyond the first day of any hearing held in these Chapter 11 Cases to consider confirmation of a chapter 11 plan for the Debtors (as such deadlines may be extended with the express written consent of the Prepetition Term Loan Secured Parties).  The Debtors also agree to indemnify the Prepetition Term Loan Secured Parties for any liabilities arising from the Interim Order, except to the extent such liability is found in a final non-appealable judgment by a court of competent jurisdiction | Interim Order Recital E; ¶16, ¶19, ¶27. |

| Summary of Material Terms | | Location |
|---|---|---|
| | to have resulted solely from such indemnified person's fraud, bad faith or willful misconduct.<br><br>The Committee will have an investigation budget of $25,000 solely to investigate, during the challenge period, any potential challenge, including claims, causes of action, adversary proceedings, or other litigation against the Prepetition Term Loan Secured Parties solely concerning the legality, validity, priority, perfection, enforceability or extent of the Prepetition Term Loan Secured Indebtedness and/or the Prepetition Term Loan Liens. | |
| **Certain Waivers**<br><br>*Bankruptcy Rule 4001(b)(1)(B)(iii)* | Except to the extent of the Carve Out, subject to entry of the Final Order, all rights to surcharge the interests of the Prepetition Term Loan Secured Parties in any Prepetition Collateral or any Collateral under section 506(c) of the Bankruptcy Code or any other applicable principle or equity or law shall be and are hereby finally and irrevocably waived during the term of these Chapter 11 Cases, and such waiver shall be binding upon the Debtors and all parties in interest in these Chapter 11 Cases.<br><br>Subject to entry of the Final Order, the (i) Prepetition Term Loan Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and (ii) the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to any of the Prepetition Term Loan Secured Parties with respect to proceeds, products, offspring or profits of any of the Prepetition Collateral or the Collateral.<br><br>Subject to entry of the Final Order granting such relief, the Prepetition Term Loan Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral or the Collateral. | Interim Order ¶11, ¶25, ¶26. |
| **Intercreditor Agreement** | Pursuant to section 510 of the Bankruptcy Code, notwithstanding anything to the contrary in the Interim Order, that certain Intercreditor Agreement, dated as of June 29, 2022 (as amended, restated, supplemented or otherwise modified from time to time, the "<u>Intercreditor Agreement</u>"), pursuant to which the parties thereto agreed to be bound thereby, and any other applicable intercreditor or subordination provisions contained in any of the Prepetition Term Loan Documents, any of the Subordinated Lien Security Documents (as defined in the Intercreditor Agreement) or otherwise will (a) remain in full force and effect, (b) continue to govern the relative obligations, rights and remedies as between and among the parties thereto and | Interim Order ¶24. |

| Summary of Material Terms | | Location |
|---|---|---|
| | (c) not be deemed to be amended, altered or modified by the terms of the Interim Order unless expressly set forth in the Interim Order or therein. | |
| **Sale Proceeds / Credit Bidding**<br><br>*Bankruptcy Rule 4001(b)(1)(B)(iii);* | Subject to paragraph 19 of the Interim Order and entry of the Final Order, the Debtors will be authorized and directed, upon the closing of a sale of any of the Prepetition Collateral, to immediately pay all proceeds of any such sale (net of transaction costs and expenses acceptable to the Prepetition Term Loan Secured Parties) to the Prepetition Term Loan Administrative Agent to satisfy the Prepetition Term Loan Secured Indebtedness until paid in full, and any order approving the sale of such Prepetition Collateral will provide that the sale is conditioned upon the payment of such Prepetition Term Loan Secured Indebtedness (except in each case to the extent otherwise agreed in writing by the Prepetition Term Loan Administrative Agent and the Prepetition Term Loan Lenders); *provided* that a portion of such sale proceeds will be retained by the Debtors and used to fund the cost of the Chapter 11 Cases pursuant to a budget to be negotiated in good faith by the Debtors and the Prepetition Term Loan Administrative Agent that will be acceptable to the Prepetition Term Loan Secured Parties or otherwise approved by the Court.<br><br>Subject to paragraph 19 of the Interim Order, and the provisions of section 363(k) of the Bankruptcy Code, the Prepetition Term Loan Administrative Agent shall have the right to credit bid (either directly or through one or more acquisition vehicles) up to the full amount of the Prepetition Term Loan Secured Indebtedness, in any sale of all or any portion of the Prepetition Collateral or the Collateral, including, without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any chapter 11 plan. | Interim Order ¶28, ¶29. |
| **Limitation on Use of RIPA Collateral** | Notwithstanding anything to the contrary set forth in the Interim Order, none of the RIPA Collateral may be used, transferred or depleted by the Debtors absent further order of the Court or the written consent of the RIPA Agent. | |

