\

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |
|---|---|
| In re: | Chapter 11 |
| ATHENEX, INC., et al., | Case No. 23-90295 (DRJ) |
| Debtors. [1] | (Joint Administration Requested) |

**DEBTORS' <u>EMERGENCY</u> MOTION FOR ENTRY OF INTERIM AND FINAL
ORDERS (I) AUTHORIZING MAINTENANCE OF EXISTING BANK
ACCOUNTS; (II) AUTHORIZING CONTINUANCE OF EXISTING CASH
MANAGEMENT SYSTEM; (III) GRANTING LIMITED WAIVER OF SECTION
345(b) DEPOSIT REQUIREMENTS; (IV) AUTHORIZING CONTINUED
PERFORMANCE OF INTERCOMPANY TRANSACTIONS
AND FUNDING; AND (V) GRANTING RELATED RELIEF**

**Emergency relief has been requested. Relief is requested not later than May 16, 2023.**

**If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**A hearing will be conducted on this matter on May 16, 2023, at 5:00 p.m. (prevailing Central Time). Participation at the hearing will only be permitted by an audio and video connection.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Jones's conference room number is 205691. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Jones's homepage. The meeting code is "JudgeJones". Click the settings icon in the upper right corner and enter your name under the personal information setting.**

**Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Jones's homepage. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

---

[1]   A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/athenex. The location of Athenex, Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 1001 Main Street, Suite 600, Buffalo, NY 14203.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state the following in support of this motion (this "Motion"):

## RELIEF REQUESTED

1.     By this Motion, the Debtors respectfully request entry of an interim order, (the "Proposed Interim Order"), and a final order (the "Proposed Final Order"):  (i) authorizing the Debtors to (a) continue operating the Cash Management System (as defined herein); (b) honor and pay the Bank Fees (as defined herein) in the ordinary course, including any prepetition Bank Fees; (c) maintain existing business forms; and (d) continue intercompany transactions and funding consistent with the Debtors' historical practices, subject to the terms described herein; (ii) granting a limited waiver of the deposit and investment requirements imposed by section 345(b) of the Bankruptcy Code; and (iii) granting related relief.

## JURISDICTION AND VENUE

2.     The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).  The Debtors confirm their consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") to the entry of a final order by the Court.

3.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.     The bases for the relief requested herein are sections 105, 345, 363, and 503 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy Rules 6003 and 6004, and Rule 9013-1 of the Local Rules for the Southern District of Texas (the "Local Rules").

2

## GENERAL BACKGROUND

5.      On the date hereof (the "Petition Date"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors has been appointed in these Chapter 11 Cases.

6.      The Debtors are a global oncology-focused biopharmaceutical company dedicated to the discovery, development, and commercialization of novel therapies for the treatment of cancer, aiming to develop safer, and more efficacious cancer medication. The Debtors' mission is to improve the lives of cancer patients by creating more effective, safer and tolerable treatments.

7.      Additional information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of these Chapter 11 Cases is set forth in the *Declaration of Nicholas K. Campbell, in Support of the Debtors' Chapter 11 Petitions and First Day Relief* (the "First Day Declaration"),[2] which has been filed with the Court contemporaneously herewith and is incorporated by reference herein.

## THE CASH MANAGEMENT SYSTEM

8.      In the ordinary course of business, the Debtors utilize a centralized cash management system (the "Cash Management System") to collect, manage, and disburse funds used in their business.  The Cash Management System is essential to the stability of the Debtors' assets and business objectives and to maximizing the value of their estates.  Importantly, the continuity

---

[2]     A capitalized term used but not otherwise defined herein shall have the meaning ascribed to it in the First Day Declaration.

of the Cash Management System is critical to avoid disruption in the Debtors' operations, which are conducted through various business divisions and international entities.

9.      The Cash Management System is tailored to meet the operating needs of the Debtors by enabling them to centrally control and monitor corporate funds, ensure cash availability and liquidity, and reduce administrative burdens by facilitating the movement of funds between and among the Debtors.  These controls are critical to the operation of the Debtors' businesses given the significant volume of transactions managed through the Cash Management System.  The Debtors' treasury department maintains daily oversight over the Cash Management System and controls the entering, processing, and releasing of funds, including in connection with Intercompany Transactions (defined below).  As the Debtors require prompt access to cash for their daily operations, any disruption of the Cash Management System would have an immediate and devastating adverse effect on the Debtors' operations to the detriment of their estates and stakeholders.

