**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| ATHENEX, INC., *et al.*, | Case No. 23-90295 (DRJ) |
| Debtors. [1] | (Jointly Administered) |

**DEBTORS' EMERGENCY MOTION SEEKING ENTRY OF AN ORDER**
**(I) AUTHORIZING THE DEBTORS TO MAINTAIN AND ADMINISTER THEIR**
**EXISTING CUSTOMER PROGRAMS AND HONOR CERTAIN PREPETITION**
**OBLIGATIONS RELATED THERETO, AND (II) GRANTING RELATED RELIEF**

> **Emergency relief has been requested.  Relief is requested not later than May 25, 2023.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on May 25, 2023, at 11:45 a.m. (prevailing Central Time).  Participation at the hearing will only be permitted by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility.  You may access the facility at (832) 917-1510.  Once connected, you will be asked to enter the conference room number.  Judge Jones's conference room number is 205691.  Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Jones's homepage.  The meeting code is "JudgeJones".  Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings.  To make your appearance, click the "Electronic Appearance" link on Judge Jones's homepage.  Select the case name, complete the required fields, and click "Submit" to complete your appearance.**

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/athenex.  The location of Athenex, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 1001 Main Street, Suite 600, Buffalo, NY 14203.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state as follows in support of this motion (the "Motion"):

## Preliminary Statement

1.      Athenex Pharmaceutical Division, Inc. ("APD") conducts commercial sales of multisource injectable pharmaceutical products that it sources through agreements with key partners along with its own pharmaceutical products of certain co-developed products.  APD's critical care products cover a broad range of therapeutic products that are relied upon ultimately by doctors and patients.  As of December 31, 2022, APD markets 39 products with 74 SKUs.

2.      APD primarily markets its products to acute hospital group purchasing organizations in the United States such as pharmaceutical wholesalers (the "Wholesalers"), which supply to integrated healthcare networks, clinics, and directly to physicians.  For the year ended December 31, 2022, the products sold through APD's three largest Wholesalers in the U.S. accounted for more than 90% of its total revenue.  Customers also order products online directly from APD through a product portal.  Together, the Wholesalers and the direct customers are referred to collectively as the "Customers".

3.      In the ordinary course of business, APD and the Customers engage in the various netting practices between themselves as is common in the industry as more specifically described below, which is administered for the Debtors through its third party logistics provider, Eversana Life Science Services, LLC ("Eversana").  Through this process, which results in net positive payments for the Debtors, the Debtors receive the vast majority of their revenue.  As of the date hereof, the Customers owe the Debtors approximately $74 million in the aggregate of gross accounts receivables.  After the application of various Chargebacks (defined below) and

other credits owed to Customers, the Debtors anticipate netting approximately $25 million of net sales income.

4.     In an abundance of caution, because the Debtors cannot have any disruption to their revenue stream, the Debtors bring this Motion on an emergency basis to reassure Customers that the ordinary course of business practice and dealings between APD and the Customers with respect to outstanding accounts receivable and purchase of inventory from APD will continue uninterrupted postpetition.  Maintaining the goodwill of Customers is critical to the ongoing operations in these chapter 11 cases and is necessary to maintain value for the benefit of all of the Debtors' stakeholders.

### Relief Requested

5.     The Debtors seek entry of an order, substantially in the form attached hereto (the "Order"):  (a) authorizing the Debtors to:  (i) maintain and administer their customer-related programs (collectively and as described herein, the "Customer Programs") in the ordinary course of business consistent with prepetition practices, including allowing for recoupments and offsets of undisputed debts; and (ii) pay and honor certain prepetition obligations related thereto; and (b) granting related relief.

### Jurisdiction and Venue

6.     The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).  The Debtors confirm their consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court.

7.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3

8.     The statutory bases for the relief requested herein are sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code") and Bankruptcy Rule 6003.

**Background**

9.     On May 14, 2023 (the "Petition Date"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.

10.     The Debtors are a global oncology-focused biopharmaceutical company dedicated to the discovery, development, and commercialization of novel therapies for the treatment of cancer, aiming to develop safer and more efficacious cancer medication.  The Debtors' mission is to improve the lives of cancer patients by creating more effective, safer, and more tolerable treatments.  The Company has successfully brought to market its innovative drug, Klisyri®, for patients with actinic keratosis.

11.     Additional information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Nicholas K. Campbell in Support of the Debtors' Chapter 11 Petitions and First Day Relief* (the "First Day Declaration"),[2] which has been filed with the Court contemporaneously herewith and is incorporated by reference herein.

---

[2]     A capitalized term used but not otherwise defined herein shall have the meaning ascribed to it in the First Day Declaration.

