**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: <br><br> ATHENEX, INC., et al., <br><br> Debtors.[1] | Chapter 11 <br><br> Case No. 23-90295 (DRJ) <br><br> (Jointly Administered) |

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER
APPROVING ORASCOVERY STALKING HORSE BIDDER AND PAYMENT OF
BID PROTECTIONS UNDER ORDER APPROVING (A) BID PROCEDURES;
(B) THE FORM AND MANNER OF NOTICE; (C) THE PROCEDURES FOR
DETERMINING CURE AMOUNTS FOR EXECUTORY CONTRACTS AND
UNEXPIRED LEASES; AND (D) GRANTING RELATED RELIEF**

> **Emergency relief has been requested.  Relief is requested not later than June 7, 2023.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set or file a written response prior to the date that relief is requested in the preceding paragraph.  Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on June 7, 2023, at 12:00 p.m. (prevailing Central Time).  Participation at the hearing will only be permitted by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility.  You may access the facility at (832) 917-1510.  Once connected, you will be asked to enter the conference room number.  Judge Jones's conference room number is 205691.  Video communication will be by use of the GoToMeeting platform.  Connect via the free GoToMeeting application or click the link on Judge Jones's homepage.  The meeting code is "JudgeJones".  Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings.  To make your appearance, click the "Electronic Appearance" link on Judge Jones's homepage.  Select the case name, complete the required fields, and click "Submit" to complete your appearance.**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby move (this "Motion") for entry of an order substantially in the form attached hereto (the

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/athenex. The location of Athenex, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 1001 Main Street, Suite 600, Buffalo, NY 14203.

"Order"): (a) approving the designation of C-MER Specialty Group Limited ("C-MER")[2] as a Stalking Horse Bidder under the terms of the Bid Procedures Order (defined below) with respect to the Orascovery Business; (b) authorizing Debtors Athenex R&D LLC ("R&D") and Athenex, Inc. ("Athenex") to enter into that certain *Stalking Horse Asset Purchase Agreement*, dated June 6, 2023 (the "Stalking Horse Agreement"), a copy of which is attached hereto as **EXHIBIT A** (without schedules);[3] (c) in connection with the Stalking Horse Agreement, authorizing the payment of (i) an expense reimbursement for the reasonable, documented out-of-pocket expenses incurred by C-MER in connection with the Stalking Horse Agreement in an aggregate amount not to exceed $25,000, and (ii) a breakup fee of $75,000 to C-MER, payable only from the proceeds of a Sale with a Qualified Bidder other than C-MER consistent with the terms of the Bid Procedures Order (collectively, the "Bid Protections"); and (d) granting related relief. In support of the Motion, the Debtors respectfully represent as follows:

## PRELIMINARY STATEMENT

1. On May 22, 2023, the Court entered the Bid Procedures Order, which, among other things, approved certain procedures in connection with the marketing and sale of the Debtors' assets, established procedures for the assumption and assignment of executory contracts and unexpired leases, approved the form and manner of notices in connection with the Debtors' sale process, and established various dates and deadlines relating thereto. Additionally, the Bid Procedures Order established certain negative notice procedures for the Debtors' designation of one of more Stalking Horse Bidders in connection with the Sale, including certain bid protections.

---

[2] For disclosure purposes, a director of C-MER, Dr. Dennis Lam, is a shareholder of Athenex, Inc., owning less than 1% of the outstanding shares.

[3] A capitalized term used but not defined herein shall have the meaning ascribed to it in the Bid Procedures Order (as defined below) or the Stalking Horse Agreement, as applicable.

Under the Bid Procedures Order, the Debtors had until June 2, 2023 at 12:00 p.m. Noon (Central Time) to designate any such Stalking Horse Bidders (the "Designation Deadline"). Despite ongoing discussions with multiple parties regarding their potential designation as Stalking Horse Bidders, the Debtors were unable to designate any Stalking Horse Bidders by the Designation Deadline.

2. However, notwithstanding the passage of the Designation Deadline, the Debtors and their professionals continued to engage with interested parties regarding the Sale of the Debtors' assets. As a result of these discussions, the Debtors determined to designate C-MER as a Stalking Horse Bidder under the terms of the Bid Procedures Order in connection with the sale of the Orascovery Business by R&D and Athenex, all as more fully set forth in the Stalking Horse Agreement and subject to Court approval. Additionally, given the ongoing discussions with C-MER as well as the benefits C-MER is providing to the estates by acting as a Stalking Horse Bidder, the Debtors determined that it is appropriate to provide the Bid Protections to C-MER, subject to Court approval. The designation of C-MER as the Stalking Horse Bidder has the support of the Agent and the Debtors also have consulted with the Committee (as defined below) as required by the Bid Procedures Order.

