**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| ATHENEX, INC., et al., | Case No. 23-90295 (DRJ) |
| Debtors. [1] | (Joint Administered) |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION TO PREPETITION TERM LOAN SECURED PARTIES; (III) MODIFYING AUTOMATIC STAY; AND (IV) GRANTING RELATED RELIEF**

(Related Docket Nos. 8, 60)

Upon the motion (the "Motion")[2] of the above-referenced debtors, as debtors-in-possession (collectively, the "Debtors") in the above-captioned cases (these "Chapter 11 Cases"), pursuant to sections 105, 361, 362, 363, 503, 506, 507, and 552 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rules 2002-1, 4001-1 and 9013-1 of the Bankruptcy Local Rules of the United States Bankruptcy Court for the Southern District of

---

[1]     A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/athenex. The location of Athenex, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 1001 Main Street, Suite 600, Buffalo, NY 14203.

[2]     Other than as expressly provided herein, the Motion and this Final Order do not address the rights and obligations of the parties to that certain Revenue Interest Purchase Agreement, dated as of June 21, 2022 (as amended, restated, or otherwise modified from time to time, the "RIPA" and, together with all other documentation executed in connection therewith, including without limitation, the Asset Purchase and Contribution Agreement, dated as of June 29, 2022, providing for the sale by Athenex, Inc. to ATNX SPV, LLC (the "SPV") of the Purchased Product Assets (as defined therein), and all other Transaction Documents (as defined in the RIPA, collectively, the "RIPA Transaction Documents")), by and among Athenex, Inc., the SPV, Sagard Healthcare Royalty Partners, LP, as agent (the "RIPA Agent"), and other affiliates of Sagard Healthcare Royalty Partners, LP and funds managed by Oaktree Capital Management, L.P. (collectively, the "RIPA Purchasers"). All rights of the Debtors, the Committee, the SPV, the RIPA Agent and the RIPA Purchasers with respect to the foregoing are reserved.

Texas (the "Local Rules"), and the Procedures for Complex Chapter 11 Cases in the Southern

District of Texas seeking, among other things, on a final basis:

(a)  authorization for the Debtors, pursuant to sections 105, 361, 362, 363, 503 and 507 of the Bankruptcy Code, to (i) use cash collateral, as such term is defined in section 363(a) of the Bankruptcy Code, in accordance with the terms of this final order (together with all annexes and exhibits hereto, this "Final Order") and (ii) grant adequate protection to the Prepetition Term Loan Secured Parties (as defined below) as set forth herein;

(b)  modification of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Final Order;

(c)  except to the extent of the Carve Out (as defined herein), the waiver of all rights to surcharge any Prepetition Collateral or Collateral (each as defined herein) under section 506(c) of the Bankruptcy Code;

(d)  for the "equities of the case" exception under section 552(b) of the Bankruptcy Code to not apply to any of the Prepetition Term Loan Secured Parties with respect to the proceeds, products, offspring, or profits of any of the Prepetition Collateral or Collateral under section 552(b) of the Bankruptcy Code or any other applicable principle of equity or law;

(e)  waiver of any applicable stay with respect to the effectiveness and enforceability of this Final Order (including a waiver pursuant to Bankruptcy Rule 6004(h)); and

(f)  granting related relief;

and an interim hearing having been held by the Court on May 16, 2023 (the "Interim Hearing"),

and the Court having entered an order, dated May 16, 2023, granting the relief requested in the

Motion on an interim basis [Docket No. 60] (the "Interim Order"); and a final hearing having been

held by this Court (the "Final Hearing") to consider the relief requested in the Motion; pursuant to

Bankruptcy Rule 4001 and Local Rule 2002-1, notice of the Motion and the relief sought therein

having been given by the Debtors as set forth in the Motion and the Interim Order; and the Court

having considered the *Declaration of Nicholas K. Campbell in Support of the Debtors' Chapter*

*11 Petitions and First Day Relief* (the "First Day Declaration"), the initial Approved Budget (as

defined herein) attached to the Interim Order as Exhibit 1 (the "Initial Approved Budget"), offers

2

of proof, evidence adduced, and the statements of counsel at the Interim Hearing and the Final Hearing; and the Court having considered the relief requested in the Motion, and it appearing to the Court that granting the final relief sought in the Motion on the terms and conditions herein contained is necessary and essential and that authorizing the Debtors to use Cash Collateral as contemplated herein will enable the Debtors to preserve the value of the Debtors' businesses and assets and that such relief is fair and reasonable and that entry of this Final Order is in the best interest of the Debtors and their estates and creditors; and due deliberation and good cause having been shown to grant the relief sought in the Motion on a final basis;

**IT IS HEREBY FOUND AND DETERMINED THAT:**[3]

A.    ***Petition Date***. On May 14, 2023 (the "<u>Petition Date</u>"), the Debtors commenced these Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "<u>Court</u>").

B.    ***Debtors-in-Possession***. The Debtors have continued with the management and operation of their businesses and properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Chapter 11 Cases.

C.    ***Jurisdiction and Venue***. The Court has jurisdiction over the Motion, these Chapter 11 Cases, and the parties and property affected hereby pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas* dated May 24, 2012.  Venue for these Chapter 11 Cases is proper pursuant to 28

---

[3]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Bankruptcy Rule 7052.

U.S.C. § 1408.  This Court may enter a final order consistent with Article III of the United States Constitution.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

D.    ***Committee***. On May 25, 2023, the Office of the United States Trustee for Region 7 (the "U.S. Trustee") appointed an official committee of unsecured creditors in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (the "Committee").

E.    ***Debtors' Stipulations***. Subject only to the rights of parties in interest specifically set forth in paragraph 19 of this Final Order (and subject to the limitations thereon contained in such paragraph), upon entry of the Interim Order, the Debtors admitted, stipulated and agreed that (collectively, paragraphs E.1 through E.4 below are referred to herein as the "Debtors' Stipulations"):

1.    ***Prepetition Secured Debt***.

(a)    *Prepetition Term Loan Secured Indebtedness.* Under that certain Credit Agreement and Guaranty, dated as of June 19, 2020 (as amended, restated, or otherwise modified from time to time, the "Prepetition Term Loan Credit Agreement" and, together with all other documentation executed in connection therewith, including without limitation, the Security Documents (as defined in the Prepetition Term Loan Credit Agreement), and all other Loan Documents (as defined in the Prepetition Term Loan Credit Agreement) executed in connection therewith, as amended, restated, or otherwise modified from time to time, the "Prepetition Term Loan Documents"), among Athenex, Inc. ("Borrower"), Oaktree Fund Administration, LLC, as Administrative Agent (as defined in the Prepetition Term Loan Credit Agreement and, in such capacity and including any successors thereto, the "Prepetition Term Loan Administrative Agent"), the guarantors from time to time party thereto (the "Prepetition Term Loan Guarantors") and the lenders from time to time party thereto (such lenders, the "Prepetition Term Loan Lenders"

and, together with the Prepetition Term Loan Administrative Agent, the "Prepetition Term Loan Secured Parties"), the Borrower borrowed loans thereunder (the "Prepetition Term Loans") consisting of term loans of up to $225 million in Commitments (as defined in the Prepetition Term Loan Credit Agreement).  As of the Petition Date, the Borrower owed, and was liable to, and the Prepetition Term Loan Guarantors unconditionally and irrevocably guaranteed for the benefit of, the Prepetition Term Loan Secured Parties pursuant to the Prepetition Term Loan Documents, without offset, contest, objection, recovery, recoupment, reduction, defense, counterclaim, subordination, recharacterization, disgorgement, disallowance, avoidance, challenge, or any other claim or Cause of Action[4] of any kind, (x) an aggregate principal amount of not less than **$41.875 million**, plus, (y) all accrued and unpaid interest (including default interest) with respect thereto and any additional fees, costs, premiums, expenses (including any attorneys', accounts', consultants', appraisers', financial advisors', and other professionals' fees and expenses), reimbursement obligations, indemnification obligations, guarantee obligations, other contingent obligations, and other charges of whatever nature, whether or not contingent, whenever arising, due, or owing, and all other Obligations (as defined in the Prepetition Term Loan Credit Agreement) owing under or in connection with the Prepetition Term Loan Documents (clauses (x) and (y), collectively, the "Prepetition Term Loan Secured Indebtedness").

       (b)    *[Reserved].*

---

[4]     As used herein, "Causes of Action" means any action, claim, cause of action, controversy, demand, right, action, lien, indemnity, interest, guaranty, suit, obligation, liability, damage, judgment, account, defense, or offset of any kind or character whatsoever, whether known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the entry of this Final Order, in contract or in tort, in law (whether local, state, or federal U.S. or non-U.S. law) or in equity, or pursuant to any other theory of local, state, or federal U.S. or non-U.S. law.

(c)      *Prepetition Term Loan Secured Indebtedness Liens and Security*. Pursuant to the applicable Prepetition Term Loan Documents, the Prepetition Term Loan Secured Indebtedness is secured, in favor of the Prepetition Term Loan Secured Parties, by valid, binding, properly perfected, continuing and enforceable security interests in and liens on all "Collateral" as defined in the Prepetition Term Loan Credit Agreement (as amended or modified, such security interests and liens, the "Prepetition Term Loan Liens" and such collateral, the "Prepetition Collateral"), in each case, subject to the relative rights, rankings, and priorities set forth in any applicable intercreditor agreement.

(d)      *[Reserved]*.

(e)      *Validity, Perfection, and Priority of Prepetition Term Loan Liens and Prepetition Term Loan Secured Indebtedness*. The Debtors acknowledge and agree that, in each case as of the Petition Date:  (i) the Prepetition Term Loan Liens encumber all of the Prepetition Collateral, as the same existed on the Petition Date; (ii) the Prepetition Term Loan Liens are valid, binding, enforceable, non-avoidable, and properly perfected liens on and security interests in the Prepetition Collateral; (iii) the Prepetition Term Loan Liens were granted to or for the benefit of the Prepetition Term Loan Secured Parties for fair consideration and reasonably equivalent value and were granted contemporaneously with, or covenanted to be provided as an inducement for, the making of the loans and/or commitments and other financial accommodations secured thereby; (iv) the Prepetition Term Loan Secured Indebtedness constitutes legal, valid, binding, and non-avoidable obligations of the applicable Debtors and is enforceable in accordance with their terms; (v) subject to any applicable intercreditor agreement, the Prepetition Term Loan Liens are subject and subordinate only to Permitted Prior Liens,[5] (vi) no offsets, challenges,

---

[5]      As used herein, "Permitted Prior Liens" shall mean any legal, valid, binding, perfected, enforceable liens on or security interests in the Prepetition Collateral in existence as of the Petition Date, or which are perfected

objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition Term

Loan Liens or Prepetition Term Loan Secured Indebtedness exist, and no portion of the Prepetition

Term Loan Liens or Prepetition Term Loan Secured Indebtedness is subject to any challenge, cause

of action, or defense, including impairment, set-off, right of recoupment, avoidance, attachment,

disallowance, disgorgement, reduction, recharacterization, recovery, subordination (whether

equitable or otherwise), attack, offset, contest, defense, counterclaims, cross-claims, or "claim" (as

defined in the Bankruptcy Code), pursuant to the Bankruptcy Code or applicable nonbankruptcy

law or regulation, including in any Successor Cases (as defined below); and (vii) the Debtors and

their estates have no claims, objections, challenges, causes of actions, recoupments, counterclaims,

cross-claims, setoff rights, and/or choses in action, including "lender liability" causes of action or

avoidance claims under chapter 5 of the Bankruptcy Code, whether arising under applicable state

law or federal law (including any recharacterization, subordination, avoidance, disgorgement,

recovery, or other claims arising under or pursuant to sections 105, 510, or 542 through 553 of the

Bankruptcy Code), against the Prepetition Term Loan Secured Parties or any of their affiliates,

agents, representatives, attorneys, advisors, professionals, officers, directors, and employees in

such capacity arising out of, based upon, or related to the Prepetition Term Loan Documents, the

Prepetition Term Loan Secured Indebtedness, or the Prepetition Term Loan Liens.

