IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>ATHENEX, INC., et al.,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-90295 (DRJ)<br><br>(Jointly Administered) |

**STIPULATION AND AGREED ORDER AMONG THE DEBTORS, MCKESSON CORPORATION, AND ISTITUTO BIOCHIMICO ITALIANO GIOVANNI LORENZINI S.P.A.**

Athenex Pharmaceutical Division, LLC, Inc. ("APD"), one of the debtors and debtors in possession in the above-captioned jointly administered cases (collectively, the "Debtors" or the "Company"), McKesson Corporation, on behalf of itself and certain corporate affiliates ("McKesson"), and Istituto Biochimico Italiano Giovanni Lorenzini S.p.A. ("IBI") enter into this Stipulation and agreed order (the "Stipulation"), and by and through the undersigned counsel, hereby stipulate and agree as follows:[2]

## RECITALS

1. APD, along with its affiliated Debtors, commenced these bankruptcy cases on May 14, 2023. The Company is a clinical-stage biopharmaceutical company focused on the discovery, development and commercialization of next-generation products for the treatment of cancer. Its operations presently include two business segments: (1) the Oncology Innovation Platform, dedicated to the research and development of the Company's proprietary drugs, including small

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/athenex. The location of Athenex, Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 1001 Main Street, Suite 600, Buffalo, NY 14203.

[2] The Debtors, McKesson, and IBI are collectively, the "Parties".

1

molecules and cell therapy, and (2) the Commercial Platform, focused on the sales and marketing of its specialty drugs and the market development of its proprietary drugs.

2. In connection with the Commercial Platform, Debtors entered into relationships with certain product manufacturers to obtain pharmaceutical products which the Debtors then sell, primarily to national pharmaceutical distributors. IBI is one such manufacturer, and McKesson is one such distributor/customer.

3. On May 22, 2023, the Debtors filed the *Debtors' Emergency Motion Seeking Entry of an Order (I) Authorizing the Debtors to Maintain and Administer Their Existing Customer Programs and Honor Certain Prepetition Obligations Related Thereto, and (II) Granting Related* [Docket No. 116].

4. On May 23, 2023, the Court entered the *Order (I) Authorizing the Debtors to Maintain and Administer Their Existing Customer Programs and Honor Certain Prepetition Obligations Related Thereto, and (II) Granting Related Relief* (the "Customer Programs Order") [Docket No. 133]. The Customer Programs Order authorizes the Debtors to continue its ordinary course of business practices to fulfill and settle customer purchase orders, regardless of whether the debt arose prepetition or postpetition.

5. McKesson has two pre-petition purchase orders (P.O. numbers 02100303 and 02100381) outstanding with APD that are to be fulfilled by IBI for a combined 240,000 units of Penicillin-G 20MU (the "Outstanding Pen-G Purchase Orders"). McKesson is the Debtors' customer for the Product. In turn, McKesson has a buyer for the Product (the United States Government). IBI is ready, willing and able to deliver 138,000 units of Penicillin-G 20MU (the "Product"), for which McKesson will pay the Debtors $7,590,000. APD anticipates that chargebacks under the agreement between McKesson and APD will significantly reduce the

amount of net proceeds pursuant to the normal, ordinary course netting process between the parties pursuant to the applicable McKesson contracts.

6. Subject to Court approval, the Parties desire to enter into this Stipulation to (i) facilitate the post-petition delivery of the Product to McKesson or such other party as APD may direct; (ii) set forth their payment and delivery agreement for the Product among the Debtors, McKesson, and IBI; and (iii) memorialize certain agreements among McKesson and IBI.

**NOW, THEREFORE, IT IS STIPULATED AND AGREED TO BY THE PARTIES, AND UPON APPROVAL BY THE COURT OF THIS STIPULATION, IT IS SO ORDERED AS FOLLOWS:**

A. The above recitals are incorporated by reference herein with the same force and effect as if fully set forth hereinafter.

B. Within three business days of Court approval of this Stipulation, McKesson will remit payment to APD in the amount of Seven Million Five Hundred Ninety Thousand Dollars ($7,590,000) as payment for the Product to be shipped by IBI (the "APD Payment"). Within three business days of receipt of the APD Payment, APD shall wire transfer to IBI $1,979,351.25 from the APD Payment as payment for the Product to be shipped by IBI on account of the Outstanding Pen-G Orders (the "IBI Payment").

