IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>ATHENEX, INC., et al.,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 23-90295 (DRJ)<br><br>(Jointly Administered) |

**ORDER (I) APPROVING DISPOSITION OF CERTAIN ESTATE INTERCOMPANY CLAIMS AND EQUITY INTERESTS IN CONNECTION WITH WIND DOWN OF FOREIGN OPERATIONS; (II) AUTHORIZING THE DEBTORS TO TAKE CERTAIN ACTIONS OUTSIDE THE ORDINARY COURSE OF BUSINESS TO EFFECT FOREIGN COMPANY WIND DOWNS; AND (III) GRANTING RELATED RELIEF**

(Related Docket No. 400)

Upon the emergency motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), authorizing the Debtors to implement the Foreign Affiliates Wind Down Plan, including without limitation taking certain actions outside the ordinary course of business in connection therewith, as more fully set forth in the Motion, and the supporting declaration of Nicholas K. Campbell in support of the Motion [Docket No. 401]; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/athenex. The location of Athenex, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 1001 Main Street, Suite 600, Buffalo, NY 14203.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein and notice of the Motion satisfying the requirements of Bankruptcy Rule 6004(a); and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Foreign Affiliates Wind Down Plan is authorized and approved only to the extent set forth herein.

2. The Small Subsidiaries Transfer is approved, including the release of intercompany claims owed between the Debtors and the Small Subsidiaries. The Small Subsidiaries Transfer agreements substantially in the forms attached hereto as **Exhibit 1** are approved.

3. The Debtors are authorized, pursuant to sections 363(b) and 363(c) of the Bankruptcy Code, to take all actions necessary to implement the specific relief set forth in this Order without the need for further Court approval.

4. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

5. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Dated: _____, 2023

DAVID R. JONES
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT 1

**(Small Subsidiaries Transfer Agreements)**

# AGREEMENT FOR
# SALE AND ASSIGNMENT OF EQUITY SECURITIES

**THIS AGREEMENT FOR SALE AND ASSIGNMENT OF EQUITY SECURITIES** (this "Agreement") is made and entered into as of July [__]. 2023 (the "Effective Date") by and between **HEALTH HOPE PHARMA LIMITED**, a limited liability company formed under the laws of the Hong Kong Special Administrative Region of the People's Republic of China ("Buyer"), and **ATHENEX, INC.**, a Delaware corporation and Debtor and Debtor-In-Possession ("Seller") under Case No. 23-90295 (DRJ) (Jointly Administered) (the "Bankruptcy Case") pending in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court"). Seller and Buyer are referred to herein as the "Parties".

## RECITALS

A. Concurrently with the execution and delivery of this Agreement, Seller is selling to Buyer and Buyer is acquiring from Seller, all of Seller's right, title and interest in and to all of the issued and outstanding equity securities held by Seller (as described on Exhibit A, the "Company Interests") in the entities identified on Exhibit A (collectively, the "Companies").

B. Buyer and Seller wish to provide for the transfer of such right, title and interest in and to the Company Interests, on the terms set forth in this Agreement.

C. Seller has received approval to transfer the Company Interests to the Buyer pursuant to the *Emergency Motion for Entry of an Order (i) Approving Disposition of Certain Estate Intercompany Claims and Equity Interests in Connection with Wind Down of Foreign Operations; (ii) Authorizing the Debtors to take Certain Actions Outside the Ordinary Course of Business to Effect Foreign Company Wind Downs; and (iii) Grant Related Relief*, which was approved by the Bankruptcy Court by entry of an order dated July ___, 2023.

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. Assignment of Company Interests. Subject to and upon the terms, conditions, disclaimers and acknowledgments hereinafter set forth (including, without limitation, those provisions set forth in Section 4), Seller hereby sells, assigns, transfers, conveys and delivers to Buyer the Company Interests.

2. Purchase Price. The aggregate cash purchase price for the Company Interests is $12,500 (the "Purchase Price"), which Buyer shall pay to Seller, by wire transfer of immediately available funds to an account designated by Seller, concurrently with the mutual execution and delivery of this Agreement and satisfaction of the condition set forth in Section 5.

3. Sales, Use and Other Taxes. Buyer shall be responsible for and pay all applicable sales, transfer, stamp, documentary stamp, use or similar taxes due as a result of its purchase of the Company Interests.

