**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| ATHENEX, INC., et al., | Case No. 23-90295 (DRJ) |
| Debtors.[1] | (Jointly Administered) |
| | [Relates to Docket No. 468] |

**NOTICE OF FILING PLAN SUPPLEMENT FOR THE COMBINED DISCLOSURE
STATEMENT AND PLAN OF LIQUIDATION OF ATHENEX, INC. AND ITS
AFFILIATED DEBTORS UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

**PLEASE TAKE NOTICE** that on July 26, 2023, the Debtors filed the *Combined Disclosure Statement and Plan of Liquidation of Athenex, Inc. and Its Affiliated Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 468] (the "Combined Plan and Disclosure Statement" or, separately in relevant part, the "Disclosure Statement" and the "Plan") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Court").[2] On August 1, 2023, the Court entered an Order [Docket No. 498] (the "Conditional Approval and Procedures Order"), approving, on an interim basis, the disclosures (the "Disclosures") in the Disclosure Statement as containing adequate information within the meaning of section 1125 of Bankruptcy Code.

**PLEASE TAKE FURTHER NOTICE** that, as contemplated by the Plan and the Conditional Approval and Procedures Order, the Debtors hereby file the initial Plan Supplement, which includes a draft of the following documents (and which continue to be negotiated between interested parties and the Debtors), as may be amended, supplemented, or modified from time to time:

| Exhibit | Description |
|---|---|
| A | Retained Causes of Action (Estate-Retained Actions and Trust-Retained Actions) |
| B | Identity of Post-Effective Date Debtor Representative |
| C | Form of Liquidating Trust Agreement |

---

[1]   A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/athenex. The location of Athenex, Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 1001 Main Street, Suite 600, Buffalo, NY 14203.

[2]   Any capitalized terms not defined herein shall have the meanings ascribed to them in the Combined Plan and Disclosure Statement.

**PLEASE TAKE FURTHER NOTICE** that the documents, or portions thereof, contained in the Plan Supplement are not final and remain subject to ongoing review by the Debtors and interested parties, including as provided for in the Plan. The Debtors reserve the right, subject to the terms and conditions set forth in the Plan, to alter, amend, modify, or supplement the Plan Supplement, and any of the documents and designations contained therein, at any time before the Effective Date of the Plan, or any such other date as may be provided for by the Plan or by order of the Court. If any document in this Plan Supplement is altered, amended, modified, or supplemented in any material respect prior to the date of the Confirmation Hearing, the Debtors will file a blackline of such document with the Court.

**PLEASE TAKE FURTHER NOTICE** that the Plan, the Disclosure Statement, the Plan Supplement, as well as further information regarding these Chapter 11 Cases are available for inspection on the Court's website at https://www.txs.uscourts.gov/page/bankruptcy-court, or free of charge on the Debtors' restructuring website at https://dm.epiq11.com/athenex.

Dated: August 25, 2023

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Maxim B. Litvak*

Michael D. Warner (SBT 00792304)
Maxim B. Litvak (SBT 24002482)
Benjamin L. Wallen (SBT 24102623)
440 Louisiana Street, Suite 900
Houston, TX 77002
Telephone: (713) 691-9385
Facsimile:  (713) 691-9407
mwarner@pszjlaw.com
mlitvak@pszjlaw.com
bwallen@pszjlaw.com

-and-

Richard M. Pachulski (admitted *pro hac vice*)
Debra I. Grassgreen (admitted *pro hac vice*)
Shirley S. Cho (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
rpachulski@pszjlaw.com
dgrassgreen@pszjlaw.com
scho@pszjlaw.com

*Counsel to the Debtors and Debtors in Possession*

**<u>Certificate of Service</u>**

I certify that on August 25, 2023, I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Maxim B. Litvak*
Maxim B. Litvak

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |
|---|---|
| In re: | Chapter 11 |
| ATHENEX, INC., et al., | Case No. 23-90295 (DRJ) |
| Debtors. [1] | (Jointly Administered) |

**PLAN SUPPLEMENT FOR THE COMBINED DISCLOSURE STATEMENT
AND PLAN OF LIQUIDATION OF ATHENEX, INC. AND IT'S AFFILIATED
DEBTORS UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

**TABLE OF CONTENTS**

| Exhibit | Description |
|---------|-------------|
| A | Retained Causes of Action (Estate-Retained Actions and Trust-Retained Actions) |
| B | Identity of Post-Effective Date Debtor Representative |
| C | Form of Liquidating Trust Agreement |

The documents, or portions thereof, contained in this Plan Supplement are not final and remain subject to ongoing review by the Debtors and interested parties, including as provided for in the Plan. The Debtors reserve the right, subject to the terms and conditions set forth in the Plan, to alter, amend, modify, or supplement the Plan Supplement, and any of the documents and designations contained therein, at any time before the Effective Date of the Plan, or any such other date as may be provided for by the Plan or by order of the Court. The documents contained in the Plan Supplement or their amendments are subject to certain consent and approval rights to the extent provided in the Plan.

---

[1] A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/athenex. The location of Athenex, Inc.'s principal place of business and the Debtors' service address in these Chapter 11 Cases is 1001 Main Street, Suite 600, Buffalo, NY 14203.

## <u>Exhibit A</u>

**Retained Causes of Action**

(Estate-Retained Actions and Trust-Retained Actions)

The Debtors expressly reserve the right to alter, modify, amend, remove, augment or supplement this exhibit at any time prior to the Effective Date.[1]

Section XVI.F. of the Plan provides:

F.      Preservation of All Causes of Action Not Expressly Settled or Released.

Unless a Cause of Action against a holder of a Claim or other Entity is expressly waived, relinquished, released, compromised, or settled in the Plan (including, without limitation, pursuant to the Debtor/Estate Release) and/or any Final Order (including the Confirmation Order), the Debtors, the Post-Effective-Date Debtors, and the Liquidating Trustee expressly reserve such retained Cause of Action for later adjudication by the Post-Effective-Date Debtors and the Liquidating Trustee, as applicable (including, without limitation, Causes of Action not specifically identified or described in the Plan Supplement or elsewhere, or of which the Debtors may be presently unaware, or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time, or facts or circumstances that may change or be different from those the Debtors now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), laches, or other equitable doctrines shall apply to such Causes of Action upon or after the entry of the Confirmation Order or Effective Date based on the Disclosure Statement, Plan, or Confirmation Order, except where such Causes of Action have been explicitly and unambiguously released or otherwise resolved by a Final Order (including the Confirmation Order).  In addition, the Debtors, the Post-Effective-Date Debtors, and the Liquidating Trustee expressly reserve the right to pursue or adopt claims alleged in any lawsuit in which the Debtors are defendants or interested parties against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

Subject to the immediately preceding paragraph, any Entity to which the Debtors have incurred an obligation (whether on account of services, the purchase or sale of goods, or otherwise), or that has received services from the Debtors or a transfer of money or property of the Debtors (or on their behalf), or that has received services from the Debtors or a transfer or money or property of the Debtors (or on their behalf), or that has transacted business with the Debtors, or that has leased property from the Debtors, should assume and is hereby advised that any such obligation, transfer, or transaction may be reviewed by the Post-Effective-Date Debtors and/or the Liquidating Trustee, as applicable, subsequent to the Effective Date and may be the subject of an action after the Effective Date, regardless of whether (i) such Entity has filed a proof of claim against the Debtors in the Chapter 11 Cases; (ii) the Debtors or Liquidating Trustee have objected to any such Entity's proof of claim; (iii) any such Entity's Claim was included in the Schedules; (iv) the Debtors or Liquidating Trustee have objected to any such Entity's scheduled Claim; (v) any such Entity's scheduled Claim has been identified by the Debtors or Liquidating Trustee as

---

[1]   Capitalized Terms not defined herein shall have the meaning ascribed to them in the Plan.  In the event of any inconsistency between the Plan and this Plan Supplement exhibit, the Plan shall govern.

disputed, contingent, or unliquidated; or (vi) the Debtors have identified any potential claim or Cause of Action against such Entity herein or in the Disclosure Statement.

As a supplement to the foregoing, notwithstanding and without limiting the generality of the foregoing Plan provisions, the Debtors have identified below certain specific categories of Estate-Retained Actions and Trust-Retained Actions (collectively, the "Retained Causes of Action") that are being retained and may be pursued by the Post-Effective-Date Debtor(s) or the Liquidating Trust, including, without limitation, claims and causes of action related to (a) insurance policies, (b) contracts and leases, (c) litigation and possible litigation, (d) tax or fee refunds, credits and offsets, (e) Avoidance Actions, and (f) accounts payable and accounts receivable.  These categories, however, shall not be deemed to limit the Debtors, the Estates, the Post-Effective Date Debtor(s), or the Liquidating Trust in any way, and any specific Retained Causes of Action listed in one category shall be viewed as if listed in all.