## NEED FOR THE CONTINUED USE OF CASH COLLATERAL

13.     The Debtors have an urgent and immediate need for the use of Cash Collateral in which the Prepetition Term Loan Secured Parties assert an interest, and the Prepetition Term Loan Secured Parties have consented to its use, subject to the terms of the Interim Order and the Final

Order.  The Debtors have been unable to obtain postpetition financing and, without the use of Cash Collateral as proposed here, the Debtors will not be able to preserve their assets or to effectuate an orderly process that will maximize value for creditors.

14.     Without immediate access to Cash Collateral, the Debtors would be forced to immediately terminate all remaining staff, abandon their assets, and cease operations, causing immediate and irreparable harm to these estates.  In order to preserve and maximize the value of the Debtors' assets, the Debtors urge the Court to approve this Motion.

**BASIS FOR RELIEF**

15.     Without immediate access to Cash Collateral, the repercussions to the Debtors' restructuring efforts will be catastrophic and likely irreparable, ending their ability to maximize value for the benefit of all constituents.  The Debtors need to fund, among other things, payroll obligations, tax obligations, payments to suppliers and other vendors for ongoing goods, services, and rent, and other administrative obligations.

16.     If the Motion is not approved, the Debtors' only alternative may be an immediate liquidation that would substantially impair recoveries by creditors and negatively impact recoveries from the Debtors' business operations and sale efforts.  Hence, the relief sought in this Motion should be granted.

**A.     The Debtors Have an Immediate Need to Use Cash Collateral**

17.     Bankruptcy Rule 4001(b) permits a court to approve a Debtors' request for use of cash collateral during the 14-day period following the filing of a motion requesting authorization for such use, "only . . . as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing."[5]  In examining requests for interim relief under this rule, courts apply the

---

[5]     Bankruptcy Rule 4001(b)(2).

same business judgment standard applicable to other business decisions.[6] After the 14-day period, the request for use of cash collateral is not limited to those amounts necessary to prevent harm to the debtor's business.

18.    As previously noted, in order to address their working capital needs and fund other costs and expenses associated with their reorganization efforts, the Debtors require immediate access to Cash Collateral in which the Prepetition Term Loan Secured Parties assert an interest. The use of such Cash Collateral will provide the Debtors with the necessary capital with which to maintain their assets, including funding the Debtors' obligations to employees.  Access to such Cash Collateral will allow the Debtors to run an orderly process that will maximize value for creditors.  The Debtors do not have adequate available sources of working capital or financing without the use of Cash Collateral.

19.    Further, the alternative in this case is "to force the Debtors to close down their operations and thus doom any effort at reorganization which will hopefully extract the maximum value of the assets involved to the benefit of all classes of creditors and other constituencies involved in this case."[7]  Because this result would be at fundamental odds with the rehabilitative purposes of chapter 11, approval of this Motion is warranted.[8]

B.    **Section 363 of the Bankruptcy Code Authorizes the Debtors' Use of Cash Collateral**

20.    Section 363(c)(2) of the Bankruptcy Code provides that a debtor in possession may not use cash collateral unless (i) each entity that has an interest in such cash collateral provides

---

[6]    *See, e.g., In re Simasko Production Co.*, 47 B.R. 444, 449 (D. Colo. 1985); *see also In re Ames Dep't Stores Inc.*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990).

[7]    *In re Dynaco Corp.*, 162 B.R. 389, 396 (Bankr. D.N.H. 1993).