## Bank Accounts and Funds Flow

10.     As of the Petition Date, the Debtors maintain bank accounts (the "Debtor Bank Accounts" or "Bank Accounts") at three (3) different banks (the "Cash Management Banks" or "Banks"). The Debtors' primary Cash Management Bank is Key Bank, at which the Debtors maintain ten (10) Bank Accounts. A listing of the Bank Accounts and applicable information therefor is set forth in **Exhibit 1** (schematic overview), **Exhibit 2** (listing of closed or inactive accounts), and **Exhibit 3** (listing of prepetition date balances) attached hereto.

11.     The Debtors have approximately twelve (12) open Bank Accounts, of which nine (9) are currently active. In due course, the Debtors expect to close their three (3) inactive Bank

4

Accounts unless business needs for such accounts arise during the cases. The basic elements of the current Cash Management System (as further illustrated by **Exhibit 1**) consist of:

- *Operating Accounts.* Each of the Debtors other than Cell Medica, Inc., maintains an operating account at Key Bank.

- *Investment/Sweep Account.* The Debtors maintain an overnight investment/sweep account at Key Bank. This account does not maintain a balance. It sweeps cash in excess of $300,000 nightly from the Debtor Athenex Inc.'s operating account at Key Bank. If the account balance is under $300,000, there will be nothing swept that evening. The sweep replenishes the account with interest the following day.

- *Restricted Accounts.* The Debtors maintain two (2) additional Bank Accounts at Key Bank, each of which holds funds for a specific purpose. One of these Key Bank accounts is maintained pursuant to the Debtors' prepetition credit agreement with Oaktree for the purpose of holding an interest reserve. The other account holds funds securing a letter of credit that was issued for the benefit of Athenex Pharmaceutical Division, LLC's commercial real property lessor.

- *Investment Account.* Approximately $3.18 million of funds on deposit in an account at UBS is invested in money market mutual funds.

Payments to creditors and other parties are made from the Bank Accounts, in a variety of ways, including checks, drafts, wire transfers, credit cards, and automated clearinghouse ("ACH") transfers.

12.     All funds on deposit in the Debtors' Bank Accounts are insured by the Federal Deposit Insurance Corporation to the extent provided by law.  All but one of the Cash Management Banks are on the Region 7 U.S. Trustee's list of approved depository institutions. The only account

held at an institution listed on **Exhibit 1** that is not U.S. Trustee-approved (the "<u>Non-U.S. Trustee</u> <u>Approved Depository</u>") is the investment account at UBS. The funds deposited into the UBS account are invested in overnight money market mutual funds. Funds are not disbursed from the investment account to third parties.

### **Intercompany Transactions**

13.     In the ordinary course of business, the Company engages in intercompany transactions and transfers of funds among various Bank Accounts ("<u>Intercompany Transactions</u>"). As a result, Intercompany Transactions may exist that reflect intercompany receivables and payables ("<u>Intercompany Claims</u>") made in the ordinary course of business between and among Debtors.

14.     These Intercompany Claims include, among others, intercompany obligations arising from the transfer of cash receipts owing to Debtor Athenex Pharma Solutions, LLC ("<u>APS</u>"), that are collected by non-Debtor ANTX SPV LLC ("<u>SPV</u>") and transferred to Athenex, Inc. ("<u>ATNX</u>"), resulting in Intercompany Claims between ATNX and APS.  ATNX, in turn, transfers cash to other entities in the enterprise, including monthly transfers to the Debtors' international subsidiaries whose operations in Hong Kong, Taiwan, Europe, the UK and Latin America (research, trials and other businesses).

15.     The Debtors record and track the Intercompany Transactions and Intercompany Claims that occur across the corporate structure, as and after they occur, through entries in the general ledger. On a postpetition basis, the Debtors will continue to track, record, and monitor Intercompany Transactions in the ordinary course of business.

16.     By this Motion, the Debtors seek to balance their desire to minimize disruptions to their businesses and preserve estate value, on the one hand, and to provide this Court with an

DOCS_LA:348694.7 14039/001

appropriate level of supervision and oversight, on the other hand.  Thus, the Debtors propose the following approach with respect to each postpetition Intercompany Transaction (each, a "Postpetition Intercompany Transaction"):  the Debtors seek authority, but not direction, to continue entering into ordinary course Postpetition Intercompany Transactions (including with respect to any netting and setoff) without further notice or Court approval.  The Debtors will maintain current records with respect to all postpetition cash transfers so that all Postpetition Intercompany Transactions may be readily ascertained, traced and properly recorded on any applicable intercompany accounts.