4

<u>**Description of Customer Programs**</u>[3]

12.     The Debtors' Customers are primarily wholesale drug distributors.   To preserve the Debtors' critical relationships with Customers and maximize loyalty, the Debtors have historically provided certain chargebacks, rebates, administrative fees, credits for product returns, and prompt payment discounts to Customers in the ordinary course of business.   The Customer Programs are beneficial and cost-effective, and they promote the goodwill of the Debtors' business.

**A.**      **Chargebacks**

13.     The Debtors negotiate agreements with their Wholesalers (the "<u>Chargeback Agreements</u>") to establish contract pricing and chargebacks with their Wholesalers, which are essential and integral components of the Debtors' commercial relationships with their Wholesalers.   The products are sold to the Wholesalers at the wholesale acquisition cost ("<u>WAC</u>") based on the anticipated demand, future competition in the market, and the costs, rebates, and other applicable price reductions.

14.     Based on the existence of certain pricing agreements in favor of the end users of the products or statutory rights (such as Medicare or Medicaid pricing), the Wholesalers may be entitled to sell the products to certain eligible hospitals and other eligible entities at a special discounted rate.   The special discounted rate is less than the WAC that the Wholesalers pay to the Debtors.   Thus, when the Wholesalers sell the products to eligible hospitals at a rate lower than WAC, the Debtors must compensate the Wholesalers for the deficiency and a chargeback arises in the Wholesalers' favor (a "<u>Chargeback</u>").

---

[3]     Although this Motion is intended to be comprehensive, the Debtors may have inadvertently omitted certain Customer Programs.  The Debtors request relief with respect to all Customer Programs, regardless of whether any such Customer Program is specifically identified herein.

15.     The time it takes for the Wholesaler to sell the inventory to a third party and then charge back the difference to the Debtors typically takes four to six weeks, but for some products that time may extend up to twelve weeks.  On average, the Debtors accrue approximately $40–50 million in Chargebacks every quarter (calculated based on the prior three quarters).  The Debtors estimate that the aggregate number of Chargebacks accrued as of the Petition Date for Chargebacks is between $45–50 million, but as noted above, there is no outlay of cash for this amount as the Debtors receive net positive revenue after application of the Chargebacks in any given month.

16.     The Debtors request authority to continue to honor, including through their third party logistics provider, Eversana, ordinary course practices between their Customers for honoring Chargebacks owed to the Customers as they come due in the ordinary course of business and consistent with past practice.  Without Chargebacks, current and potential Customers may be unwilling to purchase the Debtors' products at all or may withhold payment to the Debtors due to inability to net amounts owed to the Debtors, which could lead to a decline in revenues to the ultimate detriment of the Debtors' estates.  Accordingly, the Debtors seek authorization to continue honoring their obligations in connection with Chargebacks in a manner consistent with their past practices.

**B.     Prompt Pay Discounts**

17.     The Debtors' contracts with Wholesalers provide for industry-standard discounts, such as a prompt pay discount (the "Prompt Pay Discount"), which affords on average a two percent (2%) discount for paying invoices within the payment terms of the contract.  These Prompt Pay Discounts encourage the Debtors' Customers to enter into and maintain contracts with the Debtors and to remit payment in a timely manner.  As of the Petition Date, the Debtors estimate that they have accrued approximately $1.8 million in Prompt Pay Discounts.

6

18.     The Debtors believe that continuing to allow Prompt Pay Discounts is essential to maintaining Customer relationships and driving sales.  Accordingly, by this Motion, the Debtors seek authorization, but not direction, to honor Prompt Pay Discounts in a manner consistent with their past practices and to honor all Customer obligations related thereto in the ordinary course of business.

## C.     Credits

19.     In the ordinary course of business, the Debtors' Customers may be unable to sell the products they purchase from the Debtors because the product is near or past its expiry date, the product is damaged, or for some other reason.  Therefore, certain of the Debtors' products are sold with the Customer having the right to return the product within specified periods.  Such rights to return products, together with other contractual credits that are allowed under the terms of each Customer's contracts, are referred to collectively as the "Credits".  Historical factors such as recall events, as well as pending new developments such as comparable product approvals or significant pricing movements that may impact the expected level of returns, are accounted for when determining the appropriate reserve estimates on account of Credits.  As of the Petition Date, the Debtors estimate that they have accrued approximately $1.1 million on account of Credits.

20.     The Debtors believe that continuing to administer Credits is essential to maintaining Customer relationships and driving sales.  Accordingly, by this Motion, the Debtors seek authorization, but not direction, to continue administering Credits in a manner consistent with their past practices and to honor all Customer obligations related thereto in the ordinary course of business.

## D.     FFS & Administrative Fees

21.     In the ordinary course of business, the Debtors maintain an allowance for certain fees for services ("FFS") and administrative fees ("Administrative Fees") related to

contracts and other rebate programs in place with certain Customers. Wholesalers are paid FFS by the Debtors for distribution of their products as a set percentage of the invoice amount. Administrative Fees consist of fees paid pursuant to contractual obligations, including group purchasing order fees for the inclusion of the Debtors' products in hospital contracts. As of the Petition Date, the Debtors estimate that they have accrued approximately $3.5 million in FFS and Administrative Fees.