3. The Debtors believe that the designation of C-MER as a Stalking Horse Bidder will establish an appropriate floor for further bidding by other interested parties with respect to the Orascovery Business, which is calculated to maximize value to the Debtors' estates for the benefit of all stakeholders. Moreover, the relief requested in this Motion is consistent with the relief granted in the Bid Procedures Order. In this regard, the Motion essentially equates to a limited extension of the Designation Deadline to allow the Debtors to designate C-MER as a Stalking Horse Bidder under the Bid Procedures Order, which would have occurred, had the Debtors been

able to reach a final agreement with C-MER prior thereto. As a result, the relief requested in the Motion is limited and consistent with the Debtors' value maximizing objectives, and should be approved by the Court. To be clear, only R&D and Athenex are parties to the Stalking Horse Agreement.

## JURISDICTION AND VENUE

4. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). The Debtors confirm their consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court.

5. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6. The bases for the relief requested herein are sections 105(a), 363(b), 503(b), and 507(a) of title 11 of the United States Code (the "Bankruptcy Code"), Bankruptcy Rule 6004, and rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

## BACKGROUND

### A. General Background

7. On May 14, 2023 (the "Petition Date"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or statutory committee of creditors has been appointed in these Chapter 11 Cases.

4

8. On May 25, 2023, the Office of the United States Trustee (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee"), consisting of the following four members: (i) Ingenus Pharmaceuticals, LLC; (ii) GenScript Probio USA, Inc.; (iii) Istituto Biochimico Italiano Giovanni Lorenzini S.p.A.; and (iv) Praxgen Pharmaceuticals LLC. *See* Docket No. 135.

9. The Debtors are a global oncology focused biopharmaceutical company dedicated to the discovery, development and commercialization of novel therapies for the treatment of cancer, aiming to develop safer and more efficacious cancer medication. The Debtors' mission is to improve the lives of cancer patients by creating more effective, safer and tolerable treatments.

10. Additional information regarding the Debtors' business and capital structure and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Nicholas K. Campbell in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 18] (the "First Day Declaration"), which is incorporated by reference herein.

**B.   The Bid Procedures Order and Stalking Horse Agreement**

11. On the Petition Date, the Debtors filed their *Motion for Entry of an Order Approving (a) Bid Procedures; (b) the Form and Manner of Notice; (c) the Procedures for Determining Cure Amounts for Executory Contracts and Unexpired Leases; and Entry of an Order Approving (a) the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Interests; and (b) the Assumption and Assignment of Certain Contracts and Unexpired Leases* [Docket No. 17] (the "Bid Procedures and Sale Motion").

12. On May 22, 2023, the Court entered an Order [Docket No. 113] (the "Bid Procedures Order") approving the Bid Procedures requested in the Bid Procedures and Sale Motion, including approving the form and manner of notice, and establishing the procedures for

designating a stalking horse. Additionally, the Bid Procedures Order established June 2, 2023 at 12:00 p.m. Noon (Central Time) as the Stalking Horse Bidder Designation Deadline. No Stalking Horse Bidders were designated by the Debtors under the Bid Procedures Order prior to the Designation Deadline.

13. On June 6, 2023, Debtors R&D and Athenex reached agreement with C-MER regarding the terms of the Stalking Horse Agreement. The Debtors' counsel has received, and is holding in trust, a deposit from C-MER equal to 10% of the purchase price ($250,000), as required under the Stalking Horse Agreement. The material terms of the Stalking Horse Agreement are as follows:[4]

| | |
|---|---|
| **Purchase Price** | $2,500,000 in cash, plus a milestone payment of $5,000,000 promptly after the point in time where Net Sales of Oraxol have reached $10,000,000. |
| **Purchased Assets** | Substantially all assets of R&D and Athenex solely relating to the operation of their Orascovery Business (as defined in the Stalking Horse Agreement). |
| **Assumed Liabilities** | (i) All Liabilities under the Assumed Contracts arising after the Closing Date; (ii) all Liabilities arising on or after the Closing Date with respect to the Purchased Assets or Buyer's operation of the Orascovery Business; and (iii) all Cure obligations required to be paid pursuant to the Approval Order as a condition to Buyer's assumption of the Assumed Contracts. |
| **Bid Protections** | (i) An expense reimbursement for the reasonable, documented out-of-pocket expenses incurred by C-MER in connection with the Stalking Horse Agreement in an aggregate amount not to exceed $25,000, and (ii) a breakup fee of $75,000, payable only from the proceeds of a Sale with a Qualified Bidder other than C-MER as set forth in the Bid Procedures Order. |
| **Representations and Warranties / Covenants** | Customary for a transaction of this type. |