(f)      *[Reserved].*

(g)      *Credit Bids.* Subject to the revised bid procedures filed as of

June 12, 2023 [Docket No. 239], and subject to paragraph 19 hereof and the Prepetition Term Loan

---

subsequent to the Petition Date solely to the extent permitted by section 546(b) of the Bankruptcy Code, which have priority over the Prepetition Term Loan Liens that are not subject to avoidance, recharacterization, offset, subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law or other challenge.  For the avoidance of doubt, the liens granted under the RIPA Transaction Documents shall be Permitted Prior Liens on the collateral encumbered by such liens pursuant to the RIPA Transaction Documents (such collateral, the "RIPA Collateral").

Documents, the Prepetition Term Loan Administrative Agent shall have the rights granted pursuant to and consistent with section 363(k) of the Bankruptcy Code with respect to any credit bidding of the Prepetition Term Loan Secured Indebtedness on which the Prepetition Term Loan Secured Parties have Prepetition Term Loan Liens (or Adequate Protection Liens consistent with diminution in value pursuant to section 507(b) of the Bankruptcy Code). No Debtor or Debtors' affiliate shall object to the Prepetition Term Loan Administrative Agent or Prepetition Term Loan Secured Parties' right to credit bid up to the full amount of Prepetition Term Loan Secured Indebtedness, in each case including, without limitation, any accrued interest and expenses, in any sale, as applicable, whether such sale is effectuated through Bankruptcy Code section 363 (subject to the provisions of subsection 363(k) of the Bankruptcy Code), in a chapter 11 or chapter 7 proceeding, under Bankruptcy Code section 1129, by a chapter 7 or chapter 11 trustee, or otherwise, subject to applicable law.

(h)     *No Control*. None of the Prepetition Term Loan Secured Parties (i) control the Debtors or their properties or operations, have authority to determine the manner in which any Debtors' operations are conducted, or are control persons or insiders of the Debtors by virtue of any of the actions taken with respect to, in connection with, related to or arising from this Final Order or the Prepetition Term Loan Documents, (ii) owe any fiduciary duty to the Debtors, their respective creditors, or estates or (iii) are deemed to be acting as a "Responsible Person" or "Owner" or "Operator" with respect to the operation or management of the Debtors (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act of 1980 or any similar federal or state statute).

2.     ***Cash Collateral***. All of the Debtors' cash constitutes cash collateral of the Prepetition Term Loan Secured Parties within the meaning of Bankruptcy Code section 363(a) (the

"Cash Collateral"), including amounts generated by the collection of Prepetition Collateral, including but not limited to accounts receivable, all other cash proceeds of the Prepetition Collateral and amounts now or hereafter held in any of the Debtors' banking, checking, or other deposit accounts as of the Petition Date or amounts deposited or transferred into the Debtors' banking, checking, or deposit accounts after the Petition Date.

3. **Bank Accounts**. The Debtors acknowledge and agree that, as of the Petition Date, the Debtors do not maintain any bank accounts other than those accounts covered by any motion or order authorizing the Debtors to continue to use the Debtors' existing cash management system.

4. **[Reserved]**.

F. **Default**. The Debtors are in default under the Prepetition Term Loan Documents, and an event of default has occurred under the Prepetition Term Loan Documents.

G. **Adequate Protection.** Pursuant to sections 105, 361, 362 and 363(e) of the Bankruptcy Code, the Prepetition Term Loan Secured Parties are entitled to adequate protection of their interests in the Prepetition Collateral, including the Cash Collateral, to the extent of any diminution in value of their interests in the Prepetition Collateral resulting from, among other things, the Carve Out, the use of Cash Collateral, the use, sale or lease of any of the Prepetition Collateral, the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code, and/or for any other reason for which adequate protection may be granted under the Bankruptcy Code ("Diminution in Value"). The foregoing shall not, nor shall any provision of this Final Order be construed as, a determination or finding that there has been or will be any Diminution in Value of the Prepetition Collateral (including Cash Collateral) and the rights of all parties as to such issues are hereby preserved. Based on the Motion, the First Day Declaration, and the record

presented to the Court at the Interim Hearing and the Final Hearing, the terms of the proposed adequate protection arrangements and the use of the Prepetition Collateral, including Cash Collateral, are fair and reasonable and reflect the Debtors' prudent business judgment.

H.     ***Need to Use Cash Collateral.*** The Debtors have requested entry of this Final Order pursuant to Bankruptcy Rule 4001(b)(2) and have an immediate and critical need to use the Prepetition Collateral, including the Cash Collateral (subject to and in compliance with the Approved Budget (as defined below) and this Final Order) in order to, among other things, (A) pay certain adequate protection payments; and (B) pay the costs of administration of their estates, including the payment of professional fees and expenses, and to satisfy other working capital and general corporate needs of the Debtors.  Continued access to liquidity through the use of Cash Collateral, consistent with the Approved Budget and this Final Order, is vital to the Debtors and their efforts to maximize the value of their estates.  To the extent required, the Prepetition Term Loan Secured Parties have consented to the Debtors' use of Cash Collateral in accordance with and subject to the terms and conditions provided for in this Final Order.

I.     ***Notice***. In accordance with Bankruptcy Rules 2002, 4001(b) and (c), and 9014, and Local Rule 2002-1, adequate notice of the Final Hearing and the relief requested in the Motion on a final basis has been provided by the Debtors to the necessary notice parties.  Under the circumstances, the notice given by the Debtors (as described in the Interim Order) of the Motion, the relief requested therein, and the Final Hearing complies with Bankruptcy Rules 2002, 4001(b) and (c), and 9014 and Local Rule 2002-1.

J.     ***Relief Essential; Best Interest***. The Debtors have requested entry of this Final Order pursuant to Bankruptcy Rule 4001(b)(2).  The relief requested in the Motion (and as provided in this Final Order) is necessary, essential and appropriate for the continued operation of

10

the Debtors' businesses, the administration of these Chapter 11 Cases, and the management and preservation of the Debtors' assets and the property of their estates.  It is in the best interest of the Debtors' estates that the Debtors be allowed to use the Cash Collateral under the terms hereof. The Debtors have demonstrated good and sufficient cause for the relief granted herein.  The terms of the Order and the use of Cash Collateral are fair and reasonable and reflect the Debtors' exercise of prudent business judgment consistent with the Debtors' fiduciary duties.

K.      ***Arm's Length, Good Faith Negotiations***. The terms of this Final Order were negotiated in good faith and at arm's length between the Debtors and the Prepetition Term Loan Secured Parties.  The Prepetition Term Loan Secured Parties have acted without negligence, in good faith and not in violation of public policy or law in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting, or obtaining requisite approvals of the use of Cash Collateral on the terms set forth herein, including in respect of the granting of adequate protection as provided for herein and all documents and transactions related thereto.

Now, therefore, upon the record of the proceedings heretofore held before this Court with respect to the Motion, the evidence adduced at the Interim Hearing and the Final Hearing, and the statements of counsel thereat, and based upon the foregoing findings and conclusions,

**IT IS HEREBY ORDERED THAT:**

1.      ***Motion Granted.*** The Motion is granted on a final basis as set forth herein, and the use of Cash Collateral on a final basis is authorized, subject to the terms of this Final Order.

2.      ***Objections Overruled.*** Any objections to the Motion with respect to the entry of this Final Order that have not been withdrawn, waived or settled and all reservations of rights included therein, are hereby denied and overruled in all respects.

11

3.       *Authorization to Use Cash Collateral; Budget.*

(a)       *Authorization*. Subject to the terms and conditions of this Final Order, the Court hereby authorizes the Debtors' use of Cash Collateral during the period beginning with the Petition Date and ending on the Termination Date (as defined below), solely and exclusively in a manner consistent with and not in violation of this Final Order and the Approved Budget and for no other purposes.  Notwithstanding anything herein to the contrary, subject only to the Debtors' rights under paragraph 8(a) and the Carve Out, the Debtors' right to use Cash Collateral shall terminate on the Termination Date.

(b)       *Approved Budget; Budget Period*. As used in this Final Order: (i) "Approved Budget" means the Initial Approved Budget attached to the Interim Order as Exhibit 1, as such Initial Approved Budget may be amended, replaced, supplemented, or otherwise modified or extended from time to time by the Debtors, in consultation with the Committee, and with the prior written consent of the Prepetition Term Loan Administrative Agent in its sole discretion as set forth in this paragraph and this Final Order; and (ii) "Budget Period" means the initial two-week (2-week) period set forth in the Initial Approved Budget, and each rolling two-week period thereafter (*i.e.*, the first Budget Period will cover weeks 1 through 2 after the Petition Date, the second Budget period will cover weeks 3 through 4 after the Petition Date, and so on).

(c)       *Budget Testing*. Except as otherwise provided herein, the Debtors may only use Cash Collateral in accordance with the Approved Budget, subject to Permitted Variances (as defined below), and in accordance with this Final Order.  Permitted Variances for each one-week period shall be reported by no later than the subsequent Thursday following each Budget Period (each such date, a "Testing Date").  On or before 5:00 p.m. (prevailing Eastern Time) on each Testing Date, the Debtors shall prepare and deliver to counsel to the Committee,

12

and the Prepetition Term Loan Administrative Agent and its advisors, in form and substance reasonably satisfactory to the Prepetition Term Loan Advisors (as defined below), a variance report and reconciliation (the "Variance Report") setting forth for the one-week period just ended: (i) the Debtors' actual disbursements (the "Actual Disbursements") on a line-by-line and aggregate basis; (ii) the Debtors' actual cash receipts (the "Actual Cash Receipts") on a line-by-line and aggregate basis; (iii) a comparison (whether positive or negative, in dollars and expressed as a percentage) for the Actual Cash Receipts (and each line item thereof) and the Actual Disbursements (and each line item thereof) to the amount of the Debtors' projected cash receipts (and each line item thereof) and projected disbursements (and each line item thereof), respectively, as set forth in the Approved Budget for the applicable Budget Period; (iv) a cumulative comparison (whether positive or negative, in dollars and expressed as a percentage) covering the one-week period setting forth the Actual Cash Receipts (and each line item thereof) and the Actual Disbursements (and each line item thereof) against the amount of the Debtors' projected cash receipts (and each line item thereof) and projected disbursements (and each line item thereof), respectively, as set forth in the Approved Budget for such one-week period; and (v) as to each variance contained in the Variance Report, an indication (on a line item basis) as to whether such variance is temporary or permanent and an analysis and explanation in reasonable detail for any variance.