C. Promptly following receipt of the IBI Payment by IBI, IBI will deliver One Hundred and Thirty-Eight Thousand (138,000) units of the Product to McKesson. The Product must be delivered F.O.B. at the McKesson Redistribution Center located at: 8313 Polk Lane, Olive Branch, MS 38654. Delivery of the Product to McKesson must be made on or before July 20, 2023. Title and risk of loss to the Product shall pass to McKesson upon acceptance of such delivery by McKesson, subject to McKesson's right to return any non-conforming shipment, or portion

thereof. The cost of freight and any related insurance for the Product shipped by IBI is the sole responsibility of IBI.

D. IBI shall comply with all applicable laws relating to the manufacture, sale and delivery of the Products, including, without limitation, that during the life of the Product through its expiration dates, IBI shall comply with the written testing program designed to assess the stability characteristics of the Product and all other testing obligations, including those set forth in 21 C.F.R. §§ 211.160, 211.165, and 211.166.

E. The Court retains exclusive jurisdiction and power to interpret and enforce the terms of this Stipulation.

F. With respect to all Products manufactured by IBI and sold to McKesson, including but not limited to the Product to be sold and delivered under this Agreement, McKesson and IBI agree to the following indemnification provision:

>  (1) By IBI. IBI shall indemnify and hold harmless McKesson and its respective affiliates and each of their respective directors, officers, employees and agents from and against all claims that may arise directly or indirectly as a result of: (i) the negligence or willful or wrongful acts or omissions of IBI, (ii) the failure of IBI to comply with applicable US Federal and State laws and regulations with respect to the manufacturing of the Product, (iv) injury to a person resulting from the purchase, use, consumption or recall of the Product, whether or not involving a defect in a Product, its labeling or packaging, or (v) the infringement by the Product of the patent, copyright, trademark, trade secret or other intellectual property of any other person or entity, except to the extent such claim arises directly or indirectly as a result of any of the matters for which McKesson is providing indemnification.

(2)     <u>By McKesson</u>. McKesson shall indemnify, defend and hold harmless IBI and its affiliates and its and their directors, officers, employees, and agents from and against all claims that may arise directly or indirectly as a result of (i) the negligence or willful or wrongful acts or omissions of McKesson, (ii) the failure of McKesson to comply with applicable Federal and State laws and regulations relating to the storage or distribution of the Product, except to the extent such claim arises directly or indirectly as a result of any of the matters for which indemnification is being provided.

(3)     <u>Procedures</u>.  The party claiming indemnification under this section (each an "<u>Indemnified Party</u>") shall promptly notify the party from which indemnification is being sought (the "<u>Indemnifying Party</u>") in writing, of any claim for which indemnity may be sought and will thereafter keep such Indemnifying Party reasonably informed with respect thereto, provided that failure to give Indemnifying Party prompt notice as provided herein shall not relieve the Indemnifying Party of its obligations hereunder except to the extent, if any, it shall have been prejudiced thereby.  The Indemnified Party shall fully cooperate with the Indemnifying Party and shall permit the Indemnifying Party to conduct and control the defense and disposition of such Claims, provided however, that the Indemnifying Party shall not admit fault on behalf of the Indemnified Party without Indemnified Party's prior written consent.  The Indemnifying Party shall promptly assume, at its cost and expense, the sole defense of such claim through counsel selected by the Indemnifying Party and reasonably acceptable to the Indemnified Party, provided that in the event that the Indemnifying Party does not assume the

5

defense on a timely basis or reasonably maintain the defense, then, without prejudice to any other rights and remedies available to the Indemnified Party under this Agreement, the Indemnified Party may take over such defense with counsel of its choosing at the Indemnifying Party's cost and expense. If the Indemnifying Party assumes the defense of any claim, the Indemnified Party shall provide reasonable assistance to the Indemnifying Party in its efforts to investigate and defend the claim, including providing reasonable access to such documentary evidence and witnesses as are available to the Indemnified Party. In the event that a conflict of interest arises, which, under applicable principles of legal ethics prevents a single legal counsel from representing both the Indemnifying Party and the Indemnified Party; the Indemnified Party may take over its defense with counsel of its choosing at the Indemnifying Party's cost and expense.

(4) Neither Party shall, without the written consent of the other Party: (i) settle or compromise any claim without including an unconditional release with respect to all liability under such claim, or consent to the entry of any judgment which does not include a dismissal with prejudice of the Indemnified Party and Indemnifying Party; (ii) settle or compromise any claim in any manner that may adversely affect the other Party other than as a result of money damages or other monetary payments; or (iii) settle or compromise any claim in any manner that includes an admission of fault or liability on the part of the other Party.