4. "AS IS" Transaction. Buyer hereby acknowledges and agrees that none of Seller, the Companies or any other person or entity has made or makes any express or implied representation or warranty, either written or oral, on behalf of Seller or the Companies, including any representation or warranty as to the accuracy or completeness of any information regarding the Companies furnished or made available to Buyer and its representatives, the financial condition, results of operations, assets or liabilities of the Companies, or the future revenue, profitability or success of the Companies. Buyer has conducted an independent inspection and investigation of the Companies and the Company Interests and all such other matters relating to or affecting the Companies or the Company Interests as Buyer deemed necessary or appropriate and Buyer is acquiring the Company Interests based solely upon such independent inspections and investigations. Accordingly, Buyer hereby accepts the Company Interests **"AS IS, "WHERE IS,"** and **"WITH ALL FAULTS",** free and clear of all loans, accounts receivable, accounts payable, and other amounts due (a) from the Companies and any of their respective affiliates to Debtor or any of its affiliates, or (b) to the Companies and any of their respective affiliates from Debtor or any of its affiliates.

5. Miscellaneous.

   5.1   Further Assurances. During the period beginning on the Effective Date and ending 30 days after the Effective Date, each of the Parties shall execute and deliver such additional documents, instruments, and assignments as may be necessary in the jurisdictions of the Companies to give effect to the assignment of the Company Interests; provided that Buyer shall be responsible, at Buyer's cost and expense, for preparing and filing all documents that may be required to be filed with any governmental agency with respect to the assignment of the Company Interests.

   5.2   Entire Agreement. This Agreement contains the entire agreement between Buyer and Seller relating to the sale of the Property. Any oral representations or modifications concerning this Agreement or any such other document shall be of no force and effect excepting a subsequent modification in writing, signed by the Party to be charged.

   5.3   Modification. This Agreement may be modified, amended or supplemented only by a written instrument duly executed by all the Parties.

   5.4   Severability. Should any term, provision or paragraph of this Agreement be determined to be illegal or void or of no force and effect, the balance of the Agreement shall survive.

   5.5   Captions. All captions and headings contained in this Agreement are for convenience of reference only and shall not be construed to limit or extend the terms or conditions of this Agreement.

   5.6   Waiver. No waiver of any of the provisions of this Agreement shall be deemed, or shall constitute, a waiver of other provisions, whether or not similar, nor shall any waiver constitute a continuing waiver. No waiver shall be binding unless executed in writing by the Party making the waiver.

   5.7   Binding Effect. This Agreement shall bind and inure to the benefit of the respective heirs, personal representatives, successors, and assigns of the Parties.

    5.8 <u>Applicable Law</u>.  This Agreement shall be governed by and construed in accordance with the internal laws of the State of Delaware, without regard to its choice of law principles.

    5.9 <u>Construction</u>.  In the interpretation and construction of this Agreement, the Parties acknowledge that the terms hereof reflect extensive negotiations between the Parties and that this Agreement shall not be deemed, for the purpose of construction and interpretation, drafted by either Party hereto.

    5.10 <u>Counterparts</u>.  This Agreement may be signed in counterparts.  The Parties further agree that this Agreement may be executed by the exchange of signature pages delivered by electronic mail provided that by doing so the Parties agree to provide original signatures as soon thereafter as reasonable in the event the other Party requests or requires in writing that originals be delivered.

    5.11 <u>Time is of the Essence</u>.  Time is of the essence in this Agreement, and all of the terms, covenants and conditions hereof.

    5.12 <u>Bankruptcy Court Jurisdiction</u>.  BUYER AND SELLER AGREE THAT THE BANKRUPTCY COURT SHALL HAVE EXCLUSIVE JURISDICTION OVER ALL DISPUTES AND OTHER MATTERS RELATING TO THIS AGREEMENT. BUYER HEREBY EXPRESSLY CONSENTS TO AND AGREES NOT TO CONTEST SUCH EXCLUSIVE JURISDICTION.

**[BALANCE OF PAGE INTENTIONALLY LEFT BLANK]**

**IN WITNESS WHEREOF**, the Parties have executed this Agreement for Assignment of Equity Interests as of the day and year first above written.