For the avoidance of doubt, (i) any and all Causes of Action released pursuant to Section XVI.B (Releases) of the Plan are not Retained Causes of Action; and (ii) Retained Causes of Action also specifically include, without limitation, (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law, or in equity; (b) any Claim (whether under local, state, or federal U.S. law or non-U.S. civil law) based on or relating to, or in any manner arising from, in whole or in part, tort, breach of contract, breach of fiduciary duty, fraudulent transfer or fraudulent conveyance or voidable transaction law, violation of local, state, or federal law or breach of any duty imposed by law or in equity, including securities laws and negligence; (c) the right to object to or otherwise contest Claims and any Claim objections; (d) claims pursuant to section 362 or chapter 5 of the Bankruptcy Code; (e) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558(f) the Bankruptcy Code; and (f) all claims and rights to enforce the provisions of the Plan.

Failure to include any category of Retained Causes of Action herein shall not constitute a release or waiver of such Retained Causes of Action, and shall not indicate that such Retained Causes of Action against such Person or Entity have not been retained, waived, and/or will not be pursued by the Post-Effective-Date Debtor(s) and/or Liquidating Trust.  ***All estate claims and causes of action not sold or transferred in sales of the Debtors' assets ("Sales"), or not otherwise waived, relinquished, exculpated, resolved, released, compromised, or settled pursuant to the Plan or an order of the Bankruptcy Court are retained by the Post-Effective Date Debtor(s) and the Liquidating Trust***.

### Insurance Policies

Unless sold or transferred in the Sales, or otherwise waived, relinquished, exculpated, resolved, released, compromised, or settled pursuant to the Plan or an order of the Bankruptcy Court, the Debtors and their Estates expressly reserve and retain, for the benefit of the Estates, Post-Effective Date Debtors, and Liquidating Trust all claims and causes of action of the Debtors and their Estates under any of the Debtors' insurance policies.

### Contracts and Leases

Unless sold or transferred in the Sales, or otherwise waived, relinquished, exculpated, resolved, released, compromised, or settled pursuant to the Plan or an order of the Bankruptcy Court, the Debtors and their Estates expressly reserve and retain, for the benefit of the Estates, Post-Effective Date Debtors, and Liquidating Trust all claims and causes of action of the

Debtors and their Estates based in whole or in part upon any and all contracts and leases to which any Debtor is or was a party, or pursuant to which any Debtor or any of the Estates has any rights whatsoever, regardless of whether such contract or lease is specifically identified herein (including, without limitation, the contracts and leases identified in the Debtors' Schedules).  The Retained Causes of Action include, among others, those against suppliers of goods and services, vendors or any other parties for: (a) overpayments, back charges, duplicate payments, improper holdbacks, deductions owing or improper deductions taken, deposits, warranties, guarantees, indemnities, recoupment, or setoff; (b) breach of contract, repurchase matters, breach of implied covenant of good faith and fair dealing, unjust enrichment, wrongful or improper termination, suspension of services or supply of goods, or failure to meet other contractual obligations; (c) failure to fully perform under contracts with any one or more of the Debtors; (d) payments, deposits, holdbacks, reserves or other amounts owed by any creditor, utility, supplier, vendor, insurer, surety, factor, lender, service provider, lessor, or other party; (e) any liens, including mechanic's, artisan's, materialmen's, possessory, or statutory liens held by any one or more of the Debtors; (f) counterclaims and defenses related to any contractual obligations; (g) any actions for violations of the automatic stay or otherwise arising under section 362 of the Bankruptcy Code; (h) any turnover actions arising under section 542 or 543 of the Bankruptcy Code; (i) unfair competition, interference with contract or potential business advantage, infringement of intellectual property, or any tort claims; (j) any claims against the Debtors' insurance carriers, including for payments or other amounts owed by such insurance carrier pursuant to an Insurance Policy; and (k) any Avoidance Actions.

## **Litigation and Possible Litigation**

The Debtors are a party to, or believe they may become a party to, litigation, arbitration or any other type of adversarial proceeding or dispute resolution proceeding, whether formal or informal, judicial or non-judicial (including, without limitation, the actions identified in the Debtors' Schedules).  Unless sold or transferred in the Sales, or otherwise waived, relinquished, exculpated, resolved, released, compromised or settled pursuant to the Plan or an order of the Bankruptcy Court, the Debtors and the Estates expressly reserve and retain, for the benefit of the Estates, Post-Effective Date Debtors and Liquidating Trust, all claims and causes of action against or related to all Persons and Entities that are a party to or that may in the future become a party to litigation, arbitration or any other type of adversarial proceeding or dispute resolution proceeding, whether formal or informal, judicial or non-judicial, including, but not limited to: (1) all litigation, arbitration or other types of adversarial or dispute resolution proceeding disclosed on the Schedules; (2) any and all Causes of Action against Key Bank, JP Morgan Chase Bank, or any other third party relating to the Debtors' demand letter dated August 18, 2023 and any damages incurred by the Debtors relating to a fraudulently cashed check; and (3) all litigation, arbitration or other types of adversarial or dispute resolution proceeding arising in law, equity or pursuant to any other theory of law, and all other rights (including, without limitation, defenses, cross-claims and counter-claims), regardless of whether they (or the facts underlying them) were disclosed in the Schedules or otherwise during the Chapter 11 Cases, against or related to any party that (i) owed to the Debtors or their Estates (or any of them) a fiduciary, contractual, or statutory duty, whether imposed by law or in equity, (ii) committed a tort or other unlawful or actionable conduct against or related to the Debtors or their Estates (or any of them); (iii) all litigation, arbitration or other types of

3

adversarial or dispute resolution proceeding arising in law, equity or pursuant to any other theory of law, and all other rights (including, without limitation, defenses, cross-claims and counter-claims), regardless of whether they (or the facts underlying them) relate to enforcement of the Sale Orders or the Sales; and (iv) received a payment, obligation or other consideration from the Debtors or their Estates (or any of them) that may be avoided under chapter 5 of the Bankruptcy Code and other similar state law claims and causes of action, including any Avoidance Actions.

## Tax or Fee Refunds, Credits, Overpayments, Recoupments or Offsets

Except as otherwise provided for in the Plan, unless expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or by a Bankruptcy Court order, the Debtors expressly reserve all rights, claims, counterclaims, defenses, and other Causes of Action against or arising from or related to all Persons and Entities that (i) owe, or  may in the future owe, money or other Cash to the Debtors, their Estates, the Post-Effective Date Debtors, and/or the Liquidating Trust arising from or related to tax or fee refunds, credits, overpayments, recoupments or offsets (including, without limitation, those described in the Schedules), and (ii) assert, or may in the future assert, the Debtors, their Estates, the Post-Effective Date Debtors, and/or the Liquidating Trust owe money or other Cash to them arising from or related to tax or fee refunds, credits, overpayments, recoupments or offsets, regardless of whether such Person or Entity is expressly identified in the Plan, the Plan Supplement, or any amendments thereto.

## Causes of Action Related to Avoidance Actions

Except as otherwise provided for in the Plan, unless expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or by a Bankruptcy Court order, the Debtors expressly reserve all Avoidance Actions and all other Causes of Action in which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code, and/or a transfer is avoidable under sections 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code. **All Claimants, Persons, Entities, and other parties who received directly or indirectly, payments, offsets, recoupments and/or rebates, or transfers of property from the Debtors (or on a Debtor's behalf) may be subject to suit to recover any preferences, fraudulent transfers, or other avoidance transfers.  The Debtors' respective Schedules provide some information in that regard, *HOWEVER,* no Entity or Person or Claimant may rely on its omission from the Debtors' respective Schedules or herein as any indication that the Debtors, Post-Effective-Date Debtors, and Liquidating Trust will not pursue any and all available Causes of Action against it.**

## Accounts Receivable and Accounts Payable

Except as otherwise provided for in the Plan, unless expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or by a Bankruptcy Court order, the Debtors expressly reserve all Causes of Action against or related to all Entities and Persons who owe or that may in the future owe money or other Cash to the Debtors, the Post-Effective-Date Debtors, or the Liquidating Trust (including, without limitation, such matters identified in the Debtors' Schedules).  Furthermore, Retained Causes of Action shall include all Causes of Action against or related to all Entities or Persons who assert or may assert that the Debtors, the Post-

Effective-Date Debtors or the Liquidating Trust, owe money to them. For the avoidance of doubt, any and all Causes of Action arising from or related to the Chinese Manufacturing Business Receivable are Trust-Retained Actions and Retained Causes of Action, and shall remain preserved.

## Deposits, Adequate Assurance Postings, and Prepayments

Except as otherwise provided for in the Plan, unless expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or by a Bankruptcy Court order, the Debtors expressly reserve all Causes of Action based in and/or related to all security deposits, adequate assurance payments, retainers, any other type of deposits, prepayments, and other similar payments, and/or postings of money or other collateral, including, without limitation, all those described in the Schedules.

## Intellectual Property

Except as otherwise provided for in the Plan, unless expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or by a Bankruptcy Court order, the Debtors expressly reserve all Causes of Action based in and/or related to the Debtors' intellectual property and related rights, including, without limitation, such property and rights described in the Schedules and any related business tort claims.