[8]    *Id.* at 394 (noting that "it is apparent that the Congress intended business under reorganization to proceed in as normal a fashion as possible") (quoting *In re Prime, Inc.*, 15 B.R. 216, 219 (Bankr. W.D. Mo. 1981)).

consent, or (ii) the court approves the use of cash collateral after notice and a hearing.[9]   Section 363(e) of the Bankruptcy Code provides that, "on request of an entity that has an interest in property used . . . or proposed to be used . . . by the [Debtors in possession], the court . . . shall prohibit or condition such use . . . as is necessary to provide adequate protection of such interest."[10]

21.     Neither section 361 nor any other provision of the Bankruptcy Code defines the nature and extent of the "interest in property" of which a secured creditor is entitled to adequate protection under section 361.   However, the statute plainly provides that a qualifying interest demands protection only to the extent that the use of the creditor's collateral will result in a decrease in "the value of such entity's interest in such property."[11]

22.     The phrase "value of such entity's interest," although not defined in the Bankruptcy Code, was addressed by the Supreme Court in the landmark *Timbers* decision.[12] For the meaning of "value of such entity's interest," the Supreme Court was guided by section 506(a).  The phrase 'value of such creditor's interest' in § 506(a) means 'the value of the collateral.'[13]   The Debtors assert that the phrase 'value of such entity's interest' in sections 361(1) and (2), when applied to secured creditors, means the same.[14]

---

9    *See* 11 U.S.C. § 363(c).

10   11 U.S.C. § 363(e).

11   11 U.S.C. §§ 361, 363(e); *see also General Elec. Mortgage Corp. v.  South Village, Inc. (In re South Village, Inc.)*, 25 B.R. 987, 989-90 & n.4 (Bankr. D. Utah 1982).

12   *United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 108 S.Ct. 626 (1988); *see also In re 495 Central Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) (goal is to "safeguard the secured creditor from diminution in the value of its interest"); *Lincoln Nat'l Life Ins. Co. v. Craddock-Terry Shoe Corp. (In re Craddock-Terry Shoe Corp.)*, 98 B.R. 250, 255 (Bankr. W.D. Va. 1988) (finding that what needs to be adequately protected is the decrease in value attributable to the stay arising on the petition date).

13   H.R. Rep. No. 950-595, pp. 181, 356 (1977); *see also* S. Rep. No. 95-989, p. 68 (1978), U.S. Code Cong. & Admin. News, 1978 pp. 5787, 5854, 6141, 6312

14   *Timbers*, at 630 (emphasis added).

23.     As set forth in *Timbers*, a secured creditor is entitled to "adequate protection" only against diminution in the value of the collateral securing the creditor's allowed secured claim. Under *Timbers*, therefore, where the "value of the collateral" is not diminishing by its use, sale, or lease, the creditor's interest is adequately protected.  This conclusion flows directly from the equivalency of "value of such entity's interests" with "value of the collateral." Moreover, diminution is not equivalent to cash collateral use.  A prepetition lender is "not entitled to an adequate protection claim on a dollar-for-dollar basis for cash collateral used during the case."[15]

24.     Section 361 of the Bankruptcy Code provides that periodic cash payments, replacement liens, or relief constituting the "indubitable equivalent" of the creditor's interest may provide adequate protection.  Provision of a replacement lien in property equal to the value of the cash collateral used specifically complies with section 361(2) and provides adequate protection within the meaning of section 363(e) of the Bankruptcy Code.[16]

25.     Here, the Prepetition Term Loan Secured Parties have consented to the use of their Cash Collateral, subject to the terms of the Interim Order and the Final Order.  Further, the Debtors have proposed to grant adequate protection in favor of the Prepetition Term Loan Secured Parties, to the extent of any diminution in value, in the form of (a) additional and replacement liens on the Collateral, (b) allowed superpriority claims payable from substantially all estate assets, (c) reimbursement of reasonable professional fees, and (d) ongoing reporting.   The Debtors believe that the proposed adequate protection components described above are fair and reasonable and compensate the Prepetition Term Loan Secured Parties for any possible diminution in value of their interests in the Debtors' assets.  Given the significant value that the Debtors stand to lose in

---

[15] `*Official Comm. v. UMB Bank, NA (In re Residential Capital, LLC)*, 501 B.R. 549, 596-97 (Bankr. S.D.N.Y. 2013).