17.     Further, to ensure that no Debtor will fund the operations of a Debtor at the expense of such entity's creditors, the Debtors respectfully request, pursuant to Bankruptcy Code sections 503(b)(1) and 364(b), that all Intercompany Claims on account of valid postpetition transfers from a Debtor to another Debtor be accorded administrative expense status, subject and junior only to the claims, including adequate protection claims, granted in connection with the Debtors' use of cash collateral, and in accordance with any interim and final order, as applicable, approving the use of cash collateral (collectively, the "Cash Collateral Orders"); *provided* that any Intercompany Claims on account of an antecedent debt shall not be accorded administrative expense status.

### Bank Fees

18.     The Debtors incur certain fees and charges in connection with the ordinary course operation of the Cash Management System (collectively, the "Bank Fees").  The Bank Fees include account maintenance charges, charges relating to ACH and wire transfers, lockbox and depository service charges, and other customary miscellaneous charges.  On average, the Debtors incur approximately $5,000-$10,000 in Bank Fees per month.  In the ordinary course of business and typically on a monthly basis, the Bank charges the Debtors and deducts from the appropriate bank

7

accounts certain service charges, and other fees, costs, and expenses.  The Debtors do not believe there are any material prepetition Bank Fees outstanding on the Petition Date, but nonetheless seek approval to pay and, for the Bank to deduct, any such Bank Fees in the ordinary course when due.

## Business Forms

19.     The Debtors utilize numerous preprinted business forms in the ordinary course of their business (including, without limitation, letterhead, purchase orders, invoices, and checks), including in connection with their Cash Management System.  The Debtors would be required by the United States Trustee (the "U.S. Trustee") under the U.S. Trustee's *Operating Guidelines for Chapter 11 Case* (the "U.S. Trustee Guidelines") to incur the expense and delay of ordering entirely new business forms referencing the Debtors' status as debtors-in-possession absent relief from the Court.  The Debtors seek authority to use pre-existing business forms without such a reference in order to minimize expense to the estates.  The Debtors submit that parties in interest will not be prejudiced if such relief is granted because parties doing business with the Debtors will likely be aware of their status as debtors-in-possession and, therefore, changing business forms is unnecessary and would be unduly burdensome.  In accordance with Local Rule 2015-2(a), to the extent the Debtors exhaust their existing supply of checks, the Debtors will reorder checks with the designation "Debtor-in-Possession" and the corresponding case number.

## Compliance with the U.S. Trustee Guidelines and Section 345 of the Bankruptcy Code

20.     Pursuant to the U.S. Trustee Guidelines, the U.S. Trustee generally requires chapter 11 debtors to, among other things, deposit all estate funds into an account with an authorized depository that agrees to comply with the requirements of the U.S. Trustee's office. All of the Bank Accounts set forth in **Exhibit 1** are FDIC-insured (up to applicable limits), and all but one of the Bank Accounts are maintained at institutions that have executed a Uniform

8

Depository Agreement ("UDA") with, and are designated as authorized depositories by, the U.S. Trustee, pursuant to the U.S. Trustee Operating Guidelines. The Debtors believe that the Non-U.S. Trustee Approved Depository is reputable and financially stable.

21.     As set forth in the Proposed Interim Order, with respect to the foregoing entities, the Debtors request up to thirty days following entry of the Interim Order (subject to the right to seek additional extensions) to comply with section 345(b) or to make other arrangements to which the U.S. Trustee agrees.

22.     As discussed herein, the Debtors submit that they are in compliance with section 345 of the Bankruptcy Code and with the U.S. Trustee Operating Guidelines and/or in the case of the afore-mentioned institutions, any applicable U.S. Trustee and section 345 requirements could properly be waived. Given the Debtors' extensive operations and cash management requirements overall, it is not feasible to consolidate all applicable cash activities to the narrow group of financial institutions approved in the U.S. Trustee Guidelines. Requiring the Debtors to adopt a new cash management system relating to the Debtors' widespread business operations at this critical stage of the Chapter 11 Cases would be unduly expensive, create unnecessary administrative burdens, and be extraordinarily disruptive to the operation of the Debtors' business. The Debtors believe that all of the Bank Accounts are maintained at reputable, financially stable banks and financial institutions, which are well-positioned to continue performing depository and cash management functions during the Chapter 11 Cases. As set forth in the Proposed Interim Order, the Debtors will work collaboratively with the U.S. Trustee to address any concerns it may have, subject to the Debtors' right to seek further relief with this Court.