22.     The Debtors believe that continuing to administer FFS and Administrative Fees is essential to maintaining Customer relationships and driving sales. Accordingly, the Debtors request authorization to continue administering FFS and Administrative Fees and to honor all prepetition and postpetition Customer obligations related thereto in the ordinary course of business.

## Basis for Relief

### A.     Continuing to Honor Customer Programs in the Ordinary Course Is Warranted Under Sections 105(a) and 363(b) of the Bankruptcy Code

23.     Authority for relief requested herein is found in sections 1107(a) and 1108 of the Bankruptcy Code. The debtor, operating its businesses as debtor in possession under sections 1107(a) and 1108 of the Bankruptcy Code, is a fiduciary "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [its] creditors and (if the value justifies) equity owners." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Implicit in the duties of a chapter 11 debtor in possession is the duty "to protect and preserve the estate, including an operating business's going-concern value." *Id.*

24.     The court in *CoServ* held that there are instances in which a debtor in possession can fulfill its fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." *Id.* The court specifically held that preplan satisfaction of prepetition claims would be a valid

8

exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate," and also when the payment was to "sole suppliers of a given product." *Id.* at 497–98. The court provided a three-pronged test for determining whether a preplan payment on account of a prepetition claim was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

*Id.* at 498.

25.     The relief sought in this Motion satisfies each element of the *CoServ* standard. The disruption of the Debtors' operations attendant to the failure to maintain the Customer Programs would cause the Debtors' estates to lose revenue, which could negatively impact the Debtors' ability to achieve their chapter 11 objectives. The potential harm and economic disadvantage that would stem from the failure to honor any of the Debtors' prepetition obligations is grossly disproportionate to the amount of the prepetition claims that may be paid. Therefore, the Debtors can only meet their fiduciary duties as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code by payment of their prepetition obligations.

26.     The Court may also grant the relief requested herein pursuant to section 363 of the Bankruptcy Code, which provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Under section 363 of the Bankruptcy Code, a court may authorize a debtor to pay certain prepetition claims. *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (discussing a prior order authorizing the payment of prepetition wage

claims pursuant to section 363(b) of the Bankruptcy Code).  To do so, "the debtor must articulate some business justification, other than the mere appeasement of major creditors."  *Id.*

27.     The Court may also authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code, which codifies the equitable powers of the bankruptcy court and empowers the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Under section 105(a) of the Bankruptcy Code, courts may permit pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's business.  Specifically, the Court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity").

28.     The relief sought is further supported by the "doctrine of necessity."  The doctrine of necessity is a well-settled doctrine that permits a bankruptcy court to authorize payment of certain prepetition claims prior to the completion of the chapter 11 case where the payment of such claims is necessary to the debtor's restructuring efforts.  *See In re Scotia Dev., LLC*, Case No. 07- 20027, 2007 WL 2788840, at *1 (Bankr. S.D. Tex. Sep. 21, 2007) (acknowledging the existence of the doctrine of necessity); *In re CoServ, L.L.C.*, 273 B.R. at 497 (same); *see also In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (stating that courts may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (recognizing that the necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until its pre-reorganization claims have been

10

paid"); *In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (D. Del. 1999) (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to continued operation of their business); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (same).

29.     The rationale for the necessity of payment rule—the rehabilitation of a debtor in reorganization cases—is "the paramount policy and goal of Chapter 11." *Ionosphere Clubs*, 98 B.R. at 176; *see also Just for Feet*, 242 B.R. at 826 (finding that the payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"); *In re Quality Interiors, Inc.*, 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) ("[P]ayment by a debtor-in-possession of prepetition claims outside of a confirmed plan of reorganization is generally prohibited by the Bankruptcy Code," but "[a] general practice has developed . . . where bankruptcy courts permit the payment of certain prepetition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment."); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (approving the payment of prepetition unsecured claims of tool makers as "necessary to avert a serious threat to the Chapter 11 process"). Accordingly, the Court may authorize the Debtors to continue the Customer Programs and pay prepetition claims related thereto pursuant to sections 105(a) and 363(b) of the Bankruptcy Code.

30.     Continuing the Customer Programs without interruption during these chapter 11 cases will help preserve the Debtors' valuable Customer relationships and goodwill, which will inure to the benefit of all of the Debtors' creditors and stakeholders. Continuing the Customer Programs will also allow the Debtors to operate in the ordinary course of business. If the Debtors are unable to continue their Customer Programs postpetition or to pay amounts or other value due and owing to their Customers under the various Customer Programs, the Debtors

risk alienating certain Customer constituencies, losing at least some Customers to the Debtors' competitors and suffering corresponding losses in Customer loyalty and goodwill that will harm the Debtors' prospects for a restructuring that maximizes value.