---

[4] The following is only a summary of certain of the terms and provisions of the Stalking Horse Agreement. In the event of any conflict between the summary set forth in this Motion and the Stalking Horse Agreement, the terms and provisions of the Stalking Horse Agreement control

**BASIS FOR RELIEF**

14. Pursuant to this Motion, the Debtors are seeking approval for R&D and Athenex to enter into the Stalking Horse Agreement under the terms of the Bid Procedures Order and to grant the Bid Protections. Such relief was already contemplated under the Bid Procedures Order. The Debtors are simply requesting additional time beyond the original Designation Deadline, which is important for the estates to set a floor on the proposed transaction.

15. Section 363(b)(1) of the Bankruptcy Code provides that a debtor "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). A debtor must show that the decision to use the property outside of the ordinary course of business was based on the debtor's business judgment. *See In re Cont'l Air Lines*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("For a debtor in possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."); *In re Crutcher Resources Corp.*, 72 B.R. 628, 631 (Bankr. N.D. Tex. 1987) ("A Bankruptcy Judge has considerable discretion in approving a § 363(b) sale of property of the estate other than in the ordinary course of business but the movant must articulate some business justification for the sale.").

16. Moreover, the use of a stalking horse in a public auction process for sales is a customary practice in chapter 11 cases, as the use of a stalking horse bid is, in many circumstances, the best way to maximize value in an auction process by "establish[ing] a framework for competitive bidding and facilitat[ing] a realization of that value." *Interforum Holding LLC*, 2011 WL 2671254 at *1 n. 1. As a result, stalking horse bidders virtually always require break-up fees and, in many cases, other forms of bidding protections as an inducement for "setting the floor at

auction, exposing [their] bid[s] to competing bidders, and providing other bidders with access to the due diligence necessary to enter into an asset purchase agreement." *Id*. (citation omitted). The use of bidding protections has become an established practice in chapter 11 cases.

17. Break-up fees and other forms of bidding protections are a normal and, in many cases, necessary component of significant sales conducted in chapter 11: "Break-up fees are important tools to encourage bidding and to maximize the value of the debtor's assets . . . In fact, because the directors of a corporation have a duty to encourage bidding, break-up fees can be *necessary* to discharge the directors' duties to maximize value." *In re Integrated Res., Inc.*, 147 B.R. 650, 659-60 (S.D.N.Y. 1992) (emphasis in original). Specifically, bid protections "may be legitimately necessary to convince a 'white knight' to enter the bidding by providing some form of compensation for the risks it is undertaking." *In re 995 Fifth Ave. Assocs., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (citation and quotations omitted); *see also Integrated Res.*, 147 B.R. at 660–61 (noting bid protections can prompt bidders to commence negotiations and "ensure that a bidder does not retract its bid").

18. As a result, courts routinely approve such bidding protections in connection with proposed bankruptcy sales where a proposed fee or reimbursement provides a benefit to the estate. *See In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 535 (3d Cir. 1999) ("In other words, the allowability of break-up fees, like that of other administrative expenses, depends upon the requesting party's ability to show that the fees were actually necessary to preserve the value of the estate."). The approval of the Bid Protections is in the best interests of the Debtors' estates and their creditors, because the Stalking Horse Agreement will establish a floor for further bidding that may increase the consideration given in exchange for the Orascovery Business, which will inure to the benefit of the Debtors' estates.

19. Courts in the Fifth Circuit analyze the appropriateness of bidding incentives under the "business judgment rule" standard, and the law is well established in this district that courts consider whether (a) the incentive hampers, rather than encourages, bidding, and (b) the amount of the incentive is unreasonable relative to the proposed purchase price. *See In re ASARCO, L.L.C.*, 650 F.3d 593 (5th Cir. 2011) (affirming bankruptcy court's decision to apply the business judgment rule to evaluate whether an expense reimbursement bid protection was permissible); *see also In re ASARCO LLC*, 441 B.R. 813, 826 (S.D. Tex. 2010) (explaining three-part test used to determine whether expense reimbursement was permissible under business judgment rule).

20. The Debtors' designation of C-MER as the Stalking Horse Bidder for the Orascovery Business is a sound exercise of the Debtors' business judgment that is calculated to maximize value for the benefit of all of the Debtors' stakeholders. In this regard, the designation of C-MER of a Stalking Horse Bidder will establish a reasonable floor for third parties to bid against at any auction with respect thereto. Moreover, the selection of C-MER as the Stalking Horse Bidder for the Orascovery Business is entirely consistent with the relief granted in the Bid Procedures Order, and the Debtors would have so designated C-MER, but for the passing of the Designation Deadline prior to reaching an agreement with C-MER.