(d)     *Professional Fee Reserve Account*. The Debtors are authorized and directed to fund the segregated trust account of the Debtors' general bankruptcy counsel for the sole purpose of reserving for and paying unpaid Allowed Professional Fees (as defined in paragraph 5(b) hereof) (the "Professional Fee Reserve Account"), it being agreed that the Approved Budget shall be amended to reflect the sum of $925,000 as budgeted for Allowed

Professional Fees of the Committee pursuant to the Approved Budget. On a weekly basis and solely up to the amounts set forth for Professional Persons (as defined in paragraph 5(b) hereof) for each such week in the Approved Budget, the Debtors shall fund the Professional Fee Reserve Account (such amounts, the "Reserve Amounts"), and such Reserve Amounts may be applied from time to time to pay the Allowed Professional Fees prior to any and all other claims. If, after payment in full of all Reserve Amounts on account of Allowed Professional Fees, the Professional Fee Reserve Account has not been reduced to zero, all remaining funds shall be paid to the Prepetition Term Loan Secured Parties in accordance with their rights and priorities as of the Petition Date and subject to any applicable intercreditor agreements, unless the Prepetition Term Loan Secured Indebtedness has been indefeasibly paid in full, in cash, in which case any such excess shall be returned to the Debtors' creditors in accordance with their rights and priorities as of the Petition Date. For the avoidance of doubt, the Debtors' obligation to pay Allowed Professional Fees shall not be limited or deemed limited to funds held in the Professional Fee Reserve Account.

(e)     *Permitted Variances*. The Debtors shall not permit, during any Budget Period, (i) the Operating Disbursements (as defined in the Approved Budget) to have a negative variance in excess of 10% (with negative variance meaning, for the avoidance of doubt, that Operating Disbursements are greater than the projected disbursements on a cumulative basis) or (ii) Operating Cash Flow (as defined in the Approved Budget) to have a negative variance in excess of 15% (with negative variance meaning, for the avoidance of doubt, that Operating Cash Flow is less than the projected Operating Cash Flow) (such deviations, the "Permitted Variances"); *provided* that, any positive disbursements variance may be carried over to the immediately subsequent (but not any other) Budget Period to offset any negative disbursements variance for

14

such Budget Period.  For the avoidance of doubt, the cash disbursements considered for determining compliance with the Approved Budget covenant shall exclude the Debtors' disbursements in respect of (x) the restructuring professional fees of the Debtors, the Committee, and the Prepetition Term Loan Secured Parties on account of professional fees under paragraph 4(c) of the Interim Order or this Final Order and (y) U.S. Trustee's fees.

(f)  *Proposed Budget Reporting*.  By no later than 5:00 p.m. (prevailing Eastern Time) on the fifth (5th) business day before the end of each Budget Period (or as otherwise consented to by the Prepetition Term Loan Administrative Agent), the Debtors shall deliver to the Prepetition Term Loan Advisors (as defined below), and counsel to the Committee, a rolling 13-week cash flow forecast of the Debtors in the form of the Initial Approved Budget (each, a "Proposed Budget"), which Proposed Budget (including any subsequent revisions to any such Proposed Budget), solely upon written approval by the Prepetition Term Loan Administrative Agent in its sole discretion and in consultation with the Committee, shall become the Approved Budget; *provided* that, the Debtors shall deliver such updated 13-week cash flow forecast on reasonable request of the Prepetition Term Loan Administrative Agent.  In the event the conditions for the most recently delivered Proposed Budget to constitute the Approved Budget are not met as set forth herein, the prior Approved Budget shall remain in full force and effect; *provided, however*, in the event the Prepetition Term Loan Administrative Agent, in consultation with the Committee, does not approve a Proposed Budget within ten (10) business days of its delivery, the Debtors may request an emergency hearing with the Court (but on not less than five (5) business days' written notice to the Prepetition Term Loan Administrative Agent) to seek Court approval of the Proposed Budget for purposes of this Final Order.  When required under the terms of this Final Order, the

consent or approval of the Prepetition Term Loan Administrative Agent may be communicated via email to the Debtors or their professionals by the Prepetition Term Loan Advisors.

(g)     *Miscellaneous*. Except as otherwise set forth in the Approved Budget, Cash Collateral may not be used by, or to pay the fees, costs or expenses of, any of the Debtors' affiliated non-debtor entities.

4.     ***Adequate Protection for the Prepetition Term Loan Secured Parties.*** Subject to the provisions of paragraph 19 herein, the Carve Out, and the terms of this Final Order, pursuant to sections 361, 362, and 363(e) of the Bankruptcy Code, and in consideration of the stipulations and consents set forth herein, as adequate protection of the interests of the Prepetition Term Loan Secured Parties in the Prepetition Collateral (including Cash Collateral), in each case solely to the extent of any Diminution in Value of such interests, the Prepetition Term Loan Administrative Agent, for the benefit of itself and the other Prepetition Term Loan Secured Parties, were granted pursuant to the Interim Order, and are hereby further granted on a final basis the following:

(a)     *Adequate Protection Liens*. Pursuant to Bankruptcy Code sections 361(2) and 363(c)(2), and subject in all cases to the Carve Out, effective as of the Petition Date and in each case perfected without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or by possession or control by the Prepetition Term Loan Administrative Agent or any other party, the Debtors granted, and hereby are deemed to have granted on a final basis, to the Prepetition Term Loan Administrative Agent, for the benefit of itself and the other Prepetition Term Loan Secured Parties, valid, binding, continuing, enforceable, fully-perfected, nonavoidable, first-priority senior (except as otherwise

16

provided in this paragraph below with respect to the Permitted Prior Liens (as defined below) and the Carve Out), additional and replacement security interests in and liens on (all such liens and security interests, the "Adequate Protection Liens") (i) the Prepetition Collateral and (ii) all of the Debtors' now-owned and hereafter-acquired real and personal property, assets and rights, including all prepetition property and post-petition property of the Debtors of any kind or nature, wherever located, whether encumbered or unencumbered, including, without limitation, a 100% equity pledge of any first-tier foreign subsidiaries and any unencumbered assets of the Debtors, if any, and all prepetition property and post-petition property of the Debtors' estates, and the proceeds, products, rents and profits thereof, whether arising from section 552(b) of the Bankruptcy Code or otherwise, including, without limitation, all equipment, goods, accounts, cash, payment intangibles, bank accounts and other deposit or securities accounts of the Debtors (including any accounts opened prior to, on, or after the Petition Date), insurance policies and proceeds thereof, equity interests, instruments, intercompany claims, accounts receivable, other rights to payment, all general intangibles, all contracts and contract rights, securities, investment property, letters of credit and letter of credit rights, chattel paper, all interest rate hedging agreements, all owned real estate, real property leaseholds, fixtures, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, all commercial tort claims, and all claims and causes of action (including causes of action arising under section 549 of the Bankruptcy Code, claims arising on account of transfers of value from the Debtors to a non-Debtor affiliate incurred on or following the Petition Date), and any and all proceeds, products, rents, and profits of the foregoing (all property identified in this paragraph being collectively referred to as the "Collateral"), subject only to the Permitted Prior Liens and the Carve Out, in which case the Adequate Protection Liens shall be immediately junior in priority to

17

such Permitted Prior Liens and to the Carve Out; notwithstanding the foregoing, the Collateral shall exclude the Carve Out Reserves (other than with respect to the residual interest therein as provided in paragraph 5(c) hereof) and all claims and causes of action arising under any section of chapter 5 of the Bankruptcy Code (other than claims and causes of action arising under section 549 of the Bankruptcy Code) (the "Avoidance Actions"), but shall include any and all proceeds of and other property that is recovered or becomes unencumbered as a result of (whether by judgment, settlement, or otherwise) any Avoidance Action ("Avoidance Proceeds"); *provided that*, once such liens are granted pursuant to this Final Order, the Adequate Protection Superpriority Claims (as defined below) may be collected out of the Adequate Protection Liens on any Avoidance Proceeds only after the holder of such Adequate Protection Liens has made commercially reasonable efforts to exhaust all other sources of recovery for such claims.

(b)      *Adequate Protection Superpriority Claims*. As further adequate protection, and to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code, the Debtors granted, and hereby are deemed to have granted on a final basis effective as of the Petition Date, to each of the Prepetition Term Loan Administrative Agent, for the benefit of itself and the Prepetition Term Loan Secured Parties, allowed superpriority administrative expense claims in these Chapter 11 Cases ahead of and senior to any and all other administrative expense claims in these Chapter 11 Cases to the extent of any Diminution in Value (the "Adequate Protection Superpriority Claims"), junior only to the Carve Out.  Subject to the Carve Out, the Adequate Protection Superpriority Claims shall not be junior or *pari passu* to any other administrative claims against the Debtors and shall have priority over all now or hereinafter incurred administrative expense claims against the Debtors, including, without limitation, administrative expense claims

18

of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 726, 1113 and 1114 of the Bankruptcy Code.

(c)     *Fees and Expenses*. As additional adequate protection, the Debtors shall, and are authorized and directed to, pay in full in cash and in immediately available funds: (i) within five (5) business days after the Debtors' receipt of invoices therefor, the professional fees, expenses and disbursements (including, but not limited to, the professional fees, expenses and disbursements of counsel and other third-party consultants and/or experts, including financial advisors) incurred prior to the Petition Date by the Prepetition Term Loan Administrative Agent and other Prepetition Term Loan Secured Parties (including, without limitation, reasonable fees, expenses and disbursements incurred by Sullivan & Cromwell LLP, as primary counsel, and Bracewell LLP, as local counsel, collectively, the "Prepetition Term Loan Advisors") and (ii) subject to the notice provisions in paragraph 27 hereof, the reasonable fees and expenses incurred on and after the Petition Date by the Prepetition Term Loan Secured Parties, including the fees and expenses of the Prepetition Term Loan Advisors (including, without limitation, professional fees, expenses and disbursements of counsel), which shall be submitted on a monthly basis and paid within ten (10) days of the Debtors' receipt of invoices therefor ((i) and (ii) collectively, the "Adequate Protection Payments").  None of the foregoing fees, expenses and disbursements shall be subject to separate approval by this Court or require compliance with the U.S. Trustee guidelines, and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto or otherwise seek the Court's approval of any such payments.  For the avoidance of doubt, the payment of adequate protection payments pursuant to this paragraph shall be without prejudice to whether any such payments should be recharacterized or reallocated pursuant to the Bankruptcy Code as repayments of principal.  Nothing herein shall

limit or act as a waiver of the Committee's rights with respect to any finding of adequate protection or a lack thereof, including analysis of Collateral value on the Petition Date, and on any subsequent measurement/payment date, as well as the Committee's right to contest or have determined whether or not adequate protection has proven inadequate within the meaning of section 507(b) of the Bankruptcy Code.