(5) <u>Limitation of Liability</u>. EXCEPT WITH RESPECT TO INDEMNIFICATION OBLIGATIONS UNDER THIS STIPULATION, UNDER NO CIRCUMSTANCES SHALL EITHER PARTY HERETO BE LIABLE TO

THE OTHER FOR ANY: (i) LOST PROFITS; (ii) LOSS OF PROSPECTIVE COMPENSATION OR UNJUST ENRICHMENT; (iii) GOODWILL OR LOSS THEREOF; OR (iv) CONSEQUENTIAL, SPECIAL, PUNITIVE OR EXEMPLARY DAMAGES OF ANY KIND OR CHARACTER, WHETHER ARISING IN TORT, CONTRACT, INDEMNITY, STRICT LIABILITY OR ANY OTHER THEORY OF RECOVERY.

**IT IS SO ORDERED.**

Dated: _____, 2023

DAVID R. JONES
UNITED STATES BANKRUPTCY JUDGE

[*Remainder of Page Intentionally Left Blank*]

**AGREED AS TO FORM AND CONTENT:**

Dated: June 16, 2023

| | |
|---|---|
| **PACHULSKI STANG ZIEHL & JONES LLP** | **PORZIO, BROMBERG & NEWMAN, P.C.** |
| */s/ Michael D. Warner* | */s/ Warren J. Martin Jr.* |
| Michael D. Warner (SBT 00792304) | Warren J. Martin Jr. (admitted *pro hac vice*) |
| Maxim B. Litvak (SBT 24002482) | Robert M. Schechter (admitted *pro hac vice*) |
| Benjamin L. Wallen (SBT 24102623) | Rachel A. Parisi (admitted *pro hac vice*) |
| 440 Louisiana Street, Suite 900 | 100 Southgate Parkway |
| Houston, TX 77002 | P.O. Box 1997 |
| Telephone: (713) 691-9385 | Morristown, NJ 07962-1997 |
| Facsimile: (713) 691-9407 | Telephone: (973) 538-4006 |
| mwarner@pszjlaw.com | Facsimile: (973) 538-5146 |
| mlitvak@pszjlaw.com | WJMartin@pbnlaw.com |
| bwallen@pszjlaw.com | RMSchechter@pbnlaw.com |
| | RAParisi@pbnlaw.com |
| -and- | -and- |
| | **MCKOOL SMITH, PC** |
| Richard M. Pachulski (admitted *pro hac vice*) | */s/ John J. Sparacino* |
| Debra I. Grassgreen (admitted *pro hac vice*) | John J. Sparacino (SBN 18873700) |
| Shirley S. Cho (admitted *pro hac vice*) | S. Margie Venus (SBN 20545900) |
| 10100 Santa Monica Blvd., 13th Floor Los Angeles, CA 90067 | 600 Travis Street, Suite 7000 |
| Telephone: (310) 277-6910 | Houston, Texas 77002 |
| Facsimile: (310) 201-0760 | Telephone: (713) 485-7300 |
| rpachulski@pszjlaw.com | Facsimile (713) 485-7344 |
| dgrassgreen@pszjlaw.com | jsparacino@mckoolsmith.com |
| scho@pszjlaw.com | mvenus@mckoolsmith.com |
| *Proposed Counsel to the Debtors and Debtors in Possession* | *Proposed Counsel to The Official Committee of Unsecured Creditors* |
| **BUCHALTER** | **SHANNON & LEE LLP** |
| */s/ Jeffrey K. Garfinkle* | */s/ Kyung S. Lee* |
| Jeffrey K. Garfinkle (admitted *pro hac vice*) | Kyung S. Lee (TBA No. 12128400) |
| 18400 Von Karman Avenue, Suite 800 | R. J. Shannon (TBA No. 24108062) |
| Irvine, CA 92612 | Pennzoil Place |
| Telephone: (949) 760-1121 | 700 Milam Street |
| Facsimile: (949) 720-0182 | Houston, TX 77002 |
| Email: jgarfinkle@buchalter.com | Telephone: (713) 714-5770 |
| | Email: klee@shannonleellp.com |
| | rshannon@shannonleellp.com |
| *Counsel for McKesson Corporation* | *Counsel to Istituto Biochimico Italiano Giovanni Lorenzini S.p.A.* |

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of June, 2023, a true and correct copy of the above and foregoing has been served on all parties that are registered to receive electronic transmission through this Court's CM/ECF filing system in these cases.

>                          */s/ Michael D. Warner*
>                             Michael D. Warner