**BUYER:**

**HEALTH HOPE PHARMA LIMITED**

By: _____
  Name: Dennis Lam
  Its:     Director

**SELLER:**

**ATHENEX, INC.**

By: _____
  Name: Nicholas K. Campbell
  Its:     Chief Restructuring Officer

[signature page to Agreement for Sale and Assignment of Equity Securities]

**Exhibit A**

**Company Interests**

| Company Name | Jurisdiction of Formation | Company Interest |
|---|---|---|
| | | |
| Athenex Euro Limited | United Kingdom | 100% |
| Nuwagen Limited | Hong Kong | 10.01% |

## AGREEMENT FOR

## SALE AND ASSIGNMENT OF EQUITY SECURITIES

**THIS AGREEMENT FOR SALE AND ASSIGNMENT OF EQUITY SECURITIES** (this "Agreement") is made and entered into as of July [__], 2023 (the "Effective Date") by and between **HEALTH HOPE PHARMA LIMITED**, a limited liability company formed under the laws of the Hong Kong Special Administrative Region of the People's Republic of China ("Buyer"), and **MERIDIAN EAST LIMITED.**, a limited liability company formed under the laws of the British Virgin Islands ("Seller"). Seller and Buyer are referred to herein as the "Parties".

## RECITALS

A. Seller owns all of the issued and outstanding equity securities of Comprehensive Drug Enterprises Limited (the "Company Interests"), a limited liability formed under the laws of the Hong Kong Special Administrative Region of the People's Republic of China ("Comprehensive").

B. Comprehensive owns directly (a) all of the issued and outstanding equity securities of Maxinase Life Sciences Limited, a limited liability formed under the laws of the Hong Kong Special Administrative Region of the People's Republic of China ("Maxinase"), and (b) ninety-five percent (95%) of the issued and outstanding equity securities of MJ Medical Gel Systems, a limited liability formed under the laws of the Hong Kong Special Administrative Region of the People's Republic of China ("MJMGS").

C. MJMGS owns (a) all of the issued and outstanding equity securities of Chongqing MJ Medical Sciences Co., Ltd., a limited liability company formed under the laws of the Peoples' Republic of China ("MJ Medical Sciences"), and (b) fifteen percent (15%) of the issued and outstanding equity securities of Chongqing MJ Medical Devices, Ltd., a limited liability company formed under the laws of the Peoples' Republic of China (together with Maxinase, MJMGS and MJ Medical Sciences, the "Subsidiaries").

D. Seller is a wholly-owned subsidiary of Athenex, Inc., a Delaware corporation and Debtor and Debtor-In-Possession ("Debtor") under Case No. 23-90295 (DRJ) (Jointly Administered) (the "Bankruptcy Case") pending in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court").

E. Debtor has received approval from the Bankruptcy Court to transfer the Company Interests to the Buyer pursuant to the *Emergency Motion for Entry of an Order (i) Approving Disposition of Certain Estate Intercompany Claims and Equity Interests in Connection with Wind Down of Foreign Operations; (ii) Authorizing the Debtors to take Certain Actions Outside the Ordinary Course of Business to Effect Foreign Company Wind Downs; and (iii) Grant Related Relief*, which was approved by the Bankruptcy Court by entry of an order dated July ___, 2023 free and clear of all loans, accounts receivable, accounts payable, and other amounts due (a) from Comprehensive and any of the Subsidiaries to Debtor or any of its affiliates including Seller (collectively, the "Affiliates"), or (b) to Comprehensive and any of the Subsidiaries from Debtor or any of its Affiliates (collectively, the "Intercompany Balances").

F. Buyer and Seller wish to provide for the transfer of all right, title and interest in and to the Company Interests, on the terms set forth in this Agreement.

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. <u>Assignment of Company Interests</u>.  Subject to and upon the terms, conditions, disclaimers and acknowledgments hereinafter set forth (including, without limitation, those provisions set forth in Section 4), Seller hereby sells, assigns, transfers, conveys and delivers to Buyer the Company Interests.

2. <u>Purchase Price</u>.  The aggregate cash purchase price for the Company Interests is $12,500 (the "<u>Purchase Price</u>"), which Buyer shall pay to Debtor (on behalf of Seller), by wire transfer of immediately available funds to an account designated by Debtor, concurrently with the mutual execution and delivery of this Agreement and satisfaction of the condition set forth in Section 4.

3. <u>Sales, Use and Other Taxes</u>.  Buyer shall be responsible for and pay all applicable sales, transfer, stamp, documentary stamp, use or similar taxes due as a result of its purchase of the Company Interests.