## Setoffs, Recoupments and Defenses

Except as otherwise provided for in the Plan, unless expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or by a Bankruptcy Court order, the Debtors expressly reserve all Causes of Action relating to any Claims filed against or scheduled for the Debtors, including, without limitation, any and all of the Debtors' and Estates' setoffs, legal and equitable defenses, rights of recoupment or other offsets against any Claims.

**<u>Exhibit B</u>**

**Identity of Post-Effective Date Debtor Representative**


      The Post-Effective Date Debtor Representative is proposed to be Samir Saleem, principal at MERU Advisors.  Mr. Saleem has been serving as the Debtors' Assistant Chief Restructuring Officer during the Chapter 11 cases.

**<u>Exhibit C</u>**

**Liquidating Trust Agreement**

DOCS_LA:350419.3 14039/002

## LIQUIDATING TRUST AGREEMENT

This Trust Agreement (the "Trust Agreement"), dated as of August [  ], 2023, is by and among Athenex, Inc. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors")[1] in the Chapter 11 bankruptcy cases jointly administered under Case No. 23-90295 currently pending in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"), and [                ], not individually but solely in his capacity as trustee hereunder (the "Trustee"), and is being entered into in connection with the Debtors' Chapter 11 Plan of Liquidation (the "Plan")[2], which was confirmed by the Bankruptcy Court by Order dated September [  ], 2023 (the "Confirmation Order"), and provides for, *inter alia*:

(a)     The transfer of certain assets (the "Liquidating Trust Assets") of the Debtors and the Debtors' chapter 11 estates (the "Estates"), as required by the Plan on the Effective Date to be transferred to, and to vest automatically in, the Liquidating Trust for distribution to the holders of Allowed Unsecured Claims in Class 4 entitled to receive Liquidating Trust Interests (the "Beneficiaries") pursuant to and in accordance with this Trust Agreement, the Plan, the Confirmation Order, and the Bankruptcy Code;

(b)     For federal income tax purposes, (i) the Beneficiaries to be treated as the grantees of the Liquidating Trust and deemed to be the owners of the Liquidating Trust Assets; and (ii) the Debtors to treat the transfer of the Liquidating Trust Assets to the Liquidating Trust as a deemed transfer to such Beneficiaries followed by a deemed transfer by such Beneficiaries to the Liquidating Trust;

_____

[1] The Debtors are Athenex, Inc; Cell Medica, Inc; Athenex Pharma Solutions, LLC; Athenex Pharmaceutical Division, LLC; Athenex R&D LLC; and Kuur Therapeutics Inc.
[2] Any capitalized term contained herein without definition shall have the definition set forth in the Plan.

(c)      The management of the Liquidating Trust Assets by the Trustee in conjunction with the Trust Oversight Committee (hereinafter defined); and

(d)      The liquidation of the Liquidating Trust Assets and, after payment of expenses in accordance with the terms of this Trust Agreement, the distribution of the proceeds of such liquidation to the Beneficiaries as set forth in the Plan.

**NOW, THEREFORE,** pursuant to the Plan and in consideration of the promises, the mutual agreements of the parties contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the parties hereby agree as follows:

### ARTICLE I

### <u>DECLARATION OF TRUST</u>

**1.1      Purpose of the Liquidating Trust.** The Debtors and the Trustee, pursuant to the Plan and the Confirmation Order, and in accordance with the Bankruptcy Code, applicable tax statutes, rules and regulations, to the extent incorporated in this Trust Agreement, hereby constitute and create the Liquidating Trust for the purpose of liquidating the Liquidating Trust Assets with no objective to continue or engage in the conduct of a trade or business.  In particular, the Liquidating Trust, through the Trustee and with the assistance of the Trust Oversight Committee, shall (i) administer the Liquidating Trust Assets, including liquidating the Liquidating Trust Assets to Cash or other Liquidation Proceeds; (ii) resolve and/or reconcile all Disputed Claims of Beneficiaries; (iii) investigate, prosecute, abandon, settle, and/or defend any Trust-Retained Actions;[3] (iv) file tax returns and any other applicable tax-related document(s) for the Liquidating

---

[3] Per the terms of the Plan, Trust-Retained Actions means all Avoidance Actions, all commercial tort claims, and all Causes of Action against third parties, including Specified D&O Causes of Action except (a) Estate-Retained Actions and (b) those subject to the releases and exculpation provisions set forth in Section 16.B of the Plan.

2

Trust; (v) make any and all Distributions to Beneficiaries provided for under the Plan or pursuant to this Trust Agreement; (vi) pay all reasonable out-of-pocket expenses incurred in carrying out the terms of the Plan and this Agreement (the "Liquidating Trust Expenses") out of the Liquidating Trust Assets; and (vii) perform all actions required under the Plan and take such steps as are reasonably necessary to accomplish such purpose, all as more fully provided in, and subject to the terms and provisions of the Plan, the Confirmation Order and this Trust Agreement.   The Liquidating Trust shall not have authority to engage in a trade or business, and no portion of the Liquidating Trust Assets shall be used in the conduct of a trade or business, except to the extent that is reasonably necessary to reduce Liquidating Trust Assets to Liquidation Proceeds, consistent with the purpose of the Liquidating Trust and closing these cases.

     **1.2**     **Name of the Liquidating Trust.** The Liquidating Trust established hereby shall be known as the "Athenex Liquidating Trust".   In connection with the exercise of its powers, the Trustee may use such name or such variation thereof as it deems necessary and may transact the business and affairs of the Liquidating Trust in such name.

     **1.3**     **Transfer of Assets to Create Liquidating Trust.** The Debtors and the Estates hereby grant, release, assign, transfer, convey, and deliver the Liquidating Trust Assets to the Liquidating Trust as of the Effective Date, to have and to hold unto the Trustee and his successors in trust and to be applied as specified in the Plan and this Trust Agreement.   To the extent required, the Debtors shall cause the Liquidating Trust Assets (including any applicable Liquidation Proceeds) to be transferred to the Liquidating Trust.   Upon the transfer of the Liquidating Trust Assets to the Liquidating Trust, and except as otherwise provided herein or in the Plan, such assets shall become Liquidating Trust Assets and the Debtors shall retain no interest in such Liquidating Trust Assets.   On the Effective Date, the Debtors shall execute and deliver or cause to be executed

and delivered to or upon the order of the Trustee all such documents, in recordable form where necessary or appropriate, and the Debtors shall take or cause to be taken such further or other action, as the Trustee may deem appropriate, to vest or perfect in or confirm to the Trustee, or upon the order of the Trustee, title to and possession of all of the Liquidating Trust Assets.

1.4    **Acceptance by Trustee.** The Trustee hereby accepts (a) the appointment to serve as Trustee; (b) the transfer of the Liquidating Trust Assets on behalf of the Liquidating Trust; and (c) the trust imposed on him by this Trust Agreement.  The Trustee agrees to receive, hold, administer, and distribute the Liquidating Trust Assets, the Liquidation Proceeds, and the income derived therefrom, if any, pursuant to the terms of the Plan, the Confirmation Order, and this Trust Agreement.

## ARTICLE II

## TRUSTEE - GENERALLY

2.1    **Appointment.** The initial Trustee shall be [          ].

2.2    **Term of Service.** The Trustee shall serve until (a) the termination of the Liquidating Trust in accordance with Article X of this Trust Agreement; or (b) the Trustee's resignation, death or removal in accordance with this Trust Agreement.

2.3    **Services.** The Trustee shall be entitled to engage in such other activities as he deems appropriate which are not in conflict with the Plan, this Trust Agreement, or the interests of the Beneficiaries.  The Trustee shall devote such time as is reasonably necessary to fulfill all of his duties as Trustee.

2.4    **Resignation, Death or Removal of Trustee.** The Trustee may resign at any time upon thirty (30) days' written notice, in accordance with the notice provisions of the Plan, to the Bankruptcy Court, the Trust Oversight Committee, and the United States Trustee.   Such

4

resignation shall become effective prior to the expiration of such thirty (30) day notice period upon the appointment of a permanent or interim successor Trustee. The Trustee may be removed for cause by the Trust Oversight Committee upon three (3) business days' notice, without further order of the Bankruptcy Court; provided, however, in any such case, removal shall be in good faith and can be challenged by the Trustee by making an application to the Bankruptcy Court, provided that the Trustee shall remain vested with all rights and obligations under this Trust Agreement pending the Bankruptcy Court's adjudication of the Trustee's challenge to the Trust Oversight Committee's removal of the Trustee.  "Cause" for removal of the Trustee shall include negligence, fraud, wrongful action or inaction in the performance of his duties, or failure to consult with the Trust Oversight Committee, as required hereby.  Upon the resignation, death or removal of the Trustee, the Trust Oversight Committee shall appoint the successor Trustee.  In its discretion, the Trust Oversight Committee may appoint an interim successor Trustee pending its appointment of a permanent successor Trustee. Upon appointment pursuant to this Section 2.4 of the Trust Agreement, the successor Trustee, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of his, her, or its predecessor.