[16]  *See, e.g., MBank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1398, 1396 (10th Cir. 1987); *In re Dynaco Corp.*, 162 B.R. 389, 393-95 (Bankr. D. N.H. 1993); *In re T.H.B. Corp.*, 85 B.R. 192, 195 (Bankr. D. Mass. 1988).

the event that they are denied access to continued use of Cash Collateral, such protections are wholly appropriate and justified.  Accordingly, the Court should grant the Motion.

## PROPOSED INTERIM ORDER AND FINAL HEARING

26.     Pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), the Debtors request that the Court set a date for the Final Hearing that is as soon as practicable, and fix the time and date prior to the final hearing for parties to file objections to this Motion.

27.     The urgent need to preserve the Debtors' business, and avoid immediate and irreparable harm to the Debtors' estates, makes it imperative that the Debtors are authorized to use Cash Collateral as of the Petition Date, pending the Final Hearing, in order to continue their business and administer these Chapter 11 Cases.  Without the ability to use Cash Collateral, the Debtors would be unable to meet their postpetition obligations or to fund their working capital needs, thus causing irreparable harm to the value of the Debtors' estates and effectively ending the Debtors' reorganization efforts.  Accordingly, the Debtors respectfully request that, pending the hearing on a Final Order, the Interim Order be approved in all respects and that the terms and provisions of the Interim Order be implemented and be deemed binding and that, after the Final Hearing, the Final Order be approved in all respects and the terms and provisions of the Final Order be implemented and be deemed binding.

## EMERGENCY CONSIDERATION

28.     The Debtors request emergency consideration of the Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm."  As set forth above, the Debtors require the immediate access to Cash Collateral to continue operations.  The failure to receive the requested relief within three (3) days after the

Petition Date will materially jeopardize the Debtors' ability to maximize value at this critical juncture. The Debtors have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and request that the Court approve the relief requested herein on an emergency basis.

## RESERVATION OF RIGHTS

29.     Nothing contained in this motion or any order granting the relief requested in this motion, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with any such order), is intended as or shall be construed or deemed to be: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in this motion or any order granting the relief requested by this motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.

## WAIVER OF BANKRUPTCY RULES 6004(a) AND 6004(h)

30.     The Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## NOTICE

31.      Notice of the hearing on the relief requested in this Motion will be provided by the Debtors in accordance and compliance with Bankruptcy Rules and Local Rules.  The Debtors will provide notice of this motion to the following: (a) the U.S. Trustee for the Southern District of Texas, (b) the holders of the thirty largest unsecured claims against the Debtors (on a consolidated basis), (c) counsel to Oaktree Fund Administration, LLC and its counsel, Sullivan & Cromwell LLP, as primary counsel, and Bracewell LLP, as local counsel, (d) the Debtors' Prepetition Secured Parties, (e) the United States Attorney's Office for the Southern District of Texas, (f)  the Internal Revenue Service, (g) the United States Securities and Exchange Commission, (h) the state attorneys general for states in which the Debtors conduct business, (i) governmental agencies having a regulatory or statutory interest in these cases, and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002 and Bankruptcy Local Rule 9013-1(d).  No other or further notice is needed in light of the nature of the relief requested.

## CONCLUSION

**WHEREFORE**, the Debtors request that the Court enter the Orders granting the relief requested herein and such other and further relief as may be just and proper under the circumstances.

[*Remainder of page intentionally left blank*]

Dated: May 14, 2023

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Michael D. Warner*

Michael D. Warner (SBT 00792304)
Maxim B. Litvak (SBT 24002482)
Benjamin L. Wallen (SBT 24102623)
440 Louisiana Street, Suite 900
Houston, TX 77002
Telephone: (713) 691-9385
Facsimile:  (713) 691-9407
mwarner@pszjlaw.com
mlitvak@pszjlaw.com
bwallen@pszjlaw.com

-and-

Richard M. Pachulski (*pro hac vice* pending)
Debra I. Grassgreen (*pro hac vice* pending)
Shirley S. Cho (*pro hac vice* pending)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
rpachulski@pszjlaw.com
dgrassgreen@pszjlaw.com
scho@pszjlaw.com

*Proposed Counsel to the Debtors and Debtors in Possession*

### Certificate of Service

I certify that on May 14, 2023, I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ Michael D. Warner
Michael D. Warner