23.     In sum, the Cash Management System is critical to the ongoing stability of the Debtors' businesses and smooth transition into chapter 11. Requiring the Debtors to transfer any

9

of the above-described Bank Accounts to other depositories would place a needless and excessive administrative burden on the Debtors and impose significant, value-destructive costs to the Debtors' estates.  In any event, the Debtors will continue to work in good faith with the U.S. Trustee to address any concerns regarding the continued use of these accounts on a postpetition basis.

## **BASIS FOR RELIEF**

### **A.    The Debtors Should Be Permitted to Continue Using the Cash Management System**

24.    The U.S. Trustee Guidelines require debtors in possession to, among other things: (a) close all existing bank accounts and open new debtor-in-possession bank accounts; (b) establish one debtor-in-possession account for all estate monies required for payment of taxes including payroll taxes; (c) physically set aside all monies required by law to be withheld from employees or collected from others for taxes; (d) open a new set of books and records as of the commencement date of the case; (e) use new business forms indicating the debtor-in-possession status of the chapter 11 debtor, including checks that bear the designation "debtor in possession" and reference the bankruptcy case number on such checks; and (f) make all disbursements of estate funds by check with a notation representing the reason for the disbursement.[3]  These guidelines are intended to provide a clear line of demarcation between prepetition and postpetition transactions and operations and to prevent inadvertent payment of prepetition claims.

25.    The efficient and economical operation of the Debtors' business requires that the Cash Management System continue during the pendency of these Chapter 11 Cases.  As a practical matter, it would be difficult and expensive to establish and maintain a separate cash management system for each Debtor.  Further, requiring the Debtors to adopt new cash management systems at

---

[3]    *See* Region 7 Guidelines for Debtors-in-Possession.

DOCS_LA:348694.7 14039/001

this early and critical stage of these cases would be expensive, create unnecessary administrative burdens, and be extraordinarily disruptive to their business operations. Any such disruption would have a severe and adverse impact upon the success of these Chapter 11 Cases. Accordingly, the Debtors seek authority to continue using the Cash Management System in the same manner as the Cash Management System was utilized prior to the Petition Date, and to implement ordinary course changes to the Cash Management System consistent with past practices.

26. Section 363(c)(1) of the Bankruptcy Code authorizes a debtor to "use property of the estate in the ordinary course of business without notice or a hearing."[4] The purpose of this section is to provide a debtor with flexibility to engage in ordinary transactions required to operate its business without excessive oversight by its creditors or the court.[5] Included within the purview of section 363(c) of the Bankruptcy Code is a debtor's ability to continue the "routine transactions" necessitated by a debtor's cash management system,[6] which system allows a debtor "to administer more efficiently and effectively its financial operations and assets."[7] Bankruptcy courts treat requests for authority to continue utilizing existing cash management systems as a relatively "simple matter"[8] and have recognized that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash

---

[4]   11 U.S.C. § 363(c)(1).

[5]   *See, e.g., In re HLC Props., Inc.*, 55 B.R. 685, 686 (Bankr. N.D. Tex. 1985) (finding "no need to further burden the docket or the staff of the Court with a superfluous order" when a transaction is in the ordinary course of business); *see also In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992) ("Section 363 is designed to strike [a] balance, allowing a business to continue its daily operations without excessive court or creditor oversight and protecting secured creditors and others from dissipation of the estate's assets.") (internal quotations omitted); *Malpractice Ins. Ass'n v. Hirsch* (*In re Lavigne*), 114 F.3d 379, 384 (2d Cir. 1997).

[6]   Amdura Nat'l Distrib. Co. v. Amdura Corp. (In re Amdura Corp.), 75 F.3d 1447, 1453 (10th Cir. 1996).

[7]   *Southmark Corp. v. Grosz* (*In re Southmark Corp.*), 49 F.3d 1111, 1114 (5th Cir. 1995); *see also In re Collins & Aikman Corp.*, 401 B.R. 900, 902 (Bankr. E.D. Mich. 2009) (characterizing the debtors' continued use of a cash management system as critical to operations and necessary to efficiently and effectively operate large and complex business operations).