31.     Where retaining the loyalty and patronage of customers is critical to successful chapter 11 cases, courts in this district, and others, routinely authorize the continuation of customer programs. *See, e.g.*, *In re Party City Holdco Inc.*, No. 23-90005 (DRJ) (Bankr. S.D. Tex. Jan. 18, 2023) (authorizing the debtors to continue maintaining customer programs on a final basis); *In re Serta Simmons Bedding, LLC*, No. 23-90020 (DRJ) (Bankr. S.D. Tex. Jan. 24, 2023) (same); *In re Invacare Corp.*, No. 23-90068 (CML) (Bankr. S.D. Tex. Feb. 1, 2023) (same); *In re Avaya, Inc.*, No. 23-90088 (DRJ) (Bankr. S.D. Tex. Feb. 15, 2023) (same).

32.     Accordingly, the Debtors submit that the substantial benefit conferred on the Debtors' estates by the Customer Programs warrants the authority to honor the Customer Programs and any Customer obligations relating thereto, whether arising prepetition or postpetition, and the Debtors respectfully request the authority to continue their Customer Programs and honor prepetition commitments related thereto.

## Emergency Consideration/Satisfaction of Bankruptcy Rule 6003

33.     The Debtors request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. For the reasons discussed above, authorizing the Debtors to continue the Customer Programs and satisfy prepetition obligations related thereto, and granting the other relief requested herein, is essential to the Debtors' ability to transition their operations into these chapter 11 cases smoothly. Failure to receive such authorization and other relief during the first 21 days

of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture. For the reasons discussed herein, the relief requested is necessary in order for the Debtors to operate their business in the ordinary course, preserve the going-concern value of the Debtors' operations, and maximize the value of their estates for the benefit of all stakeholders.  Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and request that the Court approve the relief requested herein on an emergency basis.

### Reservation of Rights

34.     Nothing contained in this Motion or any actions taken by the Debtors pursuant to the relief granted in the Order is intended or should be construed as:  (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' or any other party-in-interest's right to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in the Motion; (e) a request or  authorization  to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' or any other party-in-interest's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or any other party-in-interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Debtors and all other parties-in-interest expressly reserve their rights to contest the extent, validity, or perfection or to seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made (or to be made) pursuant to the Order is not intended and should not be construed as an admission as to the validity, priority, or amount

of any particular claim or a waiver of the Debtors' or any other party-in-interest's rights subsequently to dispute such claim.

**<u>Waiver of Bankruptcy Rule 6004(a) and 6004(h)</u>**

35.     The Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

**<u>Notice</u>**

36.     Notice of the hearing on the relief requested in this Motion will be provided by the Debtors in accordance and compliance with Bankruptcy Rules and the Bankruptcy Local Rules.  The Debtors will provide notice of this Motion to the following:  (a) the United States Trustee for the Southern District of Texas; (b) the holders of the thirty largest unsecured claims against the Debtors (on a consolidated basis); (c) Oaktree Fund Administration, LLC and its counsel (Sullivan & Cromwell LLP, as primary counsel, and Bracewell LLP, as local counsel); (d) the United States Attorney's Office for the Southern District of Texas; (e) the Internal Revenue Service; (f) the United States Securities and Exchange Commission; (g) the state attorneys general for states in which the Debtors conduct business; (h) governmental agencies having a regulatory or statutory interest in these cases; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002 and Bankruptcy Local Rule 9013-1(d).  No other or further notice is needed in light of the nature of the relief requested.

**<u>No Prior Request</u>**

37.     No prior request for the relief sought in this Motion has been made to this Court or any other court.

DOCS_LA:349132.7 14039/002

WHEREFORE, the Debtors respectfully request entry of an order, substantially in the form attached hereto:  (a) granting the relief requested herein; and (b) granting such other relief as is just and proper.

Dated:  May 22, 2023

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Michael D. Warner*

Michael D. Warner (SBT 00792304)
Maxim B. Litvak (SBT 24002482)
440 Louisiana Street, Suite 900
Houston, TX 77002
Telephone: (713) 691-9385
Facsimile:  (713) 691-9407
mwarner@pszjlaw.com
mlitvak@pszjlaw.com

-and-

Richard M. Pachulski (*pro hac vice* forthcoming)
Debra I. Grassgreen (*pro hac vice* forthcoming)
Shirley S. Cho (*pro hac vice* forthcoming)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
rpachulski@pszjlaw.com
dgrassgreen@pszjlaw.com
scho@pszjlaw.com

*Proposed Counsel to the Debtors and Debtors in Possession*

## Certificate of Service

I certify that on May 22, 2023, I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Michael D. Warner*

Michael D. Warner

15