21. Additionally, the Bid Protections are a critical component of the proposed transaction, and were necessary to induce C-MER to act as a Stalking Horse Bidder under the Bid Procedures. C-MER has expended and will continue to expend time and resources negotiating, drafting, and performing due diligence activities necessitated by the Sale transaction, despite the fact that its bid will be subject not only to Court approval, but also to overbidding by third parties. The Bid Protections have been negotiated in good faith and at arm's length and are entirely consistent with those pre-approved in the Bid Procedures Order. The Designation Deadline simply

needs to be extended under that order. Moreover, the amount of the Bid Protections is modest in relation to the consideration provided in the Stalking Horse Agreement, equating to approximately 4% of the total cash consideration. These limited Bid Protections are therefore calculated to enhance, rather than detract from, the Debtors' competitive public auction process, while securing the benefits of the Stalking Horse Agreement for the estates. By the Bid Protections, the Debtors ensure that their estates can realize the benefit of a transaction with C-MER, without sacrificing the potential for interested parties to submit overbids at the Auction. As a result, the Court should approve the designation of C-MER as a Stalking Horse Bidder and the payment of Bid Protections in connection therewith.

## EMERGENCY CONSIDERATION

22. Relief is requested no later than June 7, 2023. The Debtors believe that the designation of C-MER as the Stalking Horse Bidder for the Orascovery Business will inure to the benefit of all stakeholders for the reasons discussed herein. Given the other dates that remain in place under the Bid Procedures Order, including a Bid Deadline of June 12, 2023 and an Auction on June 15, 2023, and in order to provide other interested parties adequate notice of the designation of C-MER as a Stalking Horse Bidder prior to the Bid Deadline, the Debtors believe that Court consideration of this Motion on an emergency basis is appropriate in order to maximize the benefits of the relief requested in the Motion.

## NOTICE

23. Notice of the hearing on the relief requested in this Motion will be provided by the Debtors in accordance and compliance with Bankruptcy Rules and Local Rules. The Debtors will provide notice of this motion to the following: (a) the U.S. Trustee for the Southern District of Texas; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated

basis); (c) Oaktree Fund Administration, LLC and its counsel (Sullivan & Cromwell LLP, as primary counsel, and Bracewell LLP, as local counsel); (d) the United States Attorney's Office for the Southern District of Texas; (e) the Internal Revenue Service; (f) the United States Securities and Exchange Commission; (g) the state attorneys general for states in which the Debtors conduct business; (h) governmental agencies having a regulatory or statutory interest in these cases; (i) any party that has requested notice pursuant to Bankruptcy Rule 2002 and Bankruptcy Local Rule 9013-1(d); and (j) counsel to C-MER.  No other or further notice is needed in light of the nature of the relief requested.

## **CONCLUSION**

**WHEREFORE**, the Debtors request that the Court enter the Order granting the relief requested herein and such other and further relief as may be just and proper under the circumstances.

| | |
|---|---|
| Dated:  June 6, 2023 | **PACHULSKI STANG ZIEHL & JONES LLP** |
| | |
| | */s/ Maxim B. Litvak* |
| | Michael D. Warner (SBT 00792304) |
| | Maxim B. Litvak (SBT 24002482) |
| | 440 Louisiana Street, Suite 900 |
| | Houston, TX 77002 |
| | Telephone: (713) 691-9385 |
| | Facsimile:  (713) 691-9407 |
| | mwarner@pszjlaw.com |
| | mlitvak@pszjlaw.com |
| | |
| | -and- |
| | |
| | Richard M. Pachulski (admitted *pro hac vice*) |
| | Debra I. Grassgreen (admitted *pro hac vice*) |
| | Shirley S. Cho (admitted *pro hac vice*) |
| | 10100 Santa Monica Blvd., 13th Floor |
| | Los Angeles, CA 90067 |
| | Telephone: (310) 277-6910 |
| | Facsimile:  (310) 201-0760 |
| | rpachulski@pszjlaw.com |
| | dgrassgreen@pszjlaw.com |
| | scho@pszjlaw.com |
| | |
| | *Proposed Counsel to the Debtors and Debtors in Possession* |

### Certificate of Service

I certify that on June 6, 2023, I caused a copy of the foregoing document to be served via the Court's CM/ECF noticing system on all parties registered to receive electronic notice in the above cases.

*/s/ Maxim B. Litvak*
Maxim B. Litvak