(d)    *Reporting Requirements.* As additional adequate protection to the Prepetition Term Loan Secured Parties, the Debtors shall use reasonable best efforts to comply with those reporting requirements set forth in the Prepetition Term Loan Credit Agreement and shall further provide, subject to any applicable limitations set forth below, to (i) the Prepetition Term Loan Administrative Agent, (ii) the Prepetition Term Loan Advisors, and (iii) the RIPA Agent:

(i)    weekly (or with such other frequency as may be agreed to between the Debtors and the Prepetition Term Loan Administrative Agent) calls with the Prepetition Term Loan Administrative Agent and the Prepetition Term Loan Advisors with respect to (a) business updates, (b) the Debtors' discussions with any potential financing party, strategic partner, or acquirer, and (c) the status of any material litigation, litigation claims, and other claims, and (d) any other updates in form and scope reasonably agreed by the Debtors and the Prepetition Term Loan Administrative Agent;

(ii)    at the times specified in paragraph 3(c) hereof, the Variance Report required by paragraph 3(c) hereof;

(iii)    in-person or teleconference presentations by the Debtors and/or their advisors to the Prepetition Term Loan Secured Parties, at such times as the Prepetition Term Loan Administrative Agent may reasonably request in writing (including via email), and at mutually agreeable places (to the extent such presentations are in-person);

(iv)    timely delivery of each Proposed Budget as set forth in this Final Order;

(v)    promptly provide notice to the Prepetition Term Loan Secured Parties of the Debtors' failure to maintain unrestricted cash of at least $4,000,000 at any time;

20

(vi)    promptly, all written demands or claims related to or asserting any liens in respect of property or assets of the Debtors (including liens imposed by law, such as landlord's, vendors', suppliers', carriers', warehousemen's, repairmen's, construction contractors', workers' and mechanics' liens and other similar liens) if the amount demanded or claimed exceeds $100,000 individually or $500,000 in the aggregate;

(vii)    promptly upon request after the end of each prior month, the amount of postpetition accrued and unpaid expenses and professional fees and expenses;

(viii)    promptly upon request after the end of each prior month, in form and detail reasonably acceptable to the Prepetition Term Loan Administrative Agent, (a) net receivables/payables due to third parties, (b) account payables and payments, and (c) accounts payable aging;

(ix)    as soon as reasonably practicable after written request from the Prepetition Term Loan Advisors, the Debtors will provide the Prepetition Term Loan Administrative Agent and the Prepetition Term Loan Advisors with reasonable access to any consultant, turnaround management, broker or financial advisory firm retained by the Debtors in these Chapter 11 Cases, and if requested, copies of all retention agreements for each such consultant; and

(x)    all reasonable requests made by the Prepetition Term Loan Secured Parties.

(e)    Items (i), (ii), (v), (vii), (viii), and (ix) in the preceding paragraph 4(d) shall also be provided to counsel to the Committee in real time, as and when presented to the Prepetition Term Loan Administrative Agent, the Prepetition Term Loan Advisors, and/or the RIPA Agent.

(f)    *Other Covenants*. The Debtors shall maintain their cash management arrangements in a manner consistent with this Court's order(s) granting the Debtors' cash management motion unless otherwise consented to by the Prepetition Term Loan Lenders. The Debtors shall continue ordinary course practices to maintain good standing under the jurisdiction in which each Debtor and each of its subsidiaries is incorporated or organized and

continue to operate the business in the ordinary course of business customary in the normal course of ordinary operations consistent with past practice taking into account these Chapter 11 Cases and the funding available under the Approved Budget unless otherwise consented to by the Prepetition Term Loan Lenders.  The Debtors shall not sell, lease (other than existing leases) or otherwise dispose of any assets with an aggregate fair market value in excess of $250,000 in any single transaction or series of related transactions outside the ordinary course of business, without the prior written reasonable consent of the Prepetition Term Loan Administrative Agent (with email from the Prepetition Term Loan Advisors to Debtors' counsel being sufficient) and order of the Court.  Further, the Prepetition Term Loan Administrative Agent shall have consultation rights on all ordinary course inventory sales by the Debtors at or below $3,000,000 in value, and consent rights over ordinary course inventory sales exceeding $3,000,000 in value and all non-ordinary course inventory sales exceeding $250,000 in value.   The Debtors will use commercially reasonable efforts to pursue inventory sales, and will keep Prepetition Term Loan Administrative Agent reasonably informed with respect to the Debtors' efforts to sell such inventory.  The Debtors shall not assume or reject any material contract, or seek authority of the Court to assume or reject any material contract, without the prior written reasonable consent of the Prepetition Term Loan Administrative Agent (with email from the Prepetition Term Loan Advisors to the Debtors' counsel being sufficient).   The Debtors shall continue to comply in all respects with those covenants contained in the Prepetition Term Loan Credit Agreement, in each case as in effect on the Petition Date, solely with respect to the preservation of rights, qualifications, licenses, permits, privileges, franchises, governmental authorizations and intellectual property rights, in each case, that are material to the conduct of the business and the maintenance of properties and insurance. Without the prior written reasonable consent of the Prepetition Term Loan Secured Parties (email

being sufficient) or approval of the Court (where applicable), the Debtors shall not (i) enter into, terminate, or otherwise modify any material operational contract, lease or other arrangement other than in the ordinary course of business, (ii) make any payment to any officer or employee of any Debtor out of the ordinary course of business, (iii) agree to, or incur, any material increase in the compensation payable or to become payable to any officer or employee of any Debtor, or (iv) materially increase the benefits of any such officer or employee.  The Debtors shall cooperate in good faith and coordinate with the Prepetition Term Loan Secured Parties with respect to any transactions to be taken in these Chapter 11 Cases and provide counsel to the Prepetition Term Loan Secured Parties and counsel to the Committee with a reasonable opportunity under applicable circumstances to review draft copies of all substantive pleadings and proposed orders to be filed in these Chapter 11 Cases.

        (g)    *Miscellaneous*.

        (i)    Except for (i) the Carve Out, (ii) avoidance of the liens of the Prepetition Term Loan Secured Parties pursuant to a Challenge, and (iii) as otherwise provided in this paragraph 4, the Adequate Protection Liens and Adequate Protection Superpriority Claims granted to the Prepetition Term Loan Secured Parties pursuant to this paragraph 4 of this Final Order shall not be subject, junior, or *pari passu*, to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estate under the Bankruptcy Code, including, without limitation, pursuant to section 551 or otherwise, and shall not be subordinated to or made *pari*

23

*passu* with any lien, security interest or administrative claim under the Bankruptcy Code, including, without limitation, pursuant to section 364 or otherwise in these Chapter 11 Cases or any Successor Case.

(ii)    The Adequate Protection Liens are deemed automatically perfected as of the Petition Date without the necessity of recording same and without further notice or order.  The Prepetition Term Loan Administrative Agent shall not be required to file any UCC financing statements or other instruments (or to take any other action) to perfect such Adequate Protection Liens.

(iii)   The automatic stay provisions of section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified to the extent necessary to permit the Prepetition Term Loan Administrative Agent to perform any act authorized or permitted under or by virtue of this Final Order including, without limitation, to take any act to create, validate, evidence, attach or perfect any of the Adequate Protection Liens and to receive any payments expressly authorized by this Final Order with respect to the Prepetition Term Loan Secured Indebtedness or adequate protection.

24

(h)     *Right to Seek Additional Adequate Protection*. This Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of any of the Prepetition Term Loan Secured Parties to request further or alternative forms of adequate protection at any time or the rights of the Debtors or any other party to contest such request. Subject to the Carve Out, nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Term Loan Secured Parties is insufficient to compensate for any Diminution in Value of their interests in the Prepetition Collateral during these Chapter 11 Cases or any Successor Case.  Nothing contained herein shall be deemed a finding by the Court, or an acknowledgment by any of the Prepetition Term Loan Secured Parties that the adequate protection granted herein does in fact adequately protect any of the Prepetition Term Loan Secured Parties against any Diminution in Value of their interests in the Prepetition Collateral (including the Cash Collateral).

5.     ***Carve Out***.

(a)     *Priority of Carve Out*. Each of the Prepetition Term Loan Liens, Adequate Protection Liens, the Prepetition Term Loan Secured Indebtedness and Adequate Protection Superpriority Claims shall be subject and subordinate to payment of the Carve Out.

(b)     *Definition of Carve Out*. As used in this Final Order, the "Carve Out" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee (the "U.S. Trustee") under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $75,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and

4864-9759-2168 v.6

expenses (including any success fees or commissions allowed by the Court and earned prior to the delivery of the Carve Out Trigger Notice) (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") or the Committee pursuant to section 328 or 1103 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") at any time before delivery by the Prepetition Term Loan Administrative Agent of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice, (the amounts set forth in clauses (i)  through (iii), the "Pre-Carve Out Trigger Notice Cap"); (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $550,000 incurred after the first business day following delivery by the Prepetition Term Loan Administrative Agent of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise, less the amount of any prepetition retainers received by any such Professional Persons and not previously returned or applied to fees and expenses (the amounts set forth in this clause (iv) being the "Post-Carve Out Trigger Notice Cap"); (v) amounts payable by the Debtors under any Court-approved key employee retention plan (but,for the avoidance of doubt, not any amounts payable under any key employee incentive plan); and (vi) accrued and unpaid obligations of the Debtors for postpetition payroll and employee-related taxes and benefits as of the date of the delivery of the Carve-Out Trigger Notice to the extent set forth in the Approved Budget.  For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the Prepetition Term Loan Administrative Agent or the Prepetition Term Loan Advisors to the Debtors' lead restructuring counsel (Pachulski Stang Ziehl & Jones LLP), the U.S. Trustee and counsel to the Committee, which notice may be delivered following the occurrence and during

26

the continuation of a Termination Event stating that the Post-Carve Out Trigger Notice Cap has been invoked.

(c)     *Further Provisions Regarding Professional Fee Reserve Account*. Notwithstanding the occurrence of a Termination Event, upon delivery of a Carve Out Trigger Notice on the Termination Declaration Date (as defined below), such Carve Out Trigger Notice shall constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by the Debtors to fund a reserve (to the extent not already funded to the Professional Fee Reserve Account) in an amount equal to the then unpaid amounts of the Allowed Professional Fees plus a reasonable estimate of fees and expenses not yet allowed for the period through and including the Termination Declaration Date (the "Estimated Professional Fees").  The Debtors shall deposit and hold such amounts in the Professional Fee Reserve Account.  On the Termination Declaration Date, the Carve Out Trigger Notice shall also constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by the Debtors, after funding the Estimated Professional Fees, to fund the Professional Fee Reserve Account in an amount equal to the Post-Carve Out Trigger Notice Cap.  Notwithstanding anything to the contrary in the Prepetition Term Loan Documents, the Interim Order or this Final Order: (i) following delivery of a Carve Out Trigger Notice, the Prepetition Term Loan Administrative Agent shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out has been fully funded; (ii)(A) disbursements by the Debtors from the Professional Fee Reserve Account shall not increase or reduce the Prepetition Term Loan Secured Indebtedness, (B) failure of the Professional Fee Reserve Account to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out, (C) in no way shall the Approved Budget, Proposed Budget, Carve Out, Post-Carve

27

Out Trigger Notice Cap, Carve Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors; and (iii) the Carve Out shall be senior to all liens and claims securing the Prepetition Term Loan Secured Indebtedness, the Adequate Protection Liens, the Adequate Protection Superpriority Claims, and any claims arising under section 507(b) of the Bankruptcy Code.