4. <u>"AS IS" Transaction</u>.  Buyer hereby acknowledges and agrees that none of Seller, Debtor, Comprehensive or any other person or entity has made or makes any express or implied representation or warranty, either written or oral, on behalf of Seller, Debtor or Comprehensive, including any representation or warranty as to the accuracy or completeness of any information regarding Comprehensive or the Subsidiaries furnished or made available to Buyer and its representatives, the financial condition, results of operations, assets or liabilities of Comprehensive or the Subsidiaries, or the future revenue, profitability or success of Comprehensive or the Subsidiaries. Buyer has conducted an independent inspection and investigation of Comprehensive, the Company Interests, the Subsidiaries, and all such other matters relating to or affecting Comprehensive, the Company Interests and the Subsidiaries as Buyer deemed necessary or appropriate, and Buyer is acquiring the Company Interests based solely upon such independent inspections and investigations.  Accordingly, Buyer hereby accepts the Company Interests **"AS IS, "WHERE IS,"** and **"WITH ALL FAULTS",** except for any Intercompany Balances.

5. <u>Miscellaneous</u>.

    5.1    <u>Further Assurances</u>.  During the period beginning on the Effective Date and ending 30 days after the Effective Date, each of the Parties shall execute and deliver such additional documents, instruments, and assignments as may be necessary in the jurisdictions of the Companies to give effect to the assignment of the Company Interests; provided that Buyer shall be responsible, at Buyer's cost and expense, for preparing and filing all documents that may be required to be filed with any governmental agency with respect to the assignment of the Company Interests.

    5.2    <u>Entire Agreement</u>.  This Agreement contains the entire agreement between Buyer and Seller relating to the sale of the Property.  Any oral representations or modifications concerning this Agreement or any such other document shall be of no force and effect excepting a subsequent modification in writing, signed by the Party to be charged.

    5.3    <u>Modification</u>.  This Agreement may be modified, amended or supplemented only by a written instrument duly executed by all the Parties.

5.4     Severability.  Should any term, provision or paragraph of this Agreement be determined to be illegal or void or of no force and effect, the balance of the Agreement shall survive.

5.5     Captions.  All captions and headings contained in this Agreement are for convenience of reference only and shall not be construed to limit or extend the terms or conditions of this Agreement.

5.6     Waiver.  No waiver of any of the provisions of this Agreement shall be deemed, or shall constitute, a waiver of other provisions, whether or not similar, nor shall any waiver constitute a continuing waiver.  No waiver shall be binding unless executed in writing by the Party making the waiver.

5.7     Binding Effect. This Agreement shall bind and inure to the benefit of the respective heirs, personal representatives, successors, and assigns of the Parties.

5.8     Applicable Law.  This Agreement shall be governed by and construed in accordance with the internal laws of the State of Delaware, without regard to its choice of law principles.

5.9     Construction.  In the interpretation and construction of this Agreement, the Parties acknowledge that the terms hereof reflect extensive negotiations between the Parties and that this Agreement shall not be deemed, for the purpose of construction and interpretation, drafted by either Party hereto.

5.10    Counterparts.  This Agreement may be signed in counterparts.  The Parties further agree that this Agreement may be executed by the exchange of signature pages delivered by electronic mail provided that by doing so the Parties agree to provide original signatures as soon thereafter as reasonable in the event the other Party requests or requires in writing that originals be delivered.

5.11    Time is of the Essence.  Time is of the essence in this Agreement, and all of the terms, covenants and conditions hereof.

5.12    Bankruptcy Court Jurisdiction.  BUYER AND SELLER AGREE THAT THE BANKRUPTCY COURT SHALL HAVE EXCLUSIVE JURISDICTION OVER ALL DISPUTES AND OTHER MATTERS RELATING TO THIS AGREEMENT.  BUYER HEREBY EXPRESSLY CONSENTS TO AND AGREES NOT TO CONTEST SUCH EXCLUSIVE JURISDICTION.

**[BALANCE OF PAGE INTENTIONALLY LEFT BLANK]**

**IN WITNESS WHEREOF**, the Parties have executed this Agreement for Assignment of Equity Interests as of the day and year first above written.

**BUYER:**

**HEALTH HOPE PHARMA LIMITED**

By: _____
 Name: Dennis Lam
 Its:     Director

**SELLER:**

**MERIDIAN EAST LIMITED**

By: _____
 Name: Nicholas K. Campbell
 Its:     Chief Restructuring Officer

[signature page to Agreement for Sale and Assignment of Equity Securities]