2.5    **Trust Continuance.** The death, resignation, or removal of the Trustee shall not terminate the Liquidating Trust or revoke any existing agency (other than any agency of such Trustee as a Liquidating Trustee) created pursuant to this Trust Agreement or invalidate any action previously taken by the Trustee.  By accepting the position as Trustee or Interim Trustee, such successor Trustee agrees that the provisions of this Trust Agreement shall be binding upon, and inure to the benefit of, such successor Trustee and all of its heirs and legal and personal representatives, successors, or assigns.

**2.6      Compensation and Expenses of Trustee.** The Trustee shall be entitled to compensation for his services and reimbursement of his expenses on a monthly basis in accordance with the hourly fees customarily charged by the Trustee for such professional services.

**2.7      Retention and Payment of Professionals.** The Trustee, in its sole discretion, may retain such professionals, consultants, or other persons as the Trustee deems reasonably necessary to carry out its duties under this Trust Agreement, including, without limitation, any advisory firm of which such Trustee is employed or affiliated with, or any counsel, advisory firm, or other professional previously retained in these Chapter 11 cases (the "Trustee's Professionals"); provided that any professional consultant, agent, or person whom the Trustee intends to retain shall be approved in advance of such retention by the Trust Oversight Committee.  The Trustee's Professionals shall submit monthly invoices to the Trustee, and the Trustee may pay, in consultation with the Trust Oversight Committee, the amounts requested from the Liquidation Proceeds and/or the Liquidating Trust Assets.  The Liquidating Trust Expenses of the Trustee and the Trustee's Professionals may only be paid from the Liquidation Proceeds and the Liquidating Trust Assets to the extent there are sufficient funds available from which to make such payments. The Trustee shall not be personally liable to any of the Trustee's Professionals for any unpaid invoices or claims for services rendered. If there is an objection received to the Trustee's or the Trustee's Professionals' invoice and despite best efforts, the parties are unable to agree on the resolution of such objection then the objecting party shall, within twenty (20) days of the receipt of such monthly fee statement, file an objection with the Bankruptcy Court on notice to such professional and the Trustee. The Bankruptcy Court shall retain jurisdiction to resolve any such dispute.

## ARTICLE III

## POWERS AND LIMITATIONS OF TRUSTEE

**3.1     General Powers of Trustee.** In connection with the administration of the Liquidating Trust, except as otherwise set forth herein, the Trustee is authorized to perform only those acts reasonably necessary and desirable to accomplish the purposes of the Liquidating Trust set forth in the Plan and this Trust Agreement, including but not limited to, using the Liquidating Trust Assets and Liquidation Proceeds to fund the administration of the Liquidating Trust.  The Liquidating Trust shall succeed to all of the rights of the Debtors necessary to protect, conserve, pursue, and liquidate all Liquidating Trust Assets as quickly as reasonably practicable.  Subject to the limitations set forth in this Trust Agreement, the Plan, and the Confirmation Order, the Trustee may exercise all powers granted hereunder related to, or in connection with, the collection, prosecution, settlement, liquidation, and distribution to the Beneficiaries, of the Liquidating Trust Assets.  Without limiting, but subject to, the foregoing, the Trustee shall be expressly authorized:

(a)     To open and maintain bank accounts on behalf of or in the name of the Liquidating Trust, calculate and make Distributions (defined below) and take other actions consistent with the Plan and the implementation thereof, including the establishment, re-evaluation, adjustment, and maintenance of appropriate reserves that may be required, in the name of the Liquidating Trust.

(b)     To effect all actions and execute all agreements, instruments, and other documents necessary to implement the applicable provisions of the Plan and Trust Agreement.

(c)     To receive, conserve, and manage the Liquidating Trust Assets.

(d)     To hold legal title to any and all Liquidating Trust Assets.

7

(e)      Subject to the applicable provisions of the Plan, to investigate, pursue, prosecute, settle, defend, collect, and liquidate the Liquidating Trust Assets, including but not limited to, the Trust-Retained Actions and the China Manufacturing Business Receivable.

(f)      To take discovery from third parties, including but not limited to, issuing Fed. R. Bankr. P. 2004 subpoenas and discovery requests.

(g)      With input, and if required, consent, from the Trust Oversight Committee, make decisions regarding the retention or engagement of Trustee's Professionals and to pay, from the Liquidating Trust Assets and the proceeds thereof, the fees and charges incurred by the Liquidating Trust, including but not limited to the fees and expenses of the Trustee and the Trustee's Professionals relating to the implementation of the Plan and performance by the Trustee of its duties under this Trust Agreement.

(h)      To pay all lawful, expenses, debts, charges and liabilities of the Liquidating Trust.

(i)      To wind down the affairs of the Liquidating Trust including the filing of final tax returns, establish any administrative reserves necessary to close the Liquidating Trust and make all Distributions to the Beneficiaries provided for or contemplated by the Plan.

(j)      To withhold from the amount distributable to any Person such amount as may be sufficient to pay any tax or other charge which the Trustee has determined, in its sole discretion, may be required to be withheld therefrom under the income tax laws of the United States or of any state or political subdivision thereof.  In the exercise of its discretion and judgment, the Trustee may enter into agreements with taxing or other governmental authorities for the payment of such amounts as may be withheld in accordance with the provisions of this section.

(k)      To abandon in any commercially reasonable manner, including abandonment or donation to a charitable organization of its choice, any Liquidating Trust Assets if the Trustee concludes that they are of no significant value or benefit to the Liquidating Trust.

(l)      If any of the Liquidating Trust Assets are situated in any state or other jurisdiction in which the Trustee is not qualified to act as trustee, to nominate and appoint a Person duly qualified to act as trustee in such state or jurisdiction and require from each such trustee some form of adequate security as designated by the Trustee; confer upon such trustee all the rights, powers, privileges and duties of Trustee, subject to the conditions and limitations of this Liquidating Trust Agreement, except as modified or limited by the Trustee and except where the conditions and limitations may be modified by the laws of such state or other jurisdiction (in which case, the laws of the state or other jurisdiction in which such trustee is acting shall prevail to the extent necessary); require such other trustee to be answerable to the Trustee for all monies, assets, and other property that may be received in connection with the administration of all property; and remove such other trustee, with or without cause, and appoint a successor trustee at any time by the execution by the Trustee of a written instrument declaring such other trustee removed from office, and specifying the effective date and time of removal.

(m)      Except as otherwise set forth in this Trust Agreement, to have exclusive power to investigate, prosecute, abandon, compromise, defend, and/or settle all causes of actions including, without limitation, the Trust-Retained Actions, or any other causes of action or counterclaims as described in the Plan and Disclosure Statement (collectively, the "Actions") and exercise, participate in or initiate any proceeding before the Bankruptcy Court or any other court of competent and appropriate jurisdiction and voluntarily participate as a party or otherwise in any administrative proceeding, arbitration, mediation, or other nonjudicial proceeding and litigate or

9

settle such Actions on behalf of the Trust, and pursue such actions to settlement or final order, all in accordance with the terms of this Trust Agreement.

(n)     To hold any unclaimed Distributions or payment to a Beneficiary in accordance with this Trust Agreement, the Confirmation Order, and the Plan.

(o)     To purchase or create and carry all insurance policies and pay all insurance premiums and costs it deems necessary or advisable.

(p)     To implement and/or enforce all provisions of the Plan.

(q)     To collect and liquidate all Liquidating Trust Assets pursuant to the Plan, the Confirmation Order, and this Trust Agreement, and to ultimately close these Chapter 11 cases.

(r)     To object to Claims and supervise and administer the resolution, settlement, withdrawal, compromise, allowance, and/or payment of such Claims, together with any distribution to the Beneficiaries in accordance with this Trust Agreement and the Plan. Specifically, the Trustee may compromise or settle any such Claim (Disputed or otherwise) free of any restrictions other than those restrictions expressly imposed by the Plan, the Confirmation Order, or this Trust Agreement.

(s)     Exercise such rights of setoff as the Debtors or the Estates may have had against any Beneficiary and/or seek Court approval of such exercise.

(t)     Voluntarily engage in arbitration or mediation with regard to any dispute.

(u)     To (i) seek a determination of tax liability under section 505 of the Bankruptcy Code; (ii) file, if necessary, any and all tax returns required with respect to the Liquidating Trust treating the Liquidating Trust as a grantor trust pursuant to Treas. Reg. 1.67-4(a) or otherwise; (iii) make tax elections by and on behalf of the Liquidating Trust; and (iv) pay taxes, if any, payable by the Liquidating Trust.

(v)    To make all distributions ("Distributions") to holders of Allowed Class 4 Claims provided for or contemplated by the Plan.

(w)    Resolve issues pertaining to the retention or disposal of the Liquidating Trust's administrative and business records.