[8]   *In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987).

accounts for the many different purposes that require cash."[9]  As a result, courts have concluded that the requirement to maintain all accounts separately "would be a huge administrative burden and economically inefficient."[10]

27.     Requiring the Debtors to adopt a new cash management system during these Chapter 11 Cases would be expensive, burdensome, and unnecessarily disruptive to the Debtors' operations.  The Cash Management System provides the Debtors with the ability to, among other things, assess the location and amount of funds, which, in turn, allows management to track and control such funds, ensure cash availability, and reduce administrative costs through a centralized method of coordinating the collection and movement of funds.  Any disruption of the Cash Management System could have a severe adverse effect on the Debtors' restructuring efforts, the cost of which would ultimately be borne by the Debtors' creditors and other stakeholders.  By contrast, maintaining the current Cash Management System will facilitate the Debtors' smooth transition into chapter 11 by, among other things, minimizing delays in paying postpetition debts and eliminating administrative inefficiencies.  Finally, maintaining the current Cash Management System will allow the Debtors' treasury and accounting employees to focus on their daily responsibilities as opposed to unnecessarily reconstructing the Cash Management System.

**B.      Authorizing the Banks to Continue to Maintain, Service, and
          Administer the Bank Accounts in the Ordinary Court of Business is Warranted**

28.     The Debtors request that the Court authorize and direct the Banks to receive, process, honor, and pay, to the extent funds are available in each applicable Bank Account, any and all checks, electronic funds transfers, credit card, ACH payments, and other instructions, and

---

9    *In re Columbia Gas Sys. Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part and rev'd in part*, 997 F.2d
     1039 (3d Cir. 1993).

10   *Columbia Gas*, 997 F.2d at 1061.

12

drafts payable through, or drawn or directed on, such Bank Accounts after the Petition Date by holders, makers, or other parties entitled to issue instructions with respect thereto, irrespective of whether such checks, drafts, electronic fund transfers, credit card, or ACH payments are dated prior or subsequent to the Petition Date.  The Debtors also request that, to the extent a Bank honors a prepetition check or other item drawn on any account that is the subject of this Motion, either at the direction of the Debtors or in a good-faith belief that the Court has authorized such prepetition check or item to be honored, such Bank will not be deemed to be liable to the Debtors or their estates on account of such prepetition check or other item honored postpetition.  Such relief is reasonable and appropriate because the Banks are not in a position to independently verify or audit whether the Debtors may pay a particular item in accordance with a Court order or otherwise. Considering the breadth and complexity of their operations, the Debtors need to conduct certain transactions by debit, electronic fund, ACH payments, and other similar methods.  If the Debtors are denied the opportunity to conduct transactions by debit, electronic fund, ACH payments, or other methods used in the ordinary course of business, the Debtors likely would have difficulty performing on their contracts and the Debtors' business operations would be disrupted unnecessarily, burdening the Debtors and their creditors with additional costs.

**C.** **Maintenance of the Debtors' Existing Bank Accounts
and Business Forms is Warranted**

29.     The U.S. Trustee Guidelines generally require that a chapter 11 debtor, among other things: (i) open new bank accounts at a depository approved by the U.S. Trustee; (ii) establish one debtor in possession account for all estate monies required for the payment of taxes (including payroll taxes); (iii) close all existing bank accounts and open new debtor in possession accounts; (iv) maintain a separate debtor in possession account for cash collateral; (v) obtain checks that bear

13

the designation "Debtor in Possession"; and (vi) reference the debtor's bankruptcy case number and type of account on each such check.[11]

30.     The Debtors request that the Court waive the requirements of the U.S. Trustee Guidelines, which would require, among other things, the closure of the Bank Accounts and the opening of new deposit accounts.  Strict enforcement of the U.S. Trustee Guidelines with respect to the Cash Management System will severely disrupt the Debtors' ordinary financial operations by reducing efficiencies, increasing administrative burdens, and creating unnecessary expenses. These Chapter 11 Cases will be more orderly if the Debtors are permitted to maintain all Bank Accounts with the same account numbers during these cases. By preserving business continuity and avoiding the disruption and delay to the Debtors' disbursement obligations, all parties-in-interest, including employees, vendors, and customers, will be best served by the relief requested herein.  Furthermore, the Debtors' continued use of their existing Business Forms will not prejudice parties in interest because parties doing business with the Debtors will likely know of the Debtors' status as debtors in possession.  In addition, to the extent necessary, the Debtors request authority to make ordinary course changes to the Cash Management System, such as opening or closing their accounts in accordance with the Debtors' prepetition practices.