(d)      *No Direct Obligation To Pay Allowed Professional Fees*.  The Prepetition Term Loan Secured Parties reserve the right to object to the allowance of any fees and expenses, whether or not such fees and expenses were incurred in accordance with the Approved Budget.  Except for permitting the funding of the Carve Out Reserves as provided herein, none of the Prepetition Term Loan Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person or any fees or expenses of the U.S. Trustee or Clerk of the Court incurred in connection with these Chapter 11 Cases or any successor case(s) under any chapter of the Bankruptcy Code (a "Successor Case").  Nothing in this Final Order or otherwise shall be construed to obligate the Prepetition Term Loan Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(e)      *Payment of Carve Out On or After the Termination Declaration Date*.  Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis; *provided, however*, if the Debtor Professionals use their retainers to pay such Allowed Professional Fees, such payments shall not reduce the Carve Out.

6.        *Access and Information*.

Upon reasonable prior written notice (as applicable, including via acknowledged electronic mail) during normal business hours, the Debtors shall provide the Prepetition Term Loan Advisors, counsel to the Committee, and the RIPA Agent with (a) reasonable access to the Debtors' books and records, including all non-privileged records and files of the Debtors pertaining to the Prepetition Collateral and the Collateral and other available information (including historical information) regarding the Debtors, their property, operations or finances that they shall reasonably request, (b) reasonable access to the Debtors' properties and (c) reasonable access to the Debtors' officers, counsel and financial advisors to discuss the Debtors' affairs, finances, and condition; it being understood that nothing in this paragraph shall require the Debtors (or any of their advisors) to take any action that would conflict with any applicable requirements of law or any binding agreement, or that would waive any attorney-client or similar privilege.

7.        *Termination*.

Subject to the Remedies Notice Period (as defined below) and paragraphs 5 and 8 of this Final Order, including if ordered by the Court in accordance with paragraph 8, the Debtors' right to use Cash Collateral pursuant to this Final Order shall automatically cease without further court proceedings on the Termination Date (as defined herein), *provided however*, nothing herein shall limit the Debtors' right to seek authorization from the Court, including on an emergent basis, to use Cash Collateral following a Termination Event.  As used herein, "Termination Event" means any of the events set forth below, in each case, unless waived or modified with the consent of the Prepetition Term Loan Administrative Agent:

(a)        The violation of any material term of this Final Order by the Debtors that is not cured within three (3) business days of receipt by the Debtors of notice from the

29

Prepetition Term Loan Administrative Agent of such default, violation or breach (which may be provided to the Debtors by e-mail);

(b)     Entry of any order modifying, reversing, revoking, staying, rescinding, vacating, or amending this Final Order without the express written consent of the Prepetition Term Loan Administrative Agent;

(c)     These Chapter 11 Cases are dismissed or converted to cases under chapter 7 of the Bankruptcy Code, or without the express written consent of the Prepetition Term Loan Administrative Agent, a trustee under chapter 11 of the Bankruptcy Code, an examiner with expanded powers or a responsible officer or similar person is appointed in these Chapter 11 Cases, or these Chapter 11 Cases is transferred or there is a change of venue, or the Debtors file any motion, pleading or proceedings (or solicits, supports, or encourages any other party to file any motion, pleading or proceeding) seeking or consenting to the granting of any of the foregoing relief, or any order is entered granting any of the relief enumerated in this subsection 7(c);

(d)     Except in connection with a motion for debtor in possession financing or any order entered in connection therewith, in each case, on terms acceptable to the Prepetition Term Loan Administrative Agent, the Debtors file any motion, pleading, or proceeding (or solicits, supports, or encourages any other party to file any motion, pleading, or proceeding) seeking or consenting to the granting of, or an order is entered granting, any lien or other interest *pari passu* with or senior to any of the Prepetition Term Loan Liens, Adequate Protection Liens or Adequate Protection Superpriority Claims granted to the Prepetition Term Loan Secured Parties under the Interim Order or this Final Order, or any order of the Court is entered reversing, staying for a period in excess of three (3) business days, vacating or otherwise amending, supplementing,

30

or modifying this Final Order in a manner adverse to the Prepetition Term Loan Secured Parties, in each case without the written consent of the Prepetition Term Loan Administrative Agent;

       (e)     The Debtors file any motion, pleading, or proceeding (or solicit, support, or encourage any other party to file any motion, pleading or proceeding) seeking or consenting to, or an order is entered granting, (i) the invalidation, subordination, or other challenge to the Prepetition Term Loan Secured Indebtedness, the Prepetition Term Loan Liens, the Adequate Protection Liens, or the Adequate Protection Superpriority Claims or (ii) any relief under sections 506(c) or 552 of the Bankruptcy Code with respect to any Prepetition Collateral or any Collateral, including the Cash Collateral, or against any of the Prepetition Term Loan Secured Parties, in each case without the written consent of the Prepetition Term Loan Administrative Agent;

       (f)     Other than as expressly permitted hereunder, the Debtors file any motion, pleading or proceeding (or solicits, supports, or encourages any other party to file any motion, pleading or proceeding) seeking or consenting to the granting of, or an order is entered granting, relief which could reasonably be expected to result in a material impairment of the rights or interests of the Prepetition Term Loan Secured Parties (except any motion or other pleading otherwise expressly permitted by this Final Order) and such motion, pleading, proceeding or order is not withdrawn or vacated within three (3) business days after notice thereof is delivered to the Debtors;

       (g)     The entry by this Court of an order granting relief from the automatic stay imposed by section 362 of the Bankruptcy Code to any entity other than the Prepetition Term Loan Secured Parties (i) with respect to the Prepetition Collateral or the Collateral having a value greater than $500,000 without the written consent of the Prepetition Term

Loan Administrative Agent or (ii) authorizing any party to proceed against any asset having a fair market value of at least $500,000 of the Debtors (other than insurance) or that would adversely affect in any material respect the Debtors' ability to operate their businesses in the ordinary course, without the written consent of the Prepetition Term Loan Administrative Agent;

(h)        Unless consented to by the Prepetition Term Loan Administrative Agent, the entry of a subsequent order of the Court (i) terminating the Debtors' use of Cash Collateral or (ii) authorizing the use of Cash Collateral by any non-Debtor affiliate of the Debtors;

(i)        The failure by the Debtors to make any payment required pursuant to this Final Order when due that is not cured within three (3) business days of receipt by the Debtors of notice from the Prepetition Term Loan Administrative Agent or the Prepetition Term Loan Advisors of such failure (which may be provided to the Debtors by e-mail);

(j)        The failure by the Debtors to deliver to the Prepetition Term Loan Administrative Agent or the Prepetition Term Loan Advisors any of the documents or other information required to be delivered to such applicable party pursuant to this Final Order when due, or any such documents or other information shall contain a material misrepresentation, and in either case, such failure or misrepresentation is not cured within three (3) business days after notice thereof is delivered to the Debtors;

(k)        The failure by the Debtors to comply in any material respect with the Approved Budget, subject to the Permitted Variances, or this Final Order that is not cured within three (3) business days of receipt by the Debtors of notice from the Prepetition Term Loan Administrative Agent or the Prepetition Term Loan Advisors of such default, violation or breach (which may be provided to the Debtors by e-mail);

4864-9759-2168 v.6

(l)      The Debtors, without the written consent of the Prepetition Term Loan Administrative Agent, enter into a restructuring support or similar agreement which contemplates the filing of a chapter 11 plan that would impair any Prepetition Term Loan Secured Parties, but only if the relevant provisions in the restructuring support or similar agreement have not been removed or the restructuring support or similar agreement has not been terminated as to all parties within five (5) business days upon the Debtors' execution of such restructuring support or similar agreement; *provided*, *however*, that after a Termination Declaration Date arising as a result of this paragraph 7(m), but before the Termination Date in connection therewith, the Debtors shall be permitted to cure a Termination Event pursuant to this paragraph 7(m); *provided further*, that nothing shall prejudice the rights of the Prepetition Term Loan Secured Parties to object to any chapter 11 plan that provides for the reinstatement of the Prepetition Term Loan Secured Indebtedness pursuant to section 1124 of the Bankruptcy Code, which rights shall be fully preserved (for the avoidance of doubt, the Debtors' entry into a restructuring support or similar agreement that contemplates the filing of a chapter 11 plan seeking reinstatement of the Prepetition Term Loan Secured Indebtedness pursuant to section 1124 of the Bankruptcy Code would not trigger a Termination Event pursuant to this paragraph 7(m));

(m)      The Debtors, without the written consent of the Prepetition Term Loan Administrative Agent, file, amend, pursue, or support (either directly or indirectly) any chapter 11 plan that proposes treatment that would impair any Prepetition Term Loan Secured Parties, but only if such plan, amendment thereto, or support thereof, is not withdrawn within five (5) business days; *provided*, *however*, that after a Termination Declaration Date arising as a result of this paragraph 7(n), but before the Termination Date in connection therewith, the Debtors shall be permitted to cure a Termination Event pursuant to this paragraph 7(n); *provided further*, that

33

nothing shall prejudice the rights of the Prepetition Term Loan Secured Parties to object to any chapter 11 plan that provides for the reinstatement of the Prepetition Term Loan Secured Indebtedness pursuant to section 1124 of the Bankruptcy Code, which rights shall be fully preserved (for the avoidance of doubt, the Debtors' filing of a chapter 11 plan seeking reinstatement of the Prepetition Term Loan Secured Indebtedness pursuant to section 1124 of the Bankruptcy Code would not trigger a Termination Event pursuant to this paragraph 7(n));

(n)     The entry of an order of this Court approving the terms of any senior secured or *pari passu* debtor in possession financing that is entered into by the Debtors without the written consent of the Prepetition Term Loan Administrative Agent;

(o)     Any material contract of the Debtors shall be terminated (other than as a result of the commencement of these Chapter 11 Cases, the expiration thereof in accordance with its terms or in connection with the replacement thereof (to the extent such replacement agreement is consented to by the Prepetition Term Loan Administrative Agent)), or a party to a material contract (other than the applicable Debtors) shall deliver a written notice of non-renewal or termination thereof (other than in connection with the execution of a replacement agreement (to the extent such replacement agreement is consented to by the Prepetition Term Loan Administrative Agent)) and such non-renewal or termination shall not be revoked, rescinded, suspended or enjoined within ten (10) business days thereof (or such later date as the Prepetition Term Loan Administrative Agent may agree in writing);

(p)     The Debtors file any motion, pleading, or proceeding seeking to assume or reject any material executory contract or unexpired lease without the prior written reasonable consent of the Prepetition Term Loan Administrative Agent;

34

(q)     The entry of any post-petition judgment against the Debtors in excess of $500,000 in the aggregate (not including amounts covered by insurance) the enforcement of which is not otherwise stayed by the Bankruptcy Code or otherwise;

(r)     The Debtors shall be enjoined from conducting any material portion of their businesses, any material disruption of the business operations of the Debtors shall occur (other than as a result of these Chapter 11 Cases), or any material damage to or loss of material assets of the Debtors shall occur that is not otherwise covered by insurance;

(s)     The Debtors file any motion, pleading, or proceeding (or solicit or support any other party to file any motion, pleading, or proceeding) seeking or consenting to the granting of, or an order is entered granting, any termination and/or shortening, reduction of, or other modification to, the Debtors' exclusive period to file and/or solicit a chapter 11 plan pursuant to the Bankruptcy Code (collectively, the "Exclusive Periods") or the Debtors otherwise do not seek to extend the Exclusive Periods if and when applicable, in each case, unless otherwise agreed by the Prepetition Term Loan Administrative Agent;

(t)     Any (i) entry by the Debtors into any settlement or other material agreement or (ii) motion, proceeding, or other action is commenced, supported, or encouraged by the Debtors seeking, or otherwise consenting to any settlement or other material agreement without the reasonable consent of the Prepetition Term Loan Administrative Agent;

(u)     [reserved];

(v)     Any of the applicable Debtors fails to satisfy its reporting obligations under this Final Order; or

(w)     The failure of the Debtors to meet any of the deadlines (or such later dates as may be approved by the Prepetition Term Loan Administrative Agent) set forth on **Exhibit 2** (collectively, the "Milestones").