(x)    To perform any other actions or duties required to be performed by the Trustee pursuant to the provisions of the Plan and/or Confirmation Order.

(y)    To assert or waive any attorney-client, work product, or other privilege on behalf of the Debtors and Estates with regard to the Liquidating Trust Assets.

**3.2    Limitations on the Trustee.** Notwithstanding anything in this Trust Agreement to the contrary, the Trustee shall not do or undertake any of the following:

(a)    Take any action in contravention of the Plan, the Confirmation Order, or this Trust Agreement.

(b)    Take any action that would significantly jeopardize treatment of the Liquidating Trust as a "liquidating trust" for federal income tax purposes.

(c)    Grant liens on any of the Liquidating Trust Assets.

(d)    Guaranty any debt.

(e)    Loan Liquidating Trust Assets to the Trustee.

(f)    Purchase Liquidating Trust Assets from the Liquidating Trust.

(g)    Transfer Liquidating Trust Assets to another trust with respect to which the Trustee serves as trustee.

(h)    Settle any Actions in which the amount being sought by the Trustee (or the amount in controversy) is in excess of $500,000 in an amount which is less than seventy percent (70%) of the amount at issue, without the advice and consent of the Trust Oversight Committee.

11

(i)      Make investments other than invest in demand and time deposits, such as short-term certificates of deposits, in banks or other savings institutions, or other temporary, liquid investments, such as Treasury bills.

**3.3**     **Trustee Conflicts of Interest.** If the Trustee or the Trust Oversight Committee determines in their reasonable discretion that the Trustee has a material conflict of interest with respect to any matter, the Trust Oversight Committee shall, at its option and in its own discretion, either (i) exercise the Trustee's rights and authorities with respect to such matter; or (ii) designate a person to act on behalf of the Liquidating Trust solely with respect to such matter with such designee's authority to act on behalf of the Liquidating Trust to terminate upon the matter's conclusion. If neither the Trustee nor the Trust Oversight Committee is able to act on behalf of the Liquidating Trust, and the Trust Oversight Committee is unable to appoint a designee to act on behalf of the Liquidating Trust with respect to any matter, the Trustee and the Trust Oversight Committee, after notice to the United States Trustee, may request the Bankruptcy Court to approve a designee of the Trustee or the Trust Oversight Committee to act on behalf of the Liquidating Trust solely with respect to such matter, with such designee's authority to act on behalf of the Trust to automatically terminate upon the matter's conclusion.

**ARTICLE IV**

**<u>TRUST OVERSIGHT COMMITTEE. GENERALLY</u>**

4.1     **The Trust Oversight Committee.** On the Effective Date, a governing board of creditors currently serving on the Committee shall commence serving as members of the Liquidating Trust (the "<u>Trust Oversight Committee</u>"). The members of the Trust Oversight Committee may each appoint individual representatives to the Trust Oversight Committee, with the representatives of each such member of the Trust Oversight Committee set forth on Schedule

12

A attached hereto, together with a list of individuals who have been designated as persons that have the authority to attend meetings of the Trust Oversight Committee in lieu of or in addition to a particular member if such member so desires. The Trust Oversight Committee shall have general oversight powers for the activities of the Trustee as well as those specific rights and powers set forth in other provisions of this Trust Agreement and under the Plan.

4.2    **Authority and Responsibilities.** The Trust Oversight Committee shall have the authority and responsibility to oversee, monitor, review, and guide the activities and performance of the Trustee and shall have the authority to remove the Trustee in accordance with Section 2.4 hereof.  The Trust Oversight Committee shall also (a) monitor and review the fairness of any settlement, abandonment, withdrawal, and/or other disposition proposals proposed to or conditionally agreed to[4] by the Trustee with respect to any Actions; (b) consult with the Trustee, and if required, vote on a proposed settlement, abandonment, withdrawal, and/or other disposition or prosecution of any Actions which are part of the Liquidating Trust Assets; (c) monitor and oversee the administration of the Trust and the Trustee's performance of its responsibilities under this Trust Agreement and the Plan; and (d) perform such other tasks as set forth in this Trust Agreement and in the Plan.  In all circumstances, except as explicitly provided herein, the Trust Oversight Committee shall exercise its responsibilities under the Liquidating Trust consistent with fiduciary standards.  In all circumstances, the Trust Oversight Committee shall act in the best interests of all Beneficiaries and in furtherance of the purpose of the Liquidating Trust.  The Trustee shall consult with and provide information to the Trust Oversight Committee on a regular basis in accordance with and pursuant to the terms of this Trust Agreement, the Plan, and the Confirmation Order.

---

[4] A condition being the obtaining of the consent of the Trust Oversight Committee.

4.3     **Meeting of the Trust Oversight Committee.** Meetings of the Trust Oversight Committee are to be held with such frequency and at such place as the Trustee and the Trust Oversight Committee may determine in their reasonable discretion, but in no event shall such meetings be held less frequently than quarterly.  Special meetings of the Trust Oversight Committee may be held at a location and time elected (including virtually) by the Trustee or the majority of the Trust Oversight Committee.  Unless the Trust Oversight Committee decides otherwise (which decision shall rest in the reasonable discretion of the Trust Oversight Committee), the Trustee and its designated advisors and professionals may attend meetings of the Trust Oversight Committee.

4.4     **Manner of Acting.** Unless otherwise specified herein, all other rules of decorum and procedure governing the Trust Oversight Committee shall be identical to those rules of decorum and procedure governing the Official Committee of Unsecured Creditors as set forth in the By-laws of the Official Committee of Unsecured Creditors of Athenex Inc., *et al.* (which are incorporated herein by reference as if fully set forth herein).  Any vote requiring a majority to carry the proposed action shall be deemed to require the vote of a majority of the quorum of the Trust Oversight Committee, and any action requiring the attendance of a quorum shall be deemed to require the attendance of __ members of the Trust Oversight Committee.  Any action required or permitted to be taken by the Trust Oversight Committee at a meeting may be taken without a meeting if the action is taken by unanimous written consent of the Trust Oversight Committee as evidenced by one or more written consents describing the action taken, signed by appropriate representatives of all members of the Trust Oversight Committee and recorded in the minutes, if any, or other transcript, if any, of proceedings of the Trust Oversight Committee.  The affirmative vote of a majority of the members of the Trust Oversight Committee present at a meeting shall be

the act of the Trust Oversight Committee, except as otherwise required by law or as provided in this Trust Agreement. Any or all of the members of the Trust Oversight Committee and their representatives or professionals may participate in a regular or special meeting by, or conduct the meeting through, the use of conference telephone, video conference, or similar communications equipment by means of which all persons participating in the meeting may hear each other, in which case any required notice of such meeting may generally describe the arrangements (rather than or in addition to the place) for the holding thereof. Any member of the Trust Oversight Committee and their representatives or professionals participating in a meeting by this means are deemed to be present in person at the meeting.  Voting (including on negative notice) may be conducted by electronic mail or individual communications by the Trustee and each member of the Trust Oversight Committee.

4.5     **Tenure of the Members of the Trust Oversight Committee.** The authority of the members of the Trust Oversight Committee will be effective as of the Effective Date and will remain and continue in full force and effect until the Liquidating Trust is terminated in accordance with Article X hereof.  The members of the Trust Oversight Committee will serve until death or resignation pursuant to Section 4.6 below, or removal pursuant to Section 4.7 below.

4.6     **Resignation.** A member of the Trust Oversight Committee may resign by giving not less than forty-five (45) days prior written notice thereof to the Trustee and the other members of the Trust Oversight Committee.  Such resignation shall become effective on the earlier to occur of: (i) the day specified in such notice: and (ii) the appointment of a successor in accordance with Section 4.8 below.

4.7      **Removal.** A member of the Trust Oversight Committee may be removed only for Cause by the unanimous vote of the other members of the Trust Oversight Committee, and written resolution of which shall be delivered to the removed member.

4.8      **Appointment of a Successor Trust Oversight Committee Member.**

(a)      In the event of a vacancy on the Trust Oversight Committee (whether by removal, death, or resignation), a new member may be appointed to fill such position by the remaining members.  The appointment of a successor member of the Trust Oversight Committee will be evidenced by the Trustee's filing with the Bankruptcy Court of a notice of appointment, which notice will include the name, address, and telephone number of the successor member.

(b)      Immediately upon the appointment of any successor member, all rights, powers, duties, authority, and privileges of the predecessor member hereunder will be vested in and undertaken by the successor member without any further act, and the representative(s) of the successor member will not be liable personally for any act or omission of the representatives of the predecessor member.

(c)      Every successor member appointed hereunder shall execute, acknowledge and deliver to the Trustee and other members a written instrument assenting to the appointment under this Trust Agreement and agreeing to be bound thereto, and thereupon the successor member without any further act, deed, or conveyance, shall become vested with all rights, powers, trusts, and duties of the retiring member.