31.     Additionally, the Debtors should be permitted to maintain their existing Books and Records rather than open a new set as required under the U.S. Trustee Guidelines.  The Debtors use a sophisticated recordkeeping system that enables them to consolidate their Books and Records for financial reporting purposes while tracking the flow of funds with respect to individual Debtor entities. Continued use of the Debtors' current Books and Records, therefore, will maximize

---

[11]     *See* U.S. Dep't of Justice, Region 7 Guidelines for Debtors-in-Possession § IV (2022) (available at https://www.justice.gov/ust-regions-r07/file/r07_dip_guidelines.pdf/download).

DOCS_LA:348694.7 14039/001

efficiency and decrease administrative burden while maintaining the precise entity-by-entity reporting contemplated by the U.S. Trustee.

**D.      Payment of Bank Fees and Other Prepetition Obligations Related
to the Bank Accounts Will Facilitate a Smooth Transition into Chapter 11**

32.      The Debtors believe that they have authority generally to pay prepetition Bank Fees and other prepetition obligations related to the Cash Management System and to continue satisfying these obligations as they arise during these Chapter 11 Cases because such payments are ordinary course.[12]  However, in an abundance of caution, this Motion seeks authority to pay such fees and satisfy such obligations in the event that payment of these obligations are not considered ordinary course.

33.      Section 363(b) of the Bankruptcy Code permits a debtor to, subject to court approval, pay prepetition obligations where a sound business purpose exists for doing so.[13]  In addition, under section 1107(a) of the Bankruptcy Code, a debtor in possession has, among other things, the "implied duty of the debtor-in-possession to 'protect and preserve the estate, including an operating business' going-concern value.'"[14]  Under section 105(a) of the Bankruptcy Code, "the Court may issue any order, process, or judgment that is necessary or appropriate to carry out

---

[12]    *See* 11 U.S.C. § 363(c) ("If the business of the debtor is authorized to be operated under section . . . 1108 . . . and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.").

[13]    *See In re Ionosphere Clubs*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (noting that section 363(b) of the Bankruptcy Code provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification).

[14]    *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)); *see also In re Equalnet Commc'ns Corp.*, 258 B.R. 368, 369 (Bankr. S.D. Tex. 2000) (noting that courts authorize debtors to pay, outside of a plan, prepetition claims from "business transactions which are at once individually minute but collectively immense and critical to the survival of the business of the debtor.").

15

the provisions of the Bankruptcy Code."[15]  The above-referenced sections of the Bankruptcy Code have been interpreted to authorize the postpetition payment of prepetition claims when the payments are critical to preserving the going-concern value of the debtor's estate, as is the case here.[16]

34.     The Debtors request authority to pay prepetition Bank Fees and other costs related to the Cash Management System as they become due in the ordinary course.  Authority to make such payments is necessary to the Debtors' operations, which are predicated on an uninterrupted flow of funds between Bank Accounts.  If the Debtors do not pay their Bank Fees, then their relationships with the Banks, which are crucial to their ongoing business operations, may be materially damaged.  Further, the Debtors' management and advisors may be forced to spend time and resources on unnecessary disputes with the Banks at this critical juncture. The Debtors believe that any interference or delay in any of these programs is unnecessary and unduly burdensome.

**E.     The Court Should Authorize the Debtors to Continue Engaging in Postpetition Intercompany Transactions and Grant Administrative Expense Status to Postpetition Intercompany Balances**

35.     Allowing the Debtors to engage in postpetition Intercompany Transactions is in the best interests of the Debtors' estates and their creditors, and the Debtors seek authority to enter into such Intercompany Transactions in the ordinary course of business. The Debtors will continue to maintain records of Intercompany Transactions, including records of all current intercompany accounts receivables and payables.  If the Intercompany Transactions were to be discontinued, the

---

[15]   11 U.S.C. § 105(a); *see also CoServ*, 273 B.R. at 497 (finding that sections 105 and 1107 of the Bankruptcy Code provide the authority for a debtor in possession to pay pre-petition claims); *In re Mirant Corp.*, 296 B.R. 427, 429 (Bankr. N.D. Tex. 2003) (noting that non-payment of prepetition claims may seriously damage a debtor's business).

[16]   *See, e.g., CoServ*, 273 B.R. at 497 ("[I]t is only logical that the bankruptcy court be able to use [s]ection 105(a) of the [Bankruptcy] Code to authorize satisfaction of the prepetition claim in aid of preservation or enhancement of the estate.").