8.     ***Remedies After a Termination Date***.

(a)     Notwithstanding anything contained herein, the Debtors' authorization to use Cash Collateral hereunder shall automatically terminate on such date (the "Termination Date") that is, unless otherwise extended with the express written consent of the Prepetition Term Loan Administrative Agent, the earliest of (i) the effective date of any chapter 11 plan with respect to the Debtors that is confirmed by the Court; (ii) the date on which all or substantially all of the assets of the Debtors are sold in a sale under any chapter 11 plan or pursuant to section 363 of the Bankruptcy Code; and (iii) unless otherwise ordered by the Court, five (5) business days from date (the "Termination Declaration Date") on which written notice of the occurrence of any Termination Event is given (which notice may be given by electronic mail or other electronic means) by the Prepetition Term Loan Administrative Agent or the Prepetition Term Loan Advisors to the Debtors' counsel, counsel to the Committee, counsel to the RIPA Agent, and the U.S. Trustee (the "Termination Declaration" and such period commencing on the Termination Declaration Date and ending five (5) business days later, which period shall be automatically extended if the Debtors, the Committee, or the U.S. Trustee seeks an emergency hearing as provided in clause (b) below prior to the expiration of such period to enable the Court to rule thereon, the "Remedies Notice Period"); *provided that*, until the expiration of the Remedies Notice Period, the Debtors may (a) continue to use Cash Collateral to make payments in respect of expenses reasonably necessary to keep the businesses of the Debtors operating in accordance with the Approved Budget, (b) contest or cure any alleged Termination Event, (c) to pay

professional fees and fund the Carve Out Reserves and (d) seek other relief as provided for in this paragraph 8.  For the avoidance of doubt, the Prepetition Term Loan Administrative Agent or the Prepetition Term Loan Advisors may provide a Termination Declaration, notwithstanding the provisions of Bankruptcy Code section 362, without any application, motion or notice to, hearing before, or order from the Court.

(b)        If a Termination Declaration is delivered as provided above, the Debtors, the Committee, the RIPA Agent, and the Prepetition Term Loan Administrative Agent hereby consent to an emergency hearing being held before the Court on an expedited basis and related motions shall be filed with the Court on at least five (5) business days' notice (subject to the Court's availability) for the purpose (unless the Court orders otherwise) of considering (a) whether a Termination Event has occurred or is continuing and (b) any appropriate relief (including, without limitation, the Debtors' non-consensual use of Cash Collateral).  Unless the Court has determined that a Termination Event has not occurred and/or is not continuing or the Court orders otherwise, the automatic stay, as to all of the Prepetition Term Loan Secured Parties, shall automatically be terminated at the end of the Remedies Notice Period without further notice or order.  Upon expiration of the Remedies Notice Period, the Prepetition Term Loan Administrative Agent and the other Prepetition Term Loan Secured Parties shall be permitted to exercise all remedies set forth herein and in the Prepetition Term Loan Documents and as otherwise available at law or in equity without further order of or application or motion to this Court.

(c)        Nothing herein shall alter the burden of proof set forth in the applicable provisions of the Bankruptcy Code at any hearing on any request by the Debtors or other party in interest to re-impose or continue the automatic stay under Bankruptcy Code

section 362(a), use Cash Collateral, or to obtain any other injunctive relief.  Unless otherwise expressly provided, any delay or failure of the Prepetition Term Loan Administrative Agent and/or the other Prepetition Term Loan Secured Parties to exercise rights under the Prepetition Term Loan Documents and/or this Final Order shall not constitute a waiver of their rights hereunder, thereunder or otherwise.  The occurrence of the Termination Date or a Termination Event shall not affect the validity, priority, or enforceability of any and all rights, remedies, benefits, and protections provided to any of the Prepetition Term Loan Secured Parties under this Final Order, which rights, remedies, benefits, and protections shall survive the Termination Date or the delivery of Termination Declaration.

9.      ***[Reserved]***.

10.      ***Payments Free and Clear***. Notwithstanding anything to the contrary herein or in the Bid Procedures Order, and subject in all respects to paragraph 19, any and all payments or proceeds remitted to the Prepetition Term Loan Administrative Agent, for the benefit of the Prepetition Term Loan Secured Parties pursuant to the provisions of this Final Order shall be irrevocable, received free and clear of any claim, charge, assessment or other liability, including without limitation, any such claim or charge arising out of or based on, directly or indirectly, section 506(c) (whether asserted or assessed by, through or on behalf of the Debtor) or section 552(b) of the Bankruptcy Code.  Notwithstanding, the parties reserve all rights under section 506(b) of the Bankruptcy Code as to the proper and appropriate application of all such payments.

11.      ***Limitation on Charging Expenses Against Collateral.*** Except to the extent of the Carve Out, all rights to surcharge the interests of the Prepetition Term Loan Secured Parties in any Prepetition Collateral or any Collateral under section 506(c) of the Bankruptcy Code or any

4864-9759-2168 v.6

other applicable principle or equity or law shall be and are hereby finally and irrevocably waived, and such waiver shall be binding upon the Debtors and all parties in interest in these Chapter 11 Cases.

12.     ***Reservation of Rights of the Prepetition Term Loan Secured Parties***. This Final Order and the transactions contemplated hereby shall be without prejudice to (a) the rights of any of the Prepetition Term Loan Secured Parties to seek additional or different adequate protection, move to vacate the automatic stay, move for the appointment of a trustee or examiner, move to dismiss or convert these Chapter 11 Cases, or to take any other action in these Chapter 11 Cases and to appear and be heard in any matter raised in these Chapter 11 Cases, or the right of any party in interest from contesting any of the foregoing, and (b) any and all rights, remedies, claims and causes of action which the Prepetition Term Loan Secured Parties may have against any non-Debtor party.  For adequate protection purposes, each of the Prepetition Term Loan Secured Parties shall be deemed to have requested relief from the automatic stay and for adequate protection for any Diminution in Value from and after the Petition Date.  For the avoidance of doubt, such request will survive termination of this Final Order.

13.     ***Modification of Automatic Stay***. The Debtors are authorized and directed to perform all acts and to make, execute, and deliver any and all instruments as may be necessary to implement the terms and conditions of this Final Order and the transactions contemplated hereby.  The stay of section 362 of the Bankruptcy Code is hereby modified to permit the parties to accomplish the transactions contemplated by this Final Order.

14.     ***Survival of Final Order***. The provisions of this Final Order shall be binding upon any trustee appointed during these Chapter 11 Cases or upon a conversion to cases under chapter 7 of the Bankruptcy Code, and any actions taken in reliance hereof shall survive entry of

any order which may be entered converting these Chapter 11 Cases to chapter 7 cases, dismissing these Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise, confirming or consummating any plan(s) of reorganization or liquidation or otherwise, or approving or consummating any sale of any Prepetition Collateral or Collateral, whether pursuant to section 363 of the Bankruptcy Code or included as part of any plan.  The terms and provisions of this Final Order, as well as the priorities in payments, liens, and security interests granted pursuant to the Interim Order and this Final Order, shall continue notwithstanding any conversion of these Chapter 11 Cases to chapter 7 cases under the Bankruptcy Code, dismissal of these Chapter 11 Cases, confirmation or consummation of any plan(s) of reorganization or liquidation, approval or consummation of any sale, or otherwise.  Subject to the provisions and limitations described in paragraph 19 of this Final Order, the Adequate Protection Payments made pursuant to the Interim Order or this Final Order shall not be subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance in these Chapter 11 Cases or any Successor Case.

15.     ***No Third-Party Rights.*** Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

16.     ***Release.*** Notwithstanding anything to the contrary herein or in the Bid Procedures Order, and subject to the rights, provisions and limitations set forth in paragraph 19 of this Final Order, the Debtors, to the maximum extent permitted by applicable law, unconditionally, irrevocably, and fully forever released, remised, acquitted, relinquished, irrevocably waived, and discharged each of the Prepetition Term Loan Secured Parties (each in their roles as such), and each of their affiliates, former, current, or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders,

40

managers, consultants, accountants, attorneys, affiliates, assigns, agents, and predecessors in interest, each in their capacity as such, of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened, including, without limitation, all legal and equitable theories of recovery, arising under common law, statute, or regulation or by contract, of every nature and description that exist on the date hereof with respect to or relating to the Prepetition Term Loans, the Prepetition Term Loan Liens, the Prepetition Term Loan Secured Indebtedness, the Prepetition Term Loan Documents, the Interim Order or this Final Order, as applicable, and/or the transactions contemplated hereunder or thereunder, including, without limitation, (i) any so-called "lender liability" or equitable subordination claims or defenses, (ii) any and all claims and causes of action arising under the Bankruptcy Code, and (iii) any and all claims and causes of action regarding the validity, priority, extent, enforceability, perfection, or avoidability of the liens or claims of the Prepetition Term Loan Secured Parties; *provided*, *however*, that no such parties are released to the extent determined in a final, non-appealable judgment of a court of competent jurisdiction to have resulted primarily from such parties' gross negligence, fraud, or willful misconduct.

17.     ***Binding and Controlling Effect of Final Order.*** The terms of this Final Order shall be valid and binding upon the Debtors, all creditors of the Debtors and all other parties in interest from and after the entry of this Final Order by this Court, and none of the terms and provisions of this Final Order shall be abrogated or superseded by the conflicting provisions of any other order entered by this Court (unless otherwise contemplated hereunder).  To the extent

41

any provision of this Final Order conflicts or is inconsistent with any provision of the Motion or the Interim Order, the provisions of this Final Order shall control.

18.     ***Reversal, Stay, Modification or Vacatur.*** In the event the provisions of this Final Order are hereinafter reversed, stayed, modified or vacated, such reversal, modification, stay or vacatur shall not affect the rights and priorities of the Prepetition Term Loan Secured Parties granted and in effect pursuant to the Interim Order or this Final Order, as applicable, immediately prior thereto.  In other words, notwithstanding any such reversal, stay, modification or vacatur, any indebtedness, obligation or liability incurred by the Debtors pursuant to the Interim Order or this Final Order, as applicable, arising prior to the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of the Interim Order or this Final Order, as applicable, including any payments made hereunder or security interests and liens granted herein.