(d)      For the avoidance of doubt, existing members of the Trust Oversight Committee may appoint and/or replace their designated representatives and/or professionals on the Trust Oversight Committee at any time upon notice to the other members of the Trust Oversight

Committee, and such additional and/or replacement representative(s) shall be deemed to assent, agree to, and be bound by the terms of this Trust Agreement.

## ARTICLE V

## LIABILITY OF TRUSTEE AND MEMBERS OF TRUST OVERSIGHT COMMITTEE

5.1     **Trustee's and Members' of Trust Oversight Committee Standard of Care; Exculpation.** Neither the Trustee nor the Trust Oversight Committee, or any partner, director, officer, affiliate, employee, employer, professional, agent or representative of the Trustee or Trust Oversight Committee ("Indemnified Persons") shall be held personally liable in connection with the affairs of the Liquidating Trust to any Person, including any Beneficiary of the Liquidating Trust, or to the Liquidating Trust, except for acts or omissions of the Indemnified Person that constitute fraud, willful misconduct, or gross negligence. Persons dealing with Indemnified Persons in connection with the Liquidating Trust, or seeking to assert claims against the Liquidating Trust, shall have recourse only to the Liquidating Trust Assets to satisfy any liability incurred by the Indemnified Persons to such persons in carrying out the terms of this Trust Agreement, except for acts or omissions of the Indemnified Persons that constitute fraud, willful misconduct or gross negligence.

5.2     **Indemnification.** Except as otherwise set forth in the Plan or Confirmation Order, Indemnified Persons, including, without limitation, any member of the Trust Oversight Committee or firm in which the Trustee is a partner, member, shareholder or employee ("Firm"") shall be defended, held harmless and indemnified from time to time by the Liquidating Trust against any and all losses, claims, costs, expenses, and liabilities to which such Indemnified Persons may be subject by reason of such Indemnified Party's execution in good faith of its duties pursuant to the discretion, power and authority conferred on such Person by this Trust Agreement, the Plan or the

17

Confirmation Order; provided, however, that the indemnification obligations arising pursuant to this section shall not indemnify any Indemnified Person for any actions taken by an Indemnified Person which constitute bad faith, fraud, willful misconduct, gross negligence, willful disregard of his or her duties hereunder, or willful material breach of the Plan. Satisfaction of any obligation of an Indemnified Person arising pursuant to the terms of this Section 5.2 shall be payable only from the Liquidating Trust Assets and such right to payment shall be prior and superior to any rights of Beneficiaries to receive a Distribution of the Liquidating Trust Assets.

5.3     **No Liability for Acts of Predecessor Trustees.** No successor Trustee or Interim Trustee shall be in any way liable for the acts or omissions of any predecessor Trustee unless a successor Trustee expressly assumes in writing such responsibility.

5.4     **Reliance by Trustee and Members of Trust Oversight Committee on Documents, Mistake of Fact, or Advice of Counsel.** Except as otherwise provided in this Trust Agreement, the Trustee and each member of the Trust Oversight Committee, together with their representative(s) and professionals, in good faith may rely, and shall be protected from liability for acting, upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order or other paper or document reasonably believed by the Trustee or member of the Trust Oversight Committee, as the case may be, to be genuine and to have been presented by an authorized party. The Trustee and each member of the Trust Oversight Committee, together with their representative(s) and professionals, shall not be liable if it acts based on a mistake of fact before having actual knowledge of an event or for any action taken or suffered by such person if such person has reasonably relied upon the advice of counsel or other professionals engaged by the Trustee or member of the Trust Oversight Committee in accordance with this Trust Agreement.

5.5     **Insurance**. The Trustee may purchase errors and omissions insurance with the Liquidation Trust Assets for himself (and any Trustee Firm) and the members of the Trust Oversight Committee (in their capacity as such) with regard to any liabilities, losses, damages, claims, costs and expenses such Person may incur, including but not limited to attorneys' fees, arising out of or due to its actions or omissions, or consequences of such actions or omissions, other than as a result of its fraud, gross negligence or willful misconduct, with respect to the implementation and administration of the Plan and this Trust Agreement.

## ARTICLE VI

## DUTIES OF TRUSTEE

6.1     **General**. The Trustee shall have all duties specified in the Plan, the Confirmation Order, and this Trust Agreement as being the responsibility of the Trustee.

6.2     **Books and Records**. The Trustee shall maintain, in respect of the Liquidating Trust, books and records relating to the Liquidating Trust Assets, income realized therefrom, and expenses of and claims against or assumed by the Liquidating Trust, in such detail and for such period of time as may be necessary to enable it to make full and proper reports in respect thereof. Except as expressly provided in this Trust Agreement, the Plan, or the Confirmation Order, nothing in this Trust Agreement is intended to require the Trustee to file any accounting or seek approval of any court with respect to the administration of the Liquidating Trust, or as a condition for making any payment or Distribution to a Beneficiary out of the Liquidating Trust Assets. Notwithstanding the foregoing, the Trustee shall disseminate periodic reports to the members of the Trust Oversight Committee regarding the Liquidating Trust Assets and the Liquidating Trust Expenses.

6.3 **Asset Valuation.** The valuation of the Liquidating Trust Assets agreed to by the Parties shall be used consistently by all parties for all federal income tax purposes. The Liquidating Trust shall file (or cause to be filed) any other statements, returns or disclosures related to the Liquidating Trust that are required by any governmental unit. Any dispute regarding the valuation of Liquidating Trust Assets shall be resolved by the Bankruptcy Court. The Liquidating Trust may request an expedited determination of taxes of the Liquidating Trust under Bankruptcy Code section 505(b) for all tax returns filed for or on behalf of the Liquidating Trust for all taxable periods through the dissolution of the Liquidating Trust.

## ARTICLE VII

### BENEFICIARIES

7.1 **Effect of Death, Incapacity, or Bankruptcy of Beneficiary**. The death, incapacity, or bankruptcy of a Beneficiary during the term of the Liquidating Trust shall not operate to terminate the Liquidating Trust, nor shall it entitle the representative or creditors of the deceased, incapacitated, or bankrupt Beneficiary to an accounting or to take any action in any court or elsewhere for the distribution of the Liquidating Trust Assets or for a petition thereof nor shall it otherwise affect the rights and obligations of the Beneficiary under this Trust Agreement or in the Liquidating Trust.

7.2 **Standing of Beneficiary.** Except as expressly provided in this Trust Agreement, the Plan, or the Confirmation Order, a Beneficiary does not have standing to direct the Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any party (other than the Trustee) upon or with respect to the Liquidating Trust Assets.

7.3 **Release of Liability by Beneficiary**. A Beneficiary shall not release the Trustee from any duty, responsibility, restriction or liability as to such Beneficiary that would otherwise

be imposed under this Trust Agreement unless such relief is approved by Final Order of the Bankruptcy Court.

## ARTICLE VIII

### DISTRIBUTIONS

8.1     **Distributions from Liquidating Trust Assets.** All Distributions of Liquidating Trust Assets made by the Trustee to the Beneficiaries shall be made only in accordance with the Plan, the Confirmation Order, and this Trust Agreement, and only to the extent any such distribution is in excess of $100.00 and only to the extent that the Liquidating Trust has sufficient Liquidating Trust Assets (or Liquidation Proceeds) from which to make such payments in accordance with and to the extent provided for in the Plan, the Confirmation Order, and this Trust Agreement.  Any Distribution made by the Trustee in good faith and if required hereby, with the consent of the Trust Oversight Committee, shall be binding and conclusive on all interested parties.

8.2     **Distributions; Withholding.** To the extent that sufficient funds are contained in the Liquidating Trust from which to make a Distribution, the Trustee may make discretionary Distributions on an interim basis to the Beneficiaries from all net Cash income and all other Cash held in the Liquidating Trust; provided, however, that the Liquidating Trust may retain such amounts (a) as are reasonably necessary to meet contingent liabilities of the Liquidating Trust; (b) to pay reasonable administrative expenses including, without limitation, the compensation to and reasonable, actual and necessary costs and expenses of the Trustee, including, without limitation, the Liquidating Trust Expenses and the fees and expenses of Trustee's Professionals, in connection with the performance of the Trustee's duties in connection with this Trust Agreement; (c) the reasonable fees and expenses of the members of the Trust Oversight Committee as permitted by the terms of this Trust Agreement; (d) the reasonable costs necessary to pursue liquidation of the

Trust-Retained Actions; and (e) to satisfy all other liabilities incurred or assumed by the Liquidating Trust (or to which the Liquidating Trust Assets are otherwise subject) in accordance with the Plan, the Confirmation Order, and this Trust Agreement.  All such Distributions shall be made as provided, and subject to any withholding, in this Trust Agreement, the Plan, or the Confirmation Order. Additionally, the Trustee may withhold from amounts distributable to the Beneficiaries any and all amounts, determined in the Trustee's reasonable sole direction, to be required for any law, regulation, rule, ruling, directive or other governmental requirement.  In no event shall the Trustee be required to make any Distribution if the same would be administratively burdensome or unreasonably expensive in relation to the dollar amount of the total Cash to be distributed.