16

Cash Management System and related administrative controls would be disrupted to the Debtors'

and their estates' detriment.  The continued performance of the Intercompany Transactions is in

the best interest of the Debtors' estates and their creditors. The Debtors request the authority to

continue conducting the Intercompany Transactions in the ordinary course of business without

need for further Court order.

**F.     Cause Exists for Waiving the Deposit Requirements Set Forth in Section 345
         of the Bankruptcy Code and the U.S. Trustee Guidelines Regarding Debtors'
         Bank Accounts Not At U.S. Trustee-Approved Depositories on an Interim
         and Final Basis[17]**

36.     The Debtors further seek a waiver of the deposit requirements set forth in section

345 of the Bankruptcy Code.  Section 345(a) of the Bankruptcy Code authorizes deposit or

investment of money of estates, such as cash, as "will yield the maximum reasonable net return on

such money, taking into account the safety of such deposit or investment."  For deposits that are

not "insured or guaranteed by the United States or by a department, agency or instrumentality of

the United States or backed by the full faith and credit of the United States," section 345(b) of the

Bankruptcy Code provides that the estate must require from the entity with which the money is

deposited or invested a bond in favor of the United States secured by the undertaking of a corporate

security, "unless the court for cause orders otherwise."  Additionally, under the U.S. Trustee

Guidelines, debtors in possession must, among other things, close prepetition bank accounts and

open new "debtor in possession" operating, payroll, and tax accounts at one or more authorized

depositories.

---

[17]  As set forth above, the Debtors do not seek, pursuant to the Proposed Interim Order, any waiver of section 345 of
the Bankruptcy Code and will work with the U.S. Trustee to address any concerns it may have with the goal of
reaching a consensual resolution.  The Debtors preserve the right to seek a waiver of section 345 of the Bankruptcy
Code and the U.S. Trustee Guidelines if not such resolution is reached.

37.    Deposit and investment of cash in strict compliance with the requirements of section 345(b) would, in large chapter 11 cases such as these, be inconsistent with section 345(a), which permits a debtor in possession to make such investments of money of the estate "as will yield the maximum reasonable net return on such money."  Thus, in 1994, to avoid "needlessly handcuff[ing] larger, more sophisticated debtors," Congress amended section 345(b) to provide that its strict investment requirements may be waived or modified if the Court so orders "for cause."[18]  In evaluating whether "cause" exists, courts have considered a number of factors such as: (1) the sophistication of the debtor's business; (2) the size of the debtor's business operations; (3) the amount of the investments involved; (4) the bank ratings (Moody's and Standard & Poor) of the financial institutions where the debtor in possession funds are held; (5) the complexity of the case; (6) the safeguards in place within the debtor's own business for ensuring the safety of the funds; (7) the debtor's ability to reorganize in the face of a failure of one or more of the financial institutions; (8) the benefit to the debtor; (9) the harm, if any, to the debtor; (10) the harm, if any, to the estate; and (11) the reasonableness of the debtor's request for relief from section 345(b) requirements in light of the overall circumstances of the case.[19]

38.    As discussed above, because the Bank Accounts, including the Bank Accounts held at institutions that are not U.S. Trustee-approved depositories, are vital to the Cash Management System, requiring the Debtors to transfer funds to other banks (and substantially re-construct the Cash Management System) would be unduly burdensome and significantly detrimental to the Debtors' operations.  In addition, all of the Bank Accounts, including those at institutions that are not at authorized depositories, are maintained at reputable, financially stable Banks.  Cause exists

---

[18]    140 Cong. Rec. H10,752-01, H10,768 (Oct. 4, 1994).

[19]    *See In re Serv. Merch. Co., Inc.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999).

18

to waive the U.S. Trustee Guidelines with respect to non-authorized depositories and allow the Debtors to continue to maintain the Bank Accounts in the ordinary course of business.

## EMERGENCY CONSIDERATION

39.     The Debtors request emergency consideration of the Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first twenty-one days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm."  An immediate and orderly transition into chapter 11 is critical to the viability of the Debtors' operations and any delay in granting the relief requested could hinder such operations and cause irreparable harm. The failure to receive the requested relief during the first twenty-one days of these Chapter 11 Cases could disrupt the Debtors' operations at this critical juncture and add needless costs to the administration of these cases.  The Debtors have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and request that the Court approve the relief requested herein on an emergency basis.