19.     ***Reservation of Certain Third-Party Rights and Bar of Challenge and Claims.***

(a)     The stipulations, admissions, waivers, and releases contained in the Interim Order and this Final Order, including the Debtors' Stipulations, were binding upon the Debtors in all circumstances and for all purposes upon entry of the Interim Order, pursuant to which the Debtors were deemed to have irrevocably waived and relinquished all Challenges (as defined below) as of the Petition Date.  The stipulations, admissions, waivers and releases contained in this Final Order, including the Debtors' Stipulations and the release in paragraph 16 hereof (the "Release"), shall be binding upon the Debtors' estates (and all successors of the Debtors) and all other parties in interest, including the Committee and any other person acting on behalf of the Debtors' estates, including a chapter 7 or chapter 11 trustee appointed in these

42

Chapter 11 Cases or any Successor Case, responsible party, examiner or other estate representative, except to the extent a party in interest and, for purposes of such exception, solely to the extent such party in interest obtains proper standing and has timely and properly filed an adversary proceeding or contested matter under the Bankruptcy Rules asserting a Challenge (as defined below) on or before the date that is sixty (60) calendar days after entry of the Interim Order (in each case to the extent requisite standing is obtained); *provided* that the Committee shall have until the date that is sixty (60) calendar days after its appointment (as such deadlines may be extended with the express written consent of the applicable Prepetition Secured Party, the "Challenge Period Termination Date").  With respect to the Committee, if the Committee on or before the Challenge Period Termination Date, files a motion to obtain standing to commence a Challenge, which motion attaches a form of complaint in connection with such Challenge that sets forth with specificity the basis for such Challenge (and any Challenge not so specified prior to the Challenge Deadline shall be deemed forever waived, released and barred) (the "Standing Motion"), then the Challenge Period Termination Date, (i) to the extent the Court grants the Standing Motion, shall be tolled until three (3) business days after the date on which the Court grants the Standing Motion, or as the Court may otherwise direct at such hearing, or (ii) if the Court denies the Standing Motion, shall be deemed to have expired as of such date; *provided however* that if, prior to the Challenge Period Termination Date, either these Chapter 11 Cases convert to chapter 7 or a chapter 7 or chapter 11 trustee is appointed in these Chapter 11 Cases or any Successor Cases, then in such case the Challenge Period Termination Date shall be extended solely with respect to the trustee until the later of the then Challenge Period Termination Date and the date that is thirty (30) days following such conversion or appointment.  Any claim or cause of action disputing any of the stipulations, admissions, waivers and releases contained in this Final

43

Order, including the Debtors' Stipulations and the Release, including any action seeking to avoid, object to, or otherwise challenge the Debtors' Stipulations or the Release regarding: (A) the validity, enforceability, extent, priority, or perfection of Prepetition Term Loan Liens, including any mortgages or security interests in the Prepetition Collateral; or (B) the validity, enforceability, allowability, priority, secured status, or amount of the Prepetition Term Loan Secured Indebtedness shall, in each case, be referred to herein as a "Challenge."

        (b)    Upon the occurrence of the Challenge Period Termination Date without the filing of a Challenge (or if any Challenge is filed and overruled): (i) any and all Challenges by any party (whether on behalf of the Committee, any chapter 11 trustee, and/or any examiner or other estate representative appointed or elected in these Chapter 11 Cases, and any chapter 7 trustee and/or examiner or other estate representative appointed or elected in any Successor Cases (as defined below)) shall be deemed to be forever barred; (ii) the Prepetition Term Loan Secured Indebtedness shall constitute allowed secured claims, not subject to counterclaim, setoff, recoupment, reduction, subordination, recharacterization, defense, or avoidance for all purposes in these Chapter 11 Cases and any Successor Cases; (iii) the Prepetition Term Loan Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, and perfected liens on the Prepetition Collateral, not subject to recharacterization, subordination, or avoidance; and (iv) all of the Debtors' stipulations and admissions contained in the Interim Order and this Final Order, including the Debtors' Stipulations, and all other waivers, releases, affirmations, and other stipulations as to the priority, extent, and validity as to the Prepetition Term Loan Secured Parties' claims, liens, and interests contained in the Interim Order and this Final Order shall be in full force and effect and forever binding upon the Debtors, the Debtors' estates, and all creditors, interest holders, and other parties in interest in these Chapter 11 Cases and any Successor Cases.

(c)      If any Challenge, whether via adversary proceeding or contested matter is timely and properly filed in accordance with the terms of this Final Order and the Bankruptcy Rules, the stipulations and admissions contained in the Interim Order and this Final Order, including the Debtors' Stipulations, solely with respect to those subject to the Challenge, shall nonetheless become binding and preclusive on the Committee and any other party-in-interest in the event that such party withdraws, settles, or is otherwise unsuccessful in prosecuting such Challenge.  Nothing in the Interim Order or this Final Order vests or confers on any person (as defined in the Bankruptcy Code), including, without limitation, the Committee, standing or authority to pursue any cause of action belonging to the Debtors or their estates, including, without limitation, any challenges (including a Challenge) with respect to the Prepetition Term Loan Documents, the Prepetition Term Loan Liens, and the Prepetition Term Loan Secured Indebtedness, and a separate order of the Court conferring such standing on the Committee or other party-in-interest shall be a prerequisite for the prosecution of a Challenge by such Committee or such other party-in-interest.

(d)      Nothing herein shall limit the Committee's ability to file a timely Standing Motion in respect of any timely and properly filed Challenge for which it cannot obtain standing as a matter of law because the applicable Debtor is a limited liability company (a "Debtor LLC") and applicable non-bankruptcy law prohibits a party other than the Debtors from bringing such claim (an "LLC Challenge Issue").  In the event the Committee files a timely Standing Motion that includes an LLC Challenge Issue, the Challenge Period Termination Date, solely for the specific Challenge set forth in the Standing Motion and solely as to the defendant(s) specifically named therein, shall be tolled until five (5) business days after the Court enters an order addressing the relief requested in the Standing Motion, and the Committee, the Debtors and the applicable

45

Prepetition Term Loan Secured Parties shall meet and confer in good faith with respect to an appropriate process (if any) for the prosecution of any such Challenge that addresses the LLC Challenge Issue.  If a timely Standing Motion that includes an LLC Challenge Issue is filed, the Debtor LLC on behalf of whom the Standing Motion has been filed (or a designated representative thereof) shall notwithstanding anything in this Final Order to the contrary (including the Debtors' Stipulations), be deemed to have retained the authority to prosecute the specific Challenge set forth in the Standing Motion solely as to the defendant(s) named in such Standing Motion to the extent that the Standing Motion, including an appropriate resolution of any LLC Challenge Issue, is granted.

20.     ***Limitation on Use of Collateral and Cash Collateral.*** Notwithstanding anything to the contrary set forth in the Interim Order or this Final Order, none of the Collateral, the Prepetition Collateral, including Cash Collateral, or the Carve Out or proceeds of any of the foregoing may be used: (a) to investigate (including by way of examinations or discovery proceedings), initiate, assert, prosecute, join, commence, support, or finance the initiation or prosecution of any claim, counterclaim, action, suit, arbitration, proceeding, application, motion, objection, defense, adversary proceeding, or other litigation of any type (excluding any proceedings contemplated by paragraph 8 hereof) (i) against any of the Prepetition Term Loan Secured Parties (in their capacities as such) or any of their affiliates, officers, directors, employees, agents, representatives, attorneys, consultants, financial advisors, affiliates, assigns, or successors in such capacity, with respect to any transaction, occurrence, omission, action, or other matter (including formal discovery proceedings in anticipation thereof), including, without limitation, any so-called "lender liability" claims and causes of action, or seeking relief against any of the Prepetition Term Loan Secured Parties or that that would otherwise impair the rights and remedies

46

of the Prepetition Term Loan Secured Parties hereunder, under the Prepetition Term Loan Documents, the Interim Order or this Final Order, including, without limitation, for the payment of any services rendered by the professionals retained by the Debtors or the Committee in connection with the assertion of or joinder in any such claim, counterclaim, action, suit, arbitration, proceeding, application, motion, objection, defense, adversary proceeding, or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment, determination, declaration, or similar relief that would impair the ability of any of the Prepetition Term Loan Secured Parties to recover on the Prepetition Collateral or the Collateral or seeking affirmative relief against any of the Prepetition Term Loan Secured Parties related to the Prepetition Term Loan Secured Indebtedness; (ii) invalidating, setting aside, avoiding, or subordinating, in whole or in part, the Prepetition Term Loan Secured Indebtedness or the Prepetition Term Loan Liens or security interests in the Prepetition Collateral or the Collateral; or (iii) for monetary, injunctive, or other affirmative relief against any of the Prepetition Term Loan Secured Parties, or with respect to the Prepetition Term Loan Secured Parties' liens on or security interests in the Prepetition Collateral or the Collateral that would impair the ability of any of the Prepetition Term Loan Secured Parties to assert or enforce any lien, claim, right, or security interest or to realize or recover on the Prepetition Term Loan Secured Indebtedness, to the extent applicable; (b) for objecting to or challenging in any way the legality, validity, priority, perfection, or enforceability of the claims, liens, or interests (including, without limitation, the Prepetition Term Loan Liens) held by or on behalf of each of the Prepetition Term Loan Secured Parties related to the Prepetition Term Loan Secured Indebtedness; (c) for asserting, commencing, or prosecuting any claims or causes of action whatsoever, including, without limitation, any Avoidance Actions related to or in connection with the Prepetition Term Loan Secured

Indebtedness or the Prepetition Term Loan Liens, including any cause of action seeking to invalidate, set aside, avoid or subordinate, in whole or in part, the Prepetition Term Loan Secured Indebtedness, the Prepetition Term Loan Liens or Adequate Protection Liens; (d) for prosecuting an objection to, contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the Prepetition Term Loan Liens or any other rights or interests of any of the Prepetition Term Loan Secured Parties related to the Prepetition Term Loan Secured Indebtedness or the Prepetition Term Loan Liens; or (e) for monetary, injunctive, or other affirmative relief against any of the Prepetition Term Loan Secured Parties relating in any way to the Prepetition Term Loan Secured Indebtedness; *provided* that no more than $60,000 of the proceeds of the Collateral, or the Prepetition Collateral, including the Cash Collateral, in the aggregate, may be used by the Committee to investigate, prior to the Challenge Period Termination Date, any potential Challenge, including claims, causes of action, adversary proceedings, or other litigation against the Prepetition Term Loan Secured Parties solely concerning the legality, validity, priority, perfection, enforceability or extent of the Prepetition Term Loan Secured Indebtedness and/or the Prepetition Term Loan Liens.

21. ***Enforceability; Waiver of Any Applicable Stay.*** The Interim Order constituted, and this Final Order shall constitute, findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof. Notwithstanding Bankruptcy Rule 6004(h), 6006(d), 7062 or 9014 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

22. ***No Waiver for Failure to Seek Relief.*** The failure or delay of the Prepetition Term Loan Secured Parties to seek relief or otherwise exercise any of its rights and remedies under this Final Order, the Prepetition Term Loan Documents or applicable law, as the case may be, shall not constitute a waiver of any rights hereunder, thereunder, or otherwise, by the Prepetition Term Loan Secured Parties.