Notwithstanding any provision in the Plan to the contrary, no partial payments and no partial Distributions will be made with respect to a Disputed Claim until the resolution of such disputes by settlement or Final Order. Unless otherwise agreed by the Trustee, a Beneficiary who holds both (an) Allowed Claim(s) and (a) Disputed Claim(s) will not receive a Distribution on account of either the Allowed Claim or the Disputed Claim, nor accrue interest thereon, unless the Allowed Claim is at least three hundred percent (300%) or more than the amount of the filed amount of the Disputed Claim or until such Disputed Claim is resolved by settlement or Final Order.

8.3     **Non-Cash Property.** If, in the Trustee's judgment, after consultation with the Trust Oversight Committee, any Liquidating Trust Asset that is not Cash cannot be sold, settled, or otherwise reduced to Cash in a commercially reasonable manner, the Trustee shall have the right to abandon, withdraw, or otherwise dispose of such property, including by donation of such property to a charity designated by the Trustee.  Except in the case of willful misconduct, no party

in interest shall have a cause of action against the Liquidating Trust, the Trustee, any member of the Trust Oversight Committee or any partner, director, officer, employee, representative, consultant of, or professional employed by the Trustee or any member of the Trust Oversight Committee in connection with the Liquidating Trust arising from or related to the disposition of non-Cash property in accordance with this Section 8.3

8.4     **Method of Cash Distributions.** Any Cash Distribution to be made by the Liquidating Trust pursuant to the Plan will be in U.S. dollars and may be made, at the sole discretion of the Trustee, by check, wire transfer, or as otherwise required or provided in any relevant agreement or applicable law.

8.5     **Distributions on Non-Business Days.** Any payment or Distribution due on a day other than a Business Day shall be made, without interest, on the next Business Day.

8.6     **Documents Requested by the Trustee.** The Trustee may require any Beneficiary to furnish to the Trustee its social security number or employer or taxpayer identification number as assigned by the IRS and complete any related documentation (including but not limited to a Form W-8 or Form W-9). Any Beneficiary that fails to return such documents and/or forms to the Trustee within 180 days of a request by the Trustee, in writing, shall forfeit its right to Distribution and shall cease being a Beneficiary of the Trust, unless otherwise agreed by the Trustee.

8.7     **Undeliverable Distributions.** If any distribution to any Beneficiary is returned as undeliverable, and after reasonable efforts the Trustee has not been able to determine the current address of the Beneficiary, such undeliverable and/or unclaimed distribution shall be deemed unclaimed property under Bankruptcy Code section 347(b) one hundred and eighty (180) days from the original mailing and may be reallocated to the remaining Beneficiaries. Such undeliverable or unclaimed distributions shall not be subject to (i) any claims by such Beneficiary,

23

who shall have lost his status as a Beneficiary and whose Claim to such unclaimed property shall be forever barred, expunged, and deemed Disallowed; or (ii) the unclaimed property or escheat laws of any state or governmental unit. Any Liquidating Trust Assets which are undistributable in accordance with this section revert back to the Liquidating Trust. No further distributions to a Holder of such Claim shall be made. Notwithstanding anything to the contrary stated herein, nothing shall require the Liquidating Trustee to attempt to determine a Beneficiary's current address or otherwise locate a Beneficiary.

8.8     **Forfeiture of Distribution**. As long as the mailing has not been returned as "undeliverable", all Distributions to Beneficiaries made in the form of a check that are not negotiated within 90 days of the date of such Distribution shall be null and void.  The Liquidating Trustee shall not reissue any check except upon directly receiving a request in writing from the Beneficiary that was originally issued such check within one hundred and eighty (180) days of the Distribution.  If the 180-day period elapses without the Beneficiary requesting the check be reissued, the unresponsive Beneficiary's Distribution shall be deemed unclaimed property pursuant to Bankruptcy Code section 347(b).  Notwithstanding the foregoing, ninety (90) days after the final Distribution under Bankruptcy Code section 1194, the Liquidating Trustee shall stop payment on any check remaining unpaid, the corresponding distribution shall be deemed unclaimed property, and all unclaimed property shall be redistributed in accordance with the terms of this Trust Agreement.  Such unclaimed Distribution shall not be subject to (i) any claims by such Beneficiary who shall have lost his status as a Beneficiary and whose Claim to such unclaimed property shall be forever barred, expunged, and deemed Disallowed; or (ii) the unclaimed property or escheat laws of any state or governmental unit. Any Liquidating Trust

24

Assets which are undistributable in accordance with this section revert back to the Liquidating Trust. No further distributions to a Holder of such Claim shall be made.

## ARTICLE IX

### TAXES

**9.1     Income Tax Status.** Consistent with the Revenue Procedure 94-45, 1994-28 I.R.B. 124, the Liquidating Trust shall be treated as a liquidating trust pursuant to Treasury Regulation Section 301.7701-4(d) and as a grantor trust pursuant to Sections 671-677 of the Internal Revenue Code.  As such, the Beneficiaries will be treated as both the grantors and the deemed owners of the Liquidating Trust.  Any items of income, deductions and credit loss of the Liquidating Trust shall be allocated for federal income tax purposes, to the Liquidating Trust.

**9.2     Tax Returns**. In accordance with Treasury Regulation Section 1.671-4(a), the Liquidating Trust shall file with the Internal Revenue Service annual tax returns on Form 1041 together with the separate statements required under such Regulation. In addition, the Trustee shall file in a timely manner such other tax returns as are required by applicable law and pay any taxes shown as due thereon.

**9.3     Withholding of Taxes Related to Liquidating Trust Operations.** To the extent that the operation of the Liquidating Trust or the liquidation of the Liquidating Trust Assets creates a tax liability in excess of applicable net operating losses, the Liquidating Trust shall promptly pay such tax liability and any such payment shall be considered Liquidating Trust Expense payable from the Liquidating Trust Assets or the Liquidation Proceeds.  The Trustee may reserve a sum, the amount of which shall be determined by the Trustee in its sole discretion, sufficient to pay the accrued or potential tax liability arising out of the operations of the Liquidating Trust or the operation of the Liquidating Trust Assets.  In the exercise of discretion and judgment, the Trustee

may enter into agreements with taxing authorities or other governmental units for the payment of such amounts as may be withheld.

No later than the time required under applicable law after the end of each calendar year, the Trustee shall cause to be filed all required federal, state, and other tax returns.  Pursuant to the requirement under the Plan for the Trust to be treated as a Grantor Trust, all items of income will be treated as income subject to tax on a current basis.  Further, for federal income tax purposes, all items of income, gain, loss, and deduction of the Trust for such calendar year shall be allocated to all Beneficiaries on a pro rata basis, based on either their Allowed Claim(s) or, in the case of Disputed Claims, the greater of (a) the amount of the claim as scheduled by the Debtors in their bankruptcy Schedules and Statement of Financial Affairs filed by the Debtors in these Chapter 11 Cases; and (b) the amount set forth in any proof of claim filed by the Beneficiary in these Chapter 11 Cases.  Such pro-rata allocation will be calculated as of the end of each calendar year and, with respect to each Disputed Claim, until such claim either becomes an Allowed Claim or is disallowed.  Further, such pro rata allocation in regard to Disputed Claims shall not in itself entitle any Beneficiary to any payment and shall be irrespective of whether any payments are actually disbursed to such Beneficiary.

## **ARTICLE X**

## **TERMINATION OF TRUST**

**10.1    Maximum Term.** The Liquidating Trust shall commence as of the Effective Date shall continue and remain in full force and until (i) the conclusion by settlement or Final Order of all pending litigation to which the Trustee is a party and, in the sole opinion and discretion of the Trustee, the exhaustion of all efforts to collect thereon, (ii) all of the Liquidating Trust Assets are liquidated or disposed of in accordance with the Plan and this Trust Agreement and all of the funds

in the Liquidating Trust have been completely distributed in accordance with the Plan and this Trust Agreement, (iii) all tax returns and any other filings or reports have been filed with the appropriate state or federal regulatory authorities and all time periods and all opportunity for such authorities to challenge such final tax returns have expired, and (iv) the order closing these Chapter 11 Cases is a Final Order (the "Trust Term").

The Plan provides for the termination of the Liquidating Trust no later than the fifth anniversary of the Effective Date. Notwithstanding the foregoing, within 120 days of the fifth anniversary of the Effective Date, the Liquidating Trustee may file a motion with the Bankruptcy Court requesting an extension of the term of the Liquidating Trust. An extension shall only be granted if the Bankruptcy Court determines that: (i) an extension is necessary to facilitate or complete the recovery on Liquidating Trust Assets and (ii) further extension would not adversely affect the status of the Liquidating Trust as a liquidating trust for federal income tax purposes. For purposes of this Section, a favorable letter ruling from the Internal Revenue Service shall be conclusive proof that further extension would not adversely affect the status of the Liquidating Trust as a liquidating trust for federal income tax purposes.