## WAIVER OF BANKRUPTCY RULES 6004(a) AND 6004(h)

40.     The Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## RESERVATION OF RIGHTS

41.     Nothing contained herein or any actions taken by the Debtors pursuant to any order granting the relief requested by this Motion is intended or should be construed as: (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' right to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type

specified or defined herein or in any order granting the relief requested by this Motion, or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors or any other party-in-interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid and the Debtors and all other parties-in-interest expressly reserve their rights to contest the extent, validity, or perfection, or to seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party-in-interest's rights to subsequently dispute such claim.

**NOTICE**

42.     Notice of the hearing on the relief requested in this Motion will be provided by the Debtors in accordance and compliance with Bankruptcy Rules and Local Rules.  The Debtors will provide notice of this motion to the following: (a) the U.S. Trustee for the Southern District of Texas, (b) the holders of the thirty largest unsecured claims against the Debtors (on a consolidated basis), (c) Oaktree Fund Administration, LLC and its counsel (Sullivan & Cromwell LLP, as primary counsel, and Bracewell LLP, as local counsel), (d) the United States Attorney's Office for the Southern District of Texas, (e) the Internal Revenue Service, (f) the United States Securities and Exchange Commission, (g) the state attorneys general  for states in which the Debtors conduct business, (h) governmental agencies having a regulatory or statutory interest in these cases, and (i)

20

any party that has requested notice pursuant to Bankruptcy Rule 2002 and Bankruptcy Local Rule

9013-1(d).  No other or further notice is needed in light of the nature of the relief requested.

## **CONCLUSION**

WHEREFORE, the Debtors request that the Court enter the Proposed Interim Order and

Proposed Final Order, granting the relief requested herein and such other and further relief as may

be just and proper under the circumstances.

Dated: May 14, 2023

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Michael D. Warner*
Michael D. Warner (SBT 00792304)
Maxim B. Litvak (SBT 24002482)
Benjamin L. Wallen (SBT 24102623)
440 Louisiana Street, Suite 900
Houston, TX 77002
Telephone: (713) 691-9385
Facsimile:  (713) 691-9407
mwarner@pszjlaw.com
mlitvak@pszjlaw.com
bwallen@pszjlaw.com

-and-

Richard M. Pachulski (*pro hac vice* pending)
Debra I. Grassgreen (*pro hac vice* pending)
Shirley S. Cho (*pro hac vice* pending)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
rpachulski@pszjlaw.com
dgrassgreen@pszjlaw.com
scho@pszjlaw.com

*Proposed Counsel to the Debtors and Debtors in
Possession*

DOCS_LA:348694.7 14039/001

## **Certificate of Service**

I certify that on May 14, 2023, I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Michael D. Warner*

Michael D. Warner

In re Athenex, Inc., *et al.*
Exhibit 1 – Cash Management System

**Exhibit 1**
**(Bank Accounts Diagram)**



* Linked to Key Bank operating account number -7256.

In re Athenex, Inc., *et al.*
Exhibit 2 – Cash Management System

# EXHIBIT 2
### (Closed or Inactive Accounts)

| Account Holder Name | Bank | Last 4 Digits of Account Number | Current Balance as of 5/12/23 |
|---|---|---|---|
| Athenex, Inc. | Key Bank | KB-3714 | 4,385.11 |
| Athenex, Inc. | Key Bank | KB-2509 | 0.01 |
| Athenex, Inc. | Bank of America | BofA-8042 | 8,645.98 |
| | | **Total** | **$13,031.10** |

In re Athenex, Inc., *et al.*
Exhibit 3 – Cash Management System

# EXHIBIT 3
## (Listing of Prepetition Date Balances)

| Account Holder Name | Bank | Last 4 Digits of Account Number | Current Balance as of 5/12/23 |
|---|---|---|---|
| Athenex, Inc. | UBS | UBS-8493 | $ 3,184,638.64 |
| Athenex, Inc. | Key Bank | KB-7256 | 313,424.16 |
| Athenex, Inc. | Key Bank | KB-4217 | 4,606,250.00 |
| Athenex, Inc. | Key Bank | KB-7256 | -- |
| Athenex Pharma Solutions, LLC | Key Bank | KB-6956 | 588,433.26 |
| Athenex Pharmaceutical Division, LLC | Key Bank | KB-5995 | 393,630.66 |
| Athenex Pharmaceutical Division, LLC | Key Bank | KB-0980 | 155,068.38 |
| Athenex R&D LLC | Key Bank | KB-0663 | 55,152.65 |
| Kuur Therapeutics, Inc. | Key Bank | KB-7812 | 1,819.96 |
| | | **Total** | **$9,298,417.71** |