23. ***Proofs of Claim.*** Notwithstanding anything to the contrary contained in any prior or subsequent order of the Court, including, without limitation, any order establishing a deadline for the filing of proofs of claim or requests for payment of administrative expenses under section 503(b) of the Bankruptcy Code, the Prepetition Term Loan Secured Parties shall not be required to file any proof of claim or request for payment of administrative expenses with respect to any of the Prepetition Term Loan Secured Indebtedness, the Prepetition Term Loan Liens, the Adequate Protection Liens, or the Adequate Protection Superpriority Claims; and the failure to file any such proof of claim or request for payment of administrative expenses shall not affect the validity, priority, or enforceability of any of the Prepetition Term Loan Documents, the Prepetition Term Loan Secured Indebtedness, the Prepetition Term Loan Liens, the Adequate Protection Liens, or the Adequate Protection Superpriority Claims or prejudice or otherwise adversely affect the Prepetition Term Loan Secured Parties' rights, remedies, powers, or privileges under any of the Prepetition Term Loan Documents, the Interim Order, this Final Order or applicable law.  The Stipulations shall be deemed to constitute a timely filed proof of claim on behalf of each of the Prepetition Term Loan Secured Parties with respect to the Prepetition Term Loan Secured Indebtedness and all related obligations in these Chapter 11 Cases or any Successor Case (as defined herein).  Notwithstanding the foregoing, the Prepetition Term Loan Administrative Agent, on behalf of itself and the Prepetition Term Loan Secured Parties, is authorized and entitled, but

not required, to file (and amend and/or supplement, as each sees fit) a proof of claim and/or master proof of claim for any claim described herein or otherwise related to any Prepetition Term Loan Secured Indebtedness.  The provisions set forth in this paragraph are intended solely for the purpose of administrative convenience and shall not affect the substantive rights of any party-in-interest or their respective successors-in-interest.

24.     *Intercreditor Agreement*. Pursuant to section 510 of the Bankruptcy Code, notwithstanding anything herein to the contrary, that certain Intercreditor Agreement, dated as of June 29, 2022 (as amended, restated, supplemented or otherwise modified from time to time, the "Intercreditor Agreement"), pursuant to which the parties thereto agreed to be bound thereby, and any other applicable intercreditor or subordination provisions contained in any of the Prepetition Term Loan Documents, any of the Subordinated Lien Security Documents (as defined in the Intercreditor Agreement) or otherwise shall (a) remain in full force and effect, (b) continue to govern the relative obligations, rights and remedies as between and among the parties thereto and (c) not be deemed to be amended, altered or modified by the terms of the Interim Order or this Final Order unless expressly set forth herein or therein.

25.     *Section 552(b) of the Bankruptcy Code*. (i) The Prepetition Term Loan Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and (ii) the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to any of the Prepetition Term Loan Secured Parties with respect to proceeds, products, offspring or profits of any of the Prepetition Collateral or the Collateral.

26.     *No Marshaling.* Except as provided in the proviso in paragraph 4(a) hereof, the Prepetition Term Loan Secured Parties shall not be subject to the equitable doctrine of

"marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral or the Collateral.

27. ***Expense Invoices; Disputes; Indemnification.***

(a) The Debtors' obligation to pay the professional fees and expenses of the Prepetition Term Loan Administrative Agent as provided in paragraph 4(c) of the Interim Order or this Final Order shall not require further Court approval, except as otherwise provided for below. The Committee reserves all rights with respect to any reallocation of such payments pursuant to section 506(b) of the Bankruptcy Code.

(b) The professional fees and expenses covered by paragraph 4 of this Final Order shall be payable without the necessity of filing formal fee applications or complying with the U.S. Trustee Guidelines; *provided* that copies of invoices for such professional fees, expenses, and disbursements (the "Invoiced Fees") shall be served by email on counsel to the Debtors, the U.S. Trustee, and counsel to the Committee, who shall have ten (10) calendar days (the "Review Period") to review and assert any objections thereto. Invoiced Fees shall be in the form of an invoice summary for professional fees and categorized expenses incurred during the pendency of these Chapter 11 Cases, and such invoice summary shall not be required to contain time entries, but shall include a general, brief description of the nature of the matters for which services were performed and the number of hours performed by each professional and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any work product doctrine, privilege or protection, common interest doctrine privilege or protection, any other evidentiary privilege or protection recognized under applicable law, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege, work product doctrine, privilege or protection, common

51

interest doctrine privilege or protection, or any other evidentiary privilege or protection recognized under applicable law.  The Debtors, the Committee, or the U.S. Trustee may dispute the payment of any portion of the Invoiced Fees (the "Disputed Invoiced Fees") if, within the Review Period, a Debtor, the Committee or the U.S. Trustee notifies the submitting party in writing setting forth the specific objections to the Disputed Invoiced Fees.  If the parties are unable to reach resolution with respect to the Disputed Invoiced Fees, then the Court may resolve any such issues upon at least ten (10) business days' prior notice and a hearing.  For avoidance of doubt, following the Review Period, the Debtors shall promptly pay in full all Invoiced Fees other than the Disputed Invoiced Fees.

(c)        Subject to any restrictions imposed by applicable law and the last sentence of this paragraph 27(c), nothing in this Final Order shall abrogate the indemnification provisions set forth in any of the Prepetition Term Loan Documents.  In addition, the Debtors will indemnify each of the Prepetition Term Loan Secured Parties and their affiliates, successors, and assigns and the officers, directors, employees, agents, attorneys, advisors, controlling persons, and members of each of the foregoing (each an "Indemnified Person") and hold them harmless from and against all costs, expenses (including but not limited to reasonable and documented legal fees and expenses), and liabilities arising out of or relating to the transactions, procedures, and/or relief contemplated by this Final Order.  No Indemnified Person shall have any liability (whether direct or indirect, in contract, tort, or otherwise) to the Debtors or any shareholders or creditors of the Debtors for or in connection with the transactions, procedures, and/or relief contemplated by this Final Order, except to the extent such liability is found in a final non-appealable judgment by a court of competent jurisdiction to have resulted solely from such Indemnified Person's fraud, bad faith or willful misconduct, and in no event shall any Indemnified Person be liable on any theory

52

of liability for any special, indirect, consequential, or punitive damages.  Notwithstanding anything to the contrary herein, no Indemnified Person shall be indemnified or held harmless from and against any and all amounts successfully and validly avoided and clawed back arising out of or relating to any Challenge brought against them pursuant to the provisions of paragraph 19 herein or any avoidance or other claim.

28.     ***Sale Proceeds.*** Subject to paragraph 19 hereof and entry of the Final Order, the Debtors are authorized and directed, upon the closing of a sale of any of the Prepetition Collateral, to immediately pay all proceeds of any such sale (net of transaction costs and expenses acceptable to the Prepetition Term Loan Secured Parties) to the Prepetition Term Loan Administrative Agent to satisfy the Prepetition Term Loan Secured Indebtedness until paid in full, and any order approving the sale of such Prepetition Collateral shall provide that the sale is conditioned upon the payment of such Prepetition Term Loan Secured Indebtedness (except in each case to the extent otherwise agreed in writing by the Prepetition Term Loan Administrative Agent and the Prepetition Term Loan Lenders); *provided* that a portion of such sale proceeds shall be retained by the Debtors and used to fund the cost of the Chapter 11 Cases pursuant to a budget to be negotiated in good faith by the Debtors, the Committee, and the Prepetition Term Loan Administrative Agent that will be acceptable to the Prepetition Term Loan Secured Parties or otherwise approved by the Court; *provided further* that upon the closing of a sale of any of the Prepetition Collateral and prior to the payment of any sale proceeds pursuant to this paragraph 28, the Debtors shall be entitled to retain an amount of sale proceeds such that the Debtors' cash balance pursuant to the Approved Budget (as updated by the Debtors in good faith to reflect the consummation of such sale transaction) at the end of the budget period shall be $4.8 million (and, for the avoidance of doubt, no greater).

53

29.     ***Credit Bidding and Sale Provisions.*** Subject to paragraph 19 hereof and entry of the Final Order, and the provisions of section 363(k) of the Bankruptcy Code, the Prepetition Term Loan Administrative Agent shall have the right to credit bid (either directly or through one or more acquisition vehicles) up to the full amount of the Prepetition Term Loan Secured Indebtedness, in any sale of all or any portion of the Prepetition Collateral or the Collateral, including, without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any chapter 11 plan.  The Debtors shall not object to, or solicit, support, or encourage any objection to, any rights set forth in this paragraph 29.

30.     ***Limitation on Use of RIPA Collateral.*** Notwithstanding anything to the contrary set forth in this Final Order, none of the RIPA Collateral may be used, transferred or depleted by the Debtors absent further order of the Court or the written consent of the RIPA Agent.

31.     ***No Control***. None of the Prepetition Term Loan Secured Parties (i) control the Debtors or their properties or operations, have authority to determine the manner in which any Debtors' operations are conducted, or are control persons or insiders of the Debtors by virtue of any of the actions taken with respect to, in connection with, related to or arising from the Interim Order, this Final Order or the Prepetition Term Loan Documents, (ii) owe any fiduciary duty to the Debtors, their respective creditors, or estates or (iii) are deemed to be acting as a "Responsible Person" or "Owner" or "Operator" with respect to the operation or management of the Debtors (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act of 1980 or any similar federal or state statute).

32.     ***Headings***. The headings in this Final Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Final Order.

33. ***Interim Order.*** Except as specifically amended or modified hereby, all of the provisions of the Interim Order and any actions taken by the Debtors or the Prepetition Term Loan Secured Parties in accordance therewith or in reliance thereon are hereby ratified by this Final Order.

34. ***Retention of Jurisdiction***. The Court has and will retain jurisdiction to enforce this Final Order and with respect to all matters arising from or related to the implementation of this Final Order.

**Signed: _____ , 2023.**

_____
**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

4864-9759-2168 v.6

**Exhibit 1**

**Milestones**

(a)     The Court shall have entered this Final Order no later than thirty-five (35) calendar days following the Petition Date, which order shall provide that the Debtors are authorized and directed to use the proceeds of any sales pursuant to such order to pay the Prepetition Term Loan Secured Indebtedness until paid in full (except in each case to the extent otherwise agreed in writing by the Prepetition Term Loan Administrative Agent and the Prepetition Term Loan Lenders), subject to negotiation between the Debtors and the Prepetition Term Loan Secured Parties in good faith with respect to an amount of such proceeds to be retained by the Debtors to be used to fund the cost of these Chapter 11 Cases pursuant to a budget acceptable to the Prepetition Term Loan Secured Parties or otherwise approved by the Court, in each case which orders shall be in form and substance acceptable to the Prepetition Term Loan Lenders.

(b)     No later than forty-five (45) calendar days after the Petition Date, the Court shall have entered an order(s) approving the sale(s) under the Sale Motion (the "Sale Order(s)"), which order(s) shall be in form and substance acceptable to the Prepetition Term Loan Lenders. The Sale Order(s) shall provide that the Debtors are authorized to use the proceeds of any sales to pay the Prepetition Term Loan Secured Indebtedness until paid in full (except in each case to the extent otherwise agreed in writing by the Prepetition Term Loan Administrative Agent and the Prepetition Term Loan Lenders), subject to negotiation between the Debtors and the Prepetition Term Loan Secured Parties in good faith with respect to an amount of such proceeds to be retained by the Debtors to be used to fund the cost of these Chapter 11 Cases pursuant to a budget acceptable to the Prepetition Term Loan Secured Parties.

(c)     If there is no successful bid for the APD inventory pursuant to the Bidding Procedures, no later than thirty (30) calendar days following the Bid Deadline having passed with

no bids received, the Debtors shall have substantially completed the liquidation of the APD inventory either in the ordinary course or pursuant to an appropriate order of the Court.

(d)      If applicable, no later than fifty (50) calendar days after the Petition Date, the Debtors shall have consummated the sale(s) approved pursuant to the Sales Motion.

4864-9759-2168 v.3
DOCS_SF:109025.2 14039/002