**10.2    Distribution Upon Termination.** Upon the termination of the Liquidating Trust, the Trustee shall distribute the remaining Liquidating Trust Assets, if any, to the Beneficiaries, in accordance with the Plan, Confirmation Order, and this Trust Agreement.

**10.3    Winding Up and Discharge of the Trustee.** For the purposes of winding up the affairs of the Liquidating Trust at its termination, the Trustee shall continue to act as Trustee and the members of the Trust Oversight Committee shall continue to act as members of the Trust Oversight Committee until their respective duties have been fully discharged.  After doing so, the Trustee, its agents and employees and the members of the Trust Oversight Committee, their agents,

27

representatives, and employees shall have no further duties or obligations hereunder, except as required by this Trust Agreement, the Plan, or applicable law concerning the termination of a trust.

## ARTICLE XI

## ADMINISTRATIVE EXPENSES

**11.1    Trust Administrative Expenses.** The Liquidating Trust Expenses, including, without limitation, the compensation to and the reimbursement of reasonable, actual and necessary costs, fees and expenses of the Trustee and each member of the Trust Oversight Committee, including, without limitation, the fees, costs and expenses of the Trustee's Professionals, in connection with the performance of the Trustee's and each member of the Trust Oversight Committee's duties in connection with this Trust Agreement, shall be paid from the Liquidating Trust Assets and/or Liquidation Proceeds.

At the time of making final Distributions to Beneficiaries, the Trustee may reserve amounts from the Liquidating Trust Assets that the Trustee, in consultation with the Trust Oversight Committee, deems necessary to wind down the Trust and close these Bankruptcy Cases.  In the event that the Trustee is holding funds after making the final distributions to Beneficiaries, on account of excess reserved amounts or distributions returned to the Trust due to Beneficiaries failing to negotiate distributions issued by check, the Trustee may donate such remaining funds to a not for profit organization of its choosing, subject to approval by the Trust Oversight Committee.

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

**12.1    Amendments.** Any substantive provision of this Agreement may be amended or waived in writing by a majority of members of the Trust Oversight Committee; provided however, that any proposed amendment to or waiver of this Agreement or any portion thereof that affects

28

the rights or obligations of the Reorganized Debtors in any respect shall require the consent of the Reorganized Debtors. Non-material amendments to this Agreement may be made, as necessary to clarify this Agreement or enable the Trustee to effectuate the terms of this Agreement, upon written notice to the Trust Oversight Committee and the Reorganized Debtors; provided, however, that all amendments of this Agreement shall be consistent with the purpose and intention of the Liquidating Trust to liquidate in an expeditious but orderly manner the Liquidating Trust Assets in accordance with Treasury Regulation section 301.7701-4(d) and Section 2.6 hereof. No amendment to or waiver of this Agreement that is inconsistent with the terms of the Plan shall be effective.

**12.2    Waiver.** No failure by the Trustee to exercise or delay in exercising any right, power or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power or privilege hereunder preclude any further exercise thereof, or of any other right, power or privilege.

**12.3    Cumulative Rights and Remedies.** The rights and remedies provided in this Trust Agreement are cumulative and are not exclusive of any rights under law or in equity.

**12.4    Irrevocability.** The Liquidating Trust is irrevocable.

**12.5    Relationship to the Plan.** The principal purpose of this Trust Agreement is to aid in the implementation of the Plan and, therefore, this Trust Agreement incorporates and is subject to the provisions of the Plan and the Confirmation Order.  In the event that any provision of this Trust Agreement is found to be inconsistent with a provision of the Plan or the Confirmation Order, the provisions of the Plan or the Confirmation Order shall control.

**12.6    Division of Trust.** Under no circumstances shall the Trustee have the right or power to divide the Liquidating Trust unless authorized to do so by the Bankruptcy Court.

29

**12.7    Governing Law.** This Trust Agreement shall be governed and construed in accordance with the laws of the State of Delaware, without giving effect to rules governing the conflict of laws.

**12.8    Retention of Jurisdiction.** Notwithstanding the Effective Date and to the fullest extent permitted by law, the Bankruptcy Court shall retain exclusive jurisdiction over the Liquidating Trust after the Effective Date, including, without limitation, jurisdiction to resolve any and all controversies, suits and issues that may arise in connection therewith, including, without limitation, this Trust Agreement, or any entity's obligations incurred in connection herewith, including without limitation, any action against the Trustee or any professional retained by the Trustee or the Liquidating Trust, in each case in its capacity as such.  Each party to this Trust Agreement hereby irrevocably consents to the exclusive jurisdiction of the Bankruptcy Court in any action to enforce, interpret or construe any provision of this Trust Agreement or of any other agreement or document delivered in connection with this Trust Agreement, and also hereby irrevocably waives any defense of improper venue, forum non conveniens or lack of personal jurisdiction to any such action brought in the Bankruptcy Court.  Each party further irrevocably agrees that (i) any action to enforce, interpret, or construe any provision of this Trust Agreement will be brought only in the Bankruptcy Court; and (ii) all determinations, decisions, rulings, and holdings of the Bankruptcy Court shall be final and non- appealable and not subject to re-argument or reconsideration.  Each party hereby irrevocably consents to the service by certified or registered mail, return receipt requested, to be sent to its address set forth in Section 12.11 of this Trust Agreement may designate from time to time by notice given in the manner provided above, of any process in any action to enforce, interpret or construe any provision of this Trust Agreement.

DMS 749 A:350854.1 14039/002

**12.9   Severability.** In the event that any provision of this Trust Agreement or the application thereof to any person or circumstance shall be determined by the Bankruptcy Court or another court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Trust Agreement, or the application of such provision to persons or circumstances, other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Trust Agreement shall be valid and enforced to the fullest extent permitted by law.

**12.10   Limitation of Benefits.** Except as otherwise specifically provided in this Trust Agreement, the Plan, or the Confirmation Order, nothing herein is intended or shall be construed to confer upon or to give any person other than the parties hereto and the Beneficiaries any rights or remedies under or by reason of this Trust Agreement.

**12.11   Notices.** All notices, requests, demands, consents and other communication hereunder shall be in writing and shall be deemed to have been duly given, if delivered in person or by facsimile with an electromechanical report of delivery or if sent by overnight mail or by registered or certified mail with postage prepaid, return receipt requested, to the following addresses.

If to the Debtors:

[_____]

If to the Trustee:

[_____]

With copy to:

[_____]

31

Notice of any application to the Bankruptcy Court shall also be provided to the Office of the United States Trustee address as follows:

<u>Office of the United States Trustee:</u>

[_____]

The parties may designate in writing from time to time other and additional places to which notices may be sent.  All demands, requests, consents, notices and communications shall be deemed to have been given (a) at the time of actual delivery thereof, (b) if given by certified or registered mail, five (5) business days after being deposited in the United States mail, postage prepaid and properly addressed, or (c) if given by overnight courier, the next business day after being sent, charges prepaid and properly addressed.

**12.12   Further Assurances.** From and after the Effective Date, the parties hereto covenant and agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes of this Trust Agreement, and to consummate the transactions contemplated hereby.

**12.13   Integration**. This Trust Agreement, the Plan, and the Confirmation Order constitute the entire agreement with, by, and among the parties, and there are no representations, warranties, covenants, or obligations except as set forth herein, in the Plan, and in the Confirmation Order.  This Trust Agreement, together with the Plan and the Confirmation Order, supersede all prior and contemporaneous agreements, understandings, negotiations, and discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder.  Except as otherwise provided herein, the Plan, or Confirmation Order, nothing herein is intended or shall be construed to confer upon or give any person other than the parties hereto and the Beneficiaries any rights or remedies under or by reason of this Trust Agreement.

4855749\A:350854.1 14039/002

**12.14   Successors or Assigns**. The terms of this Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

**12.15   Interpretation.** The enumeration and section headings contained in this Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Trust Agreement or of any term or provision hereof.  Unless the context otherwise requires, whenever used in this Trust Agreement the singular shall include the plural and the plural shall include the singular, and words importing the masculine gender shall include the feminine and the neuter, if appropriate, and vice versa, and words importing persons shall include partnerships, associations and corporations.  The words "herein", "hereby", and "hereunder" and words with similar import, refer to this Trust Agreement as a whole and not to any particular section or subsection hereof unless the context requires otherwise.

**12.16   Counterparts.** This Agreement may be signed by the parties hereto in counterparts, which, when taken together, shall constitute one and the same document.

DMSLIBRARY01\DMS:350854.1 14039/002

**IN WITNESS WHEREOF**, the parties hereto have either executed and acknowledged this Trust Agreement or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first above written.

[                                    ]

By: _____

**Liquidating Trustee**

By: _____

34

## SCHEDULE A

## MEMBERS OF TRUST OVERSIGHT COMMITTEE

| MEMBER | PERSON(S) DESIGNATED TO ATTEND MEETINGS |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |

DOCS_NY:350854